UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC                      14-MD-2543 (JMF)
IGNITION SWITCH LITIGATION
                                        Hon. Jesse M. Furman
*This Document Relates to All Actions*

-----------------------------------------------------------------x

**PLAINTIFFS' BRIEF IN OPPOSITION TO NEW GM'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO (i) THE TOTAL NUMBER OF CASES FILED AGAINST NEW GM AND (ii) PRIOR INDIVIDUAL CASE SETTLEMENTS, NEGOTIATIONS, AND POTENTIAL SETTLEMENTS**

Plaintiffs respectfully submit this opposition to General Motors LLC's Motion *In Limine* No. 5 to exclude evidence or argument relating to: (1) individual settlements, negotiations and/or potential settlements between New GM and third parties related to other ignition switch personal injury claims and suits; and/or (2) the total number of ignition switch suits against New GM.

The evidence is admissible under Rule 408. Federal Rule of Evidence 408(a) does not bar settlement evidence where, as here, a party offers evidence relating to the settlement of a claim different than the one at issue in the current trial. In addition, Rule 408(b) explicitly provides that settlement evidence may be admitted for purposes other than to prove or disprove the validity of the disputed claim. Here, Plaintiffs will offer other settlement evidence for permissible purposes, including, *inter alia*, to prove New GM's knowledge and willful concealment of the defect and to rebut New GM's evidence.

The evidence is also admissible under Federal Rules of Evidence 401-403. The evidence New GM seeks to exclude is highly relevant to Plaintiffs' claims and its probative value far outweighs any minimal risk of unfair prejudice or confusion of the issues.

New GM's motion should be denied.

## BACKGROUND

As New GM has admitted, "the deadly effects of the Defective Switch on airbag non-deployment began manifesting themselves early on, in crashes about which GM was made aware contemporaneously." September 16, 2015 Deferred Prosecution Agreement ("DPA") Ex. C, Statement of Facts, at ¶ 45. "Many of the deaths and serious injuries associated with airbag non-deployment . . . became the subject of legal claims—formal and informal—against GM." *Id*. at ¶ 57.

Through its investigation of these legal claims, New GM "realized by no later than 2011 that a number of these non-deployment cases involved some sort of 'anomaly' in the ignition switch." *Id*.; *see also id.* at ¶¶ 58-63. By no later than spring 2012, New GM "knew that the Defective Switch presented a safety defect because it could cause airbag non-deployment associated with death and serious injury." *Id*. at ¶ 7; *see also id*. at ¶¶ 64-78, 115. By summer 2012, New GM "anticipated" a recall. *Id*. at ¶ 78. "Yet, GM overshot the 5-day regulatory requirement for safety defects by approximately 20 months" and it "failed to disclose [the] deadly safety defect to its U.S. regulator" until February 2014. *Id*. at ¶¶ 3, 115.

Long before New GM finally notified NHTSA and the public about the ignition switch safety defect, but after New GM was aware that the ignition switch defect, or "anomaly," posed a serious safety concern, New GM repeatedly settled defect-related legal claims to conceal both the defect and the fact that New GM had known about the defect for years but took no action. *See generally* Plaintiffs' Memorandum of Law in Support of Motion to Compel Documents from New GM and King & Spalding Based on the Crime-Fraud Exception (Docket No. 1136); Plaintiffs' Reply Memorandum in Further Support of Plaintiffs' Motion to Compel Documents

from New GM and King & Spalding Based on the Crime-Fraud Exception (Docket No. 1256); Plaintiffs' Nov. 3, 2015 letter brief regarding the impact of the DPA on Plaintiffs' Motion to Compel Documents from New GM and King & Spalding Based on the Crime-Fraud Exception (Docket No. 1598).  Included among these settlements were, *inter alia*, claims related to the "Tennessee Crash" and the "Georgia Crash."  DPA Ex. C at ¶¶ 57-9, 91-92, 95.

New GM "has acknowledged 15 deaths occurring in crashes in which the Defective Switch may have caused or contributed to airbag non-deployment. . . . Many other deaths are alleged to have been associated with the Defective Switch." *Id*. at n. 5.  By October 9, 2015, New GM had settled 399 ignition switch defect claims, including 124 death claims, through the GM Ignition Compensation Claims Resolution Facility.[1]

**ARGUMENT**

New GM's motion *in limine* seeks to fully preclude a party from presenting evidence for consideration by the finder of fact. This Court has cautioned that such *in limine* motions should only be granted "when [the evidence] is clearly inadmissible on *all potential grounds*." *Patel v. Jani*, No. 12-cv-9376 (KBF), 2015 WL 5508304, at *1 (S.D.N.Y. Sept. 18, 2015) (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted and emphasis added)); *Allen v. City of N.Y.*, 466 F. Supp. 2d 545, 547 (S.D.N.Y. 2006); *see also Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011). If the evidence in question may be admitted for a permissible purpose, the court should deny the motion *in limine* or defer an exclusionary ruling pending presentation of the evidence at trial. *United States v. Watts*, 934 F. Supp. 2d 451, 462 (E.D.N.Y. 2013) ("Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context.").

---

[1] *See* http://www.gmignitioncompensation.com/docs/Program%20Statistics%20(2015-10-09).pdf.

3

**I.     EVIDENCE REGARDING PRIOR INDIVIDUAL CASE SETTLEMENTS, NEGOTIATIONS, AND POTENTIAL SETTLEMENTS IS ADMISSIBLE.**

    **A.     The evidence is admissible under Federal Rule of Evidence 408.**

Federal Rule of Evidence 408 "is by no means 'a blanket rule of inadmissibility for any and all statements in the settlement context.'" *Williams v. Regus Mgmt. Grp., LLC*, No. 10 CIV. 8987, 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) (Furman, J.) (quoting *Carr v. Health Ins. Plan of Greater New York, Inc.*, No. 99 CIV. 3706 (NRB), 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001)).  To the contrary, Rule 408 is clear that the Court "*may admit* [settlement-related] evidence" for a purpose other than proving or disproving the validity or amount of the disputed claim.  Fed. R. Evid. 408 (emphasis added); *see also Williams*, 2012 WL 1890384, at *3 ("By its plain terms . . . the Rule provides that a court 'may admit' such evidence 'for another purpose' . . . .").  Plaintiffs here will offer evidence regarding prior individual case settlements, negotiations or potential settlements for permissible purposes.

"It is well established that 'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'" *Williams*, 2012 WL 1890384, at *3 (quoting *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir.1997)); *see also Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005) (stating the rule that settlement evidence is generally admissible "when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered"); *Carney v. American Univ.,* 151 F.3d 1090, 1095 (D.C. Cir. 1998) (holding statements from settlement negotiations related to race discrimination claim admissible to prove a separate claim of retaliation); *Broadcort Capital Corp. v. Summa Med. Corp.,* 972 F.2d 1183, 1194 (10th Cir. 1992) (permitting settlement evidence to be admitted because: "Here, the evidence related to an entirely different claim—the evidence was not

4

admitted to prove the validity or amount of the 'claim under negotiation.' . . . Thus, Rule 408 did not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial.") (quoting *Vulcan Hart Corp. v. NLRB,* 718 F.2d 269, 277 (8th Cir. 1983)); *Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* 739 F. Supp. 2d 125, 133–34 (D. Conn. 2010) (holding settlement correspondence relating to different claims admissible because "when settlement-related evidence is related to a claim not under consideration by the jury, courts generally permit its introduction . . . if it is relevant to a claim that is at issue"); *Carr*, 2001 WL 563722, at *4 (holding statements from settlement negotiations to be admissible "because they are being introduced not to prove liability for claims being settled, but for an entirely separate claim"); Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice & Procedure: Evidence* § 5314 (1st ed. 1980). This holds true even if the different claims "are not totally unrelated." *Zurich*, 417 F.3d at 689. Thus, Rule 408 does not bar evidence regarding settlements, negotiations, or potential settlements involving prior claims that will not be decided by the bellwether juries.

It is equally well established that Rule 408 does not bar settlement-related evidence when offered to prove notice,[2] *see* Fed. R. Evid. 408, Advisory Committee Notes ("Rule 408 is inapplicable when evidence of the compromise is offered to prove notice"), "for purposes of rebuttal, for purposes of impeachment, to show knowledge and intent, to show a continuing course of reckless conduct," *Zurich*, 417 F.3d at 689, or to prove a wrong "committed during the course of alleged settlement discussions," *Scott v. Goodman*, 961 F. Supp. 424, 438 (E.D.N.Y.

---

[2] New GM concedes, as it must, that settlement-related evidence is admissible to prove notice. GM Br. at 6 n.11. But New GM's argument that notice is not at issue in *Scheuer* is meritless. Plaintiffs will prove that New GM was on notice of the defect *years* before Scheuer's accident. Had New GM fixed the known defect rather than concealing it, Scheuer would not have been driving a defective vehicle on the day of his crash. Moreover, even after receiving the recall notice, Scheuer was unable to get his car fixed because New GM did not make sufficient replacement switches available to dealers, or provide any other sufficient remedy for owners of admittedly defective vehicles – despite knowing that removing all items from the key ring would not render the defective vehicles safe.

1997) *aff'd sub nom. Scott v. Meyers*, 191 F.3d 82 (2d Cir. 1999); *see also Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D.Ariz.1993) (evidence of settlement negotiations admissible to prove motive).

New GM asks the Court to exclude settlement-related evidence regarding entirely separate prior claims by different claimants that are not under consideration by the jury in these bellwether trials. New GM offers no analysis whatsoever regarding the application of Rule 408 to the evidence it seeks to exclude. Because the settlement evidence relates to different claims, the prohibition stated in Rule 408(a) does not apply.

Plaintiffs will not offer the other settlement evidence to show, for example, that the claimants in the Tennessee Crash or Georgia Crash[3] had meritorious defect claims under those states' laws. Instead, Plaintiffs will offer prior settlement-related evidence to show, *inter alia*, that New GM was on notice of the ignition switch defect for years but repeatedly settled defect-related claims—rather than recalling the defective vehicles—to conceal the ignition switch safety defect and its years-long knowledge of the defect. Indeed, New GM's citations to Plaintiff's complaint clearly demonstrate that Plaintiff's settlement-related allegations are to prove New GM's knowledge, concealment, and willful conduct (and not the validity or amount of those other claims). *See, e.g.*, GM Br. at 2, citing Second Amended Complaint, *Scheuer v. General Motors LLC*, 1:14-cv-08176 (S.D.N.Y. Sept. 23, 2015) (Docket No. 138) ("SAC") at ¶ 56 (New GM "became *aware* of that the failure of the airbags resulted from the unintended movement of the ignition to the 'accessory' position . . . [but] New GM chose to settle the case and to *continue to cover up* the ignition switch defect. . .") (emphasis added); *id.*, citing SAC ¶ 199 ("New GM

---

[3] *See* Memorandum of Law in Support Of New GM's Motion *In Limine* No. 5 To Exclude Evidence And Argument Relating To (i) The Total Number Of Cases Filed Against New Gm And (Ii) Prior Individual Case Settlements, Negotiations, And Potential Settlements ("GM Br.") at 3 (quoting New GM's DPA admissions related to those other settlements).

received *notice* of this incident, opened a file, and referred to it as the 'Chansuthus' incident, and knew the accident was caused by the ignition switch defect . . . [but] New GM chose to settle it confidentially and *continue to conceal* the defect. . . .") (emphasis added).  Similarly, New GM's citations to its DPA admissions show that its settlement admissions occur in the context of what it knew about the ignition switch safety defect at the time of settlement.  *See* DPA Ex. C ¶ 58 (appearing under the heading "GM identifies the connection between the ignition switch and airbag non-deployment and initiates a formal investigation"); *id*. at ¶¶ 91-92 (appearing under the heading "GM Receives documentary evidence of the part change and finally begins the recall process"); *id*. at ¶ 95 (appearing under the heading "GM makes further statements to NHTSA about its recall process").

Plaintiffs may also introduce settlement-related evidence to rebut or impeach New GM's arguments.  For example, New GM's expert Marschall I. Smith opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Plaintiffs will show that New GM's organizational structure and reporting lines were clearly inadequate because "GM followed its outside counsel's advice and settled the Georgia Crash case at the end of August 2013, agreeing to pay $5 million" (DPA Ex. C ¶ 92), despite having known about the ignition switch safety defect for years (*id*. at ¶¶ 64-78) and having confirmed the ignition switch part change (¶¶ 82-94) – without elevating the known ignition switch safety defect to the highest levels of the company.  Contrary to Mr. Smith's opinion, this admitted and deliberate failure was not merely the doing of individual lawyers because New GM's processes stated that product liability settlements were not to be elevated to the most senior leadership so long as individual settlement amounts did not exceed $5 million.

In addition, New GM's expert Jeya Padmanaban opines that . Similarly, Plaintiffs anticipate that New GM will argue at trial that the incidence of vehicle crashes, injury or death associated with the defect were low. To rebut this argument, Plaintiffs will offer evidence that New GM settled many admittedly defect-related claims prior to the recall and has since settled at least 399 defect-related claims, including 124 death claims.

In sum, New GM's repeated settlements of defect-related claims in the face of admitted knowledge of the ignition switch safety defect constitute "a continuing course of reckless conduct," *Zurich*, 417 F.3d at 689, that Plaintiffs may prove with settlement-related evidence under Rule 408(b).

      **B.**    **The evidence is admissible under Federal Rules of Evidence 401-402.**

Evidence is relevant where it "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "[R]elevance must be determined in light of the claims and defenses asserted by the parties." *Martin v. Valley Nat. Bank of Arizona*, 140 F.R.D. 291, 300 (S.D.N.Y. 1991).

New GM's meritless relevance argument, wholly divorced from an analysis of substantive state law governing the claims and defenses at issue, is premised (once again) on pretending that the only issue to be resolved in these bellwether trials is whether the defect caused a particular plaintiff's injuries. GM Br. at 5. Of course this is not so. The prior settlement-related evidence—demonstrating New GM's continued concealment of the ignition switch safety defect in the face of serious death and injuries—is relevant to, at a minimum,

8

whether New GM (1) failed to disclose and/or concealed a material fact under SAC Count II (deceit);[4] (2) failed to exercise ordinary care and/or engaged in conduct that was willful, wanton or intentional under SAC Count III (negligence, gross negligence and willful and wanton negligence), including whether New GM displayed utter indifference to or conscious disregard for the safety of others;[5] (3) engaged in "deceptive" and/or "unfair" conduct under SAC Count V;[6] and (4) displayed a reckless disregard for the rights of others, acted intentionally and with malice toward others, and/or engaged in conduct life-threatening to others such that the jury should award punitive damages.[7]

Evidence of New GM's notice of the defect and its subsequent cover up is clearly relevant to the jury's evaluation of New GM's culpability for punitive damages, which Plaintiff is entitled to prove at trial, particularly in light of the Bankruptcy Court's recent order that he may pursue such damages against New GM. *See In re Motors Liquidation Co.*, No. 09-50026 (REG), Nov. 9, 2015 Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings, Docket No. 13533.

### C. The evidence is admissible under Federal Rule of Evidence 403.

The Court may only exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The probative value of the prior settlement evidence far outweighs any minimal risk of unfair prejudice. As discussed above, the probative value of the prior settlement evidence is high. Time and again, New GM chose to settle defect-related claims rather than disclosing a

---

[4] *See* Okla. Uniform Jury Instructions 18.2 (setting forth element for a claim of deceit).
[5] *Id.* at 9.51 (defining willful and wanton conduct).
[6] *See Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000) (setting forth the elements of an OCPA claim).
[7] *See* Okla. Stat. tit. 23, § 9.1 (Oklahoma punitive damages statute). This relevance analysis also applies to the other bellwether plaintiffs who assert similar claims against New GM.

known safety defect to the public.  And New GM's concerns about unfair prejudice are unfounded. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original).  There is nothing unfair about New GM having its settlement-related admissions admitted into evidence at trial.[8]

Nor does any minimal risk of juror confusion substantially outweigh the probative value of the other settlement evidence.   The jury will be able to understand that the other settlement evidence does not automatically translate into liability for the particular death or injuries at issue in the bellwether trials.  Indeed, the jury will know that New GM has admitted that the vehicles at issue were defective – and that part of their jobs will be to determine whether that admitted defect proximately caused the incidents and/or injuries in each particular bellwether case.  Thus, any risk of jury confusion from the admission of other settlement-related evidence is simply unfounded, particularly since limiting instructions will mitigate any such risk. *Cf. BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 132 (S.D.N.Y. 2000) ("[A]ny prospect of jurors giving undue weight to County files or becoming confused by missing portions can be adequately dealt with through the use of limiting instructions.").

New GM's concerns about a "trial within a trial" are baseless.  This is not a situation like *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 358-59 (S.D.N.Y. 2014).  There, a

---

[8] New GM's motion *in limine* seeks to preclude the introduction of evidence and argument regarding (1) individual settlements and (2) the total number of ignition switch suits against New GM. It does not seek to preclude the introduction of evidence regarding the *accidents* underlying those settlements, all of which involved the same deadly ignition switch installed in the bellwether plaintiffs' respective GM vehicles.  Evidence regarding substantially similar incidents is relevant and admissible to establish, among other things, the existence of a defect, causation, a defendant's notice of the defect, and the propriety of punitive damages. *See, e.g.*, *Schmelzer v. Hilton Hotels Corp.*, No. 1:05-CV-10307 (JFK), 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007).  New GM wrongly relies on *Williams v. Remington Arms Co.*, No. 3:05-CV-1383-D, 2008 WL 222496, at *10 (N.D. Tex. Jan. 28, 2008) for the proposition that other settlement evidence should be excluded under Rule 403 even if the other incidents are determined to be substantially similar to Scheuer's.  In *Williams*, the court ruled only that it would carefully consider the relevance of the proffered evidence of settlements related to the other similar incidences before deciding.  Plaintiffs here have clearly demonstrated the relevance of the other settlement evidence and that Plaintiffs will offer such evidence for permissible purposes.

"trial within a trial" would have been required had evidence of other alleged instances of infringement been admitted into evidence because infringement with respect to those other instances had not been admitted and there was no connection between those other instances and the alleged infringer.  In contrast, here, New GM has admitted that its vehicles were defective and that it settled defect-related claims (without recalling the defective vehicles).

"Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990). The Court should not utilize the extraordinary remedy of exclusion here, especially where a limiting instruction is available.  *See United States v. Cummings*, 60 F. Supp. 3d 434, 438 (S.D.N.Y. 2014) ("prejudice can be mitigated by the use of a limiting instruction").

## II. EVIDENCE REGARDING THE TOTAL NUMBER OF CASES FILED AGAINST NEW GM IS ADMISSIBLE.

As mentioned above, the number of ignition switch personal injury cases may be relevant to rebut New GM's arguments that: (a) its legal department was appropriately structured; (b) the defective vehicles have low rates of fatalities and serious injuries compared to peer vehicles; and (c) few incidents of injuries and fatalities have been attributed to the ignition switch safety defect.

Accordingly, the Court should deny New GM's motion *in limine* or defer an exclusionary ruling pending presentation of the evidence at trial.  *United States v. Watts*, 934 F. Supp. 2d 451, 462 (E.D.N.Y. 2013) ("Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context.").

## CONCLUSION

For all the foregoing reasons, New GM's motion should be denied.

Dated: November 9, 2015						Respectfully Submitted,

By:     /s/ Robert C. Hilliard
Robert C. Hilliard

HILLIARD MUÑOZ GONZALES L.L.P.

Robert C. Hilliard
*bobh@hmglawfirm.com*
Rudy Gonzales, Jr.
*rudy@hmglawfirm.com*
Anne K. Fornecker
*anne@hilliardshadowenlaw.com*
719 S Shoreline Blvd, Suite #500
Corpus Christi, TX 78401
Telephone:  (361) 882-1612
Facsimile:  (361) 882-3015

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman
*steve@hbsslaw.com*
Sean R. Matt
*sean@hbsslaw.com*
Andrew M. Volk
*andrew@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Elizabeth J. Cabraser
*ecabraser@lchb.com*
Steven E. Fineman
*sfineman@lchb.com*
Rachel Geman
*rgeman@lchb.com*
Annika K. Martin
*akmartin@lchb.com*
275 Battery St., 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

12

Facsimile: (415) 956-1008

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 9, 2015, which will send notification of such filing to the e-mail addresses registered.

                                          */s/ Robert C. Hilliard*

                                          Robert C. Hilliard