USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/30/2015

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

IN RE:

                                                                                            14-MD-2543 (JMF)

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

                                                                                        OPINION AND ORDER

*This Document Relates To:*
*Fleck, et al. v. General Motors LLC, 14-cv-8176*
-------------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's First, Fourth, Fifth, and Sixth Motions *in Limine*]**

The first bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff

Robert S. Scheuer and familiarity with which is presumed, is scheduled to begin on January 11,

2016.  (*See* Docket No. 1694).  Currently pending are more than fifteen motions *in limine* filed

by both parties.  This opinion addresses four of New GM's motions:

- its First Motion, which seeks to preclude evidence or argument concerning a Consent Order that New GM (or, more precisely, its parent company) entered into with the National Highway Traffic Safety Administration ("NHTSA") on May 16, 2014, in which New GM admitted that it had violated the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30118(c)(1), by failing to notify NHTSA about a safety-related defect within five working days and agreed to pay the maximum civil penalty of $35 million (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 1 (Docket No. 1379) ("New GM's First Mem.") 1-2; *id.*, Ex. A, at ¶¶ 10-11);

- its Fourth Motion, which seeks to preclude evidence or argument regarding Plaintiff's claim that the accident prevented him from purchasing a new home and led to his eviction (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 4 (Docket No. 1581) ("New GM's Fourth Mem.") 1);

- its Fifth Motion, which seeks to preclude evidence relating to settlements of ignition switch claims and relating to the total number of ignition switch suits that have been filed against New GM (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 5 (Docket No. 1583) ("New GM's Fifth Mem.") 1); and

- its Sixth Motion, which seeks to preclude evidence relating to two criminal cases in which convictions were vacated after the ignition switch defect came to light.  (*See* Mem. Law Supp. New GM's Mot. *In Limine* No. 6 (Docket No. 1586) ("New GM's Sixth Mem.")).

For the reasons stated below, the First and Fourth Motions are DENIED, the Fifth Motion is DENIED in part and GRANTED in part, and the Sixth Motion is GRANTED.[1]

## DISCUSSION

### A.  New GM's First Motion *in Limine*

In its First Motion, New GM contends that evidence of the May 16, 2014 NHTSA Consent Order should be precluded pursuant to Rules 402, 403, 407, and 408 of the Federal Rules of Evidence.  (*See* New GM's First Mem. 1; New GM's Reply Supp. Mot. *In Limine* No. 1 (Docket No. 1478) ("New GM's First Reply") 3-5).[2]  New GM's Rule 407 argument can be swiftly rejected on two grounds.  First, New GM did not make the argument until its reply brief, so the Court declines to consider it.  *See, e.g.*, *Tutor Time Learning Centers, LLC v. GKO Grp., Inc.*, No. 13-CV-2980 (JMF), 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013) ("[A]rguments

---

[1]    Many of the evidentiary issues to be decided in these motions may be affected — or even mooted — by later motions *in limine*, *Daubert* motions, or dispositive motions (all of which will be filed no later than December 4, 2015, and fully briefed no later than December 21, 2015).  (*See* Order No. 85, Docket No. 1694).  For example, New GM has stated that it intends to file a motion for summary judgment that could preclude Plaintiff from bringing a claim for punitive damages and would therefore limit the relevance of some of the evidence addressed below.  (*See* Mem. Law Supp. New GM's Am. Mot. *In Limine* No. 11 (Docket No. 1755) 10).  Needless to say, the Court's rulings are subject to modification — or even reconsideration — as appropriate in light of the parties' motions that are not yet decided (or fully briefed).

[2]    In opposing New GM's motion, Plaintiff contends that the Court "has already ruled that materials relating to the Consent Order are relevant," citing MDL Order No. 70, which resolved the parties' disputes with respect to the discoverability of certain documents.  (*See* Pl.'s First Opp'n 4-5).  That argument is without merit, as it is well established that the relevance standard for purposes of discovery is broader than the relevance standard for admissibility under the Federal Rules of Evidence.  *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570 (GBD) (FM), 293 F.R.D. 539, 546 (S.D.N.Y. June 12, 2013) (citing cases).

raised for the first time in a reply memorandum are waived and need not be considered."").

Second, and in any event, Rule 407 applies only to remedial measures "that would have made an

*earlier* injury or harm less likely to occur."  Fed. R. Evid. 407 (emphasis added).  (*See* Pl.'s Sur-

Reply New GM's Mot. *In Limine* No. 1 (Docket No 1495) 2).  Accordingly, it does not apply to

the Consent Order, which predates Plaintiff's accident.  *See, e.g.*, Fed. R. Evid. 407, advisory

committee's note to 1997 amend. ("Evidence of measures taken by the defendant prior to the

'event' causing 'injury or harm' do not fall within the exclusionary scope of Rule 407 even if

they occurred after the manufacture or design of the product.""); *see also, e.g.*, *Figueroa v. Boston*

*Sci. Corp.*, No. 00-CV-7922 (DC), 2003 WL 21488012, at *5 (S.D.N.Y. June 27, 2003).

New GM's Rule 402 and 408 arguments fail as well.  Under Rule 408, a consent decree

is inadmissible "to prove or disprove the validity or amount of a disputed claim."  Fed. R. Evid.

408(a); *see also, e.g.*, *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981); *Lipsky v.*

*Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d Cir. 1976).  By its terms, however, the

Rule permits a court to admit evidence of a consent decree "for another purpose."  Fed. R. Evid.

408(b); *see also, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008) (holding

that the district court had properly admitted a consent decree between the Equal Opportunity

Employment Commission and the defendant to demonstrate that the defendant "was aware of its

legal obligations"); *Gilbert*, 668 F.2d at 97 (holding that the district court had properly admitted

a consent decree between the Securities and Exchange Commission and the defendant "to show

that [the defendant] knew" of the reporting requirements in the decree).  Here, Plaintiff does not

seek to offer evidence of the Consent Order to prove that New GM violated the Safety Act —

indeed, the Safety Act, in itself, is irrelevant to Plaintiff's claims — but for other purposes that

are plainly relevant.  (*See* Pl.'s Br. Opp'n New GM's Mot. *In Limine* No. 1 (Docket No. 1447)

("Pl.'s First Opp'n") 1, 5).  Most significantly, the evidence may be used to support Plaintiff's

argument that New GM knew that the ignition switch defect posed a safety risk, but concealed it

to avoid a potentially costly recall — an argument that could be relevant to, among other things,

Plaintiff's claim under the Oklahoma Consumer Protection Act, *see McAlister v. Ford Motor

Co.*, No. 14-CV-1351 (TDD), 2015 WL 4775382, at *3-4 (W.D. Okla. Aug. 13, 2015), and his

claim for punitive damages, *see* Okla. Stat. tit. 23, § 9.1(A)(3) (1995) (listing "the duration of the

misconduct and any concealment of it" among the factors to be considered in awarding punitive

damages).  The Consent Order could also be relevant to proving that New GM had a motive to

conceal the defect for so long — namely, to avoid potential penalties or costly recalls.

Finally, Rule 403 does not call for preclusion of the Consent Order in its entirety.  New

GM argues that it would be prejudiced by having "to explain to the jury the circumstances

surrounding the resolution of NHTSA's timeliness inquiry and [its] agreement to pay a $35

million civil penalty" and that there is a "significant risk of confusing the issues and misleading

the jury."  (New GM's First Mem. 6).  But the proper way to address those risks (some of which

are only speculative) is not to preclude evidence and argument of the Consent Order altogether;

it is to give the jury limiting instructions and to redact any portion of the Consent Order that

would be substantially more prejudicial or confusing than probative.  *See, e.g.*, *Brady*, 531 F.3d

at 136 (noting that the district court gave a limiting instruction in affirming).  (For instance, the

jury may not need to learn the specific amount that New GM agreed to pay in penalties; it may

suffice for Plaintiff to elicit evidence that New GM was aware that it could face a substantial

penalty.)  Accordingly, the parties shall confer with respect to the language (and timing) of

appropriate limiting instructions and redactions of the Consent Order.[3]  With that caveat, New

GM's First Motion *in Limine* is DENIED.

## B.  New GM's Fourth Motion *in Limine*

New GM's Fourth Motion *in Limine* — which seeks, pursuant to Rules 402 and 403, to

preclude evidence or argument regarding Plaintiff's claim that the accident prevented him from

purchasing a new home and led to his eviction (*see* Mem. Law Supp. New GM's Mot. *In Limine*

No. 4 (Docket No. 1581) ("New GM's Fourth Mem.") 1) — is easily rejected.  Under Oklahoma

law, which provides the substantive law for the first bellwether trial, the question of damages,

including causation, is one for the jury.  *See, e.g.*, *Jones v. Mercy Health Ctr., Inc.*, 155 P.3d 9,

14 (Okla. 2006) ("[T]he determination of causation may be removed from the province of the

fact-finder *only* when there is a complete lack of evidence and no reasonable inference tending to

link the defendant's negligence to the plaintiff's harm."); *Strubhart v. Perry Mem'l Hosp. Trust*

*Auth.*, 903 P.2d 263, 270 (Okla. 1995) ("The general rule is that the issue of damages in a

personal injury action is left to the jury after hearing all the evidence."); *Dodson v. Henderson*

*Props., Inc.*, 708 P.2d 1064, 1066 (Okla. 1985) (same).  Here, Plaintiff alleges that, as a direct

result of his car accident, he and his family were unable to secure the down payment on their

new house (because his time away from work while recovering from the accident precluded him

from accessing $49,500 from his retirement account) and that that led, in turn, to his eviction and

related expenses.  (*See* Pl.'s Mem. Law Opp'n New GM's Mot. *In Limine* No. 4 (Docket No.

---

[3]     The parties are strongly urged to propose appropriate limiting instructions in their
proposed jury instructions, but they shall do so no later than one week before the start of the trial.
By the same date, the parties shall either agree on redactions or bring any disagreements to the
Court's attention.

1625) ("Pl.'s Fourth Opp'n") 2-3, 9-10).  It is up to the jury to decide whether Plaintiff suffered

those damages and whether they were proximately caused by the accident (or, more to the point,

any tortious conduct by New GM).  And while New GM raises colorable questions about the

credibility of Plaintiff's allegations — based on both the testimony of his wife and on the rules

governing his retirement account — those are questions for the jury; that is, they go to the

weight, not the admissibility, of the evidence.  *See, e.g.*, *Leyja v. Oklahoma*, No. 09-CV-265

(REB), 2010 WL 1881462, at *10 (W.D. Okla. Apr. 7, 2010).  In short, the evidence is plainly

relevant and its probative value is not substantially outweighed by the dangers of unfair

prejudice.  Accordingly, New GM's Fourth Motion *in Limine* is DENIED.

## C.  New GM's Fifth Motion *in Limine*

Next, in its Fifth Motion, New GM moves, pursuant to Rules 402, 403, and 408, to

exclude evidence relating to settlements of ignition switch claims and relating to the total number

of ignition switch suits that have been filed against the company.  (*See* Mem. Law Supp. New

GM's Mot. *In Limine* No. 5 (Docket No. 1583) ("New GM's Fifth Mem.") 1).  The first part of

that motion is without merit for the same reasons discussed above: Rule 408 does not prohibit

introduction of settlement evidence for purposes other than proving the validity of the claim that

was the subject of the settlement.  *See, e.g.*, *Brady*, 531 F.3d at 136; *Williams v. Regus Mgmt.*

*Grp., LLC*, No. 10-CV-8987 (JMF), 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012).  Thus,

while Plaintiff may not introduce evidence of the settlements to prove that the claims were

meritorious (or make any arguments to that effect), he may introduce evidence for other purposes

— for example, to show that New GM was on notice of the ignition switch defect long before

Plaintiff's accident, to show that New GM took steps to conceal evidence of the ignition switch

defect,[4] or to rebut New GM's apparent argument that its legal department was appropriately

structured to respond to defect to reports of defects.  (Pl.'s Br. Opp'n New GM's Mot. *In Limine*

No. 5 (Docket No. 1624) ("Pl.'s Fifth Opp'n") 5-9).[5]

Once again, in the Court's judgment, Rule 403 does not call for precluding such evidence

altogether as the evidence is highly probative with respect to the issues referenced above and the

unfair prejudice — given that New GM concedes the existence of a defect and some evidence of

other accidents is likely to be admitted at trial — is unlikely to be substantial if the jury receives

appropriate limiting instructions.  That said, Rule 403 may call for setting some limits on what

evidence Plaintiff may admit — either on the cumulativeness ground or on the ground that, with

respect to a particular item or items of evidence (or content thereof), the Rule 403 balancing

inquiry cuts the other way.  *See, e.g.*, *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995)

(noting a district court's discretion to exclude repetitive or cumulative evidence). Accordingly, to

the extent that New GM's motion seeks to categorically preclude Plaintiff from introducing

evidence of settlements of other ignition switch cases, the motion is denied, but that denial is

without prejudice to New GM raising objections with respect to particular exhibits or testimony

---

[4]   On November 25, 2015, this Court denied the MDL Plaintiffs' motion to compel production of certain materials otherwise protected by the attorney-client privilege and work product doctrine based on the crime-fraud exception, ruling that it had insufficient evidence that New GM confidentially settled ignition switch cases with the intent to further a crime or fraud. (*See* Docket No. 1747).  That the available evidence did not show the necessary intent to vitiate the attorney-client and work product privileges, however, does not preclude Plaintiff here from arguing at the trial that the settlements contributed to New GM's unreasonable delay in disclosing and addressing the ignition switch defect.

[5]   Plaintiff argues that the evidence of settlements could also be used to rebut New GM's argument "that the incidence of vehicle crashes, injury or death associated with the [ignition switch] defect were low."  (Pl.'s Fifth Opp'n 8).  The Court fails to see how the settlements could be used for that purpose unless they were used to prove the validity of the claims that were settled, which would run afoul of Rule 408.

at trial (or seeking appropriate redactions from exhibits).  Again, the parties are to confer with

respect to the language (and timing) of appropriate limiting instructions.  *See also supra* note 2.

The Court reaches a different conclusion with respect to evidence of the total number of

ignition switch cases that have been filed against New GM.  (*See* New GM's Fifth Mem. 7).

Plaintiff proposes that such evidence could be introduced to show that New GM's legal

department was inadequately structured, that the defective vehicles had higher rates of fatalities

and injuries than peer vehicles, and that numerous injuries and fatalities have been attributed to

the ignition switch defect.  (*See* Pl.'s Fifth Opp'n 11).  The Court fails to see how the sheer

number of cases filed against New GM has any bearing on whether the company's legal

department was adequately structured; in any event, whatever probative value it does have with

respect to that issue is substantially outweighed by the risk of unfair prejudice to New GM.

Plaintiffs' other rationales for introduction of the evidence — that they will help prove the

number of fatalities and injuries attributable to the ignition switch defect — fail because they

depend on the allegations in the complaints being taken as true.  It is well established, however,

that complaints are hearsay and may not therefore be admitted for their truth.  *See, e.g.*, *Abdel-*

*Razeq v. Alvarez & Marsal, Inc.*, No. 14-CV-5601 (HBP), 2015 WL 7017431, at \*5 (S.D.N.Y.

Nov. 12, 2015); *Beechwood Restorative Care Ctr. v. Leeds*, 856 F. Supp. 2d 580, 604 (W.D.N.Y.

2012).  Accordingly, New GM's motion is granted to the extent that it seeks to preclude Plaintiff

from introducing evidence or argument concerning the number of cases filed against New GM.

**D.  New GM's Sixth Motion *in Limine***

New GM's Sixth Motion *in Limine* relates to the criminal cases of Candice Anderson and

Lakisha Ward-Green.  Each woman was the driver of a GM car involved in a crash that killed a

passenger; each was convicted of a criminal offense for her role in the crash; and each had her

conviction vacated after the ignition switch defect came to light.  (*See* New GM's Sixth Mem. 2-
4; Pls.' Mem. Law Opp'n New GM's Mot. *In Limine* No. 6 (Docket No. 1622) (" Pl.'s Sixth
Opp'n") 2-6).  In Anderson's case, the accident occurred in November 2004 while she was
driving a 2004 Saturn Ion; the front airbags did not deploy, and her fiancé died in the crash.
(New GM's Sixth Mem. 2-3;  Pl.'s Sixth Opp'n 3).  According to both the police report and her
Plea Admonishment, Anderson was under the influence of controlled substances, and she
pleaded guilty to criminally negligent homicide.  (New GM's Sixth Mem. 3;  Pl.'s Sixth Opp'n
3).  She served five years of probation and paid fines, court costs, and restitution.  (New GM's
Sixth Mem. 3;  Pl.'s Sixth Opp'n 3).  In Ward-Green's case, the accident took place in
September 2010 while she was driving a 2007 Chevrolet Cobalt; the front airbags did not deploy,
and the car's other passenger died in the crash.  (New GM's Sixth Mem. 3-4; Pl.'s Sixth Opp'n
4-5).  According to the police report, she was speeding; she pleaded guilty to involuntary
manslaughter and reckless driving, and served three months in jail.  (New GM's Sixth Mem. 4;
Pl.'s Sixth Opp'n 5).  In 2014, after disclosure of the ignition switch defect, Anderson applied for
the writ of habeas corpus, and counsel for New GM provided a letter "confirm[ing] that New
GM has determined that the crash . . . is one in which the recall condition may have caused or
contributed to the frontal airbag non-deployment in the accident."  (New GM's Sixth Mem. 3;
Pl.'s Sixth Opp'n 4).  Anderson's application was granted in November 2014, expunging her
conviction.  (New GM's Sixth Mem. 3; Pl.'s Sixth Opp'n 3).  Ward-Green also submitted a
petition for post-conviction relief, supported by a similar letter from New GM's counsel.  (New
GM's Sixth Mem. 4; Pl.'s Sixth Opp'n 5-6).  It was granted in August 2015.  (New GM's Sixth
Mem. 4; Pl.'s Sixth Opp'n 5-6).

New GM is on firm ground in seeking to preclude Plaintiff from presenting evidence of these two criminal cases.  For starters, the evidence is plainly irrelevant to the question of liability.  Plaintiff argues that it is probative of notice, "the real world consequences of the deadly defect," and New GM's delay in disclosing the defect (Pl.'s Sixth Opp'n 1, 8), but those are really arguments for admitting evidence of the underlying accidents, not for admitting evidence concerning the criminal cases *themselves* — as Plaintiff's own reliance on a case involving "[e]vidence of other similar accidents" makes clear.  (*Id.* at 8 (citing *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 834 (N.D. Okla. 2007)).[6]  Plaintiff has a slightly stronger argument that the evidence is relevant to the question of punitive damages, as Oklahoma law calls for consideration of whether a tortfeasor acted with "reckless disregard for the rights of others." *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 638 (Okla. Ct. App. 2012); *see also* Okla. Stat. tit. 23, § 9.1(A) (1995) (listing the factors a jury may consider in imposing punitive damages); Okla. Uniform Jury Instructions (Civil) § 5.9 (same).  But any probative value with respect to punitive damages is slight and is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  Fed. R. Evid. 403. The Anderson and Ward-Green cases appear to be outliers, and evidence tending to show that New GM's delay in disclosing the defect may have led or contributed to their wrongful convictions — harms completely unlike those alleged by Plaintiff in this case — is very likely to

---

[6]     Whether and to what extent Plaintiff may introduce evidence of other similar accidents and incidents — including perhaps the Anderson and Ward-Green crashes — is the subject of New GM's Amended Motion *in Limine* No. 11 and further briefing to be filed in accordance a schedule set during the telephone conference held on November 30, 2015.  (*See* New GM's Reply Supp. Mot. Lim. No. 6 (Docket No. 1677) ("New GM's Sixth Reply") 2; New GM's Am. Mot. *In Limine* No. 11 (Docket No. 1755)).  Accordingly, that issue is not addressed here.

inflame the passions and prejudices of the jury.  *See, e.g.*, *United States v. Modica*, 663 F.2d

1173, 1180 (2d Cir. 1981) ("No trial — civil or criminal —should be decided upon the basis of

the jurors' emotions."); *see also Phillips Morris USA v. Williams*, 549 U.S. 346, 355 (2007)

(noting that, while juries may consider harm to people other than the plaintiff in evaluating the

"reprehensibility" of a defendant's conduct for purposes of punitive damages, "the Due Process

Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*,

seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers").

Further, to provide context for the evidence, the Court would have to allow New GM to offer

"evidence to explain both the . . . accidents and the subsequent procedural histories for

convictions, post-conviction relief, and expungements."  (New GM's Sixth Reply 4).  Devoting

such time to two outlier cases would not only be a waste, but would risk confusing the issues and

misleading the jury.  Accordingly, Plaintiffs may not introduce evidence or make arguments

relating to the Anderson and Ward-Green criminal cases.

### CONCLUSION

For the foregoing reasons, New GM's First and Fourth Motions *in Limine* are DENIED,

its Fifth Motion *in Limine* is GRANTED in part and DENIED in part, and its Sixth Motion is

GRANTED.  More specifically, Plaintiff is not categorically precluded from introducing

evidence of the NHTSA Consent Order (although the Court will give appropriate limiting

instructions and the parties should confer with respect to appropriate redactions), evidence of his

eviction and other alleged housing-related damages, and evidence concerning settlements of

other ignition switch defect claims (again, subject to appropriate limiting instructions).  Plaintiff

may not, however, introduce evidence or argument relating to the total number of ignition

switch-related suits that have been filed against New GM or relating to the Anderson and Ward-

Green criminal cases.

The Clerk of Court is directed to terminate Docket Nos. 1378, 1580, 1582, and 1585.


SO ORDERED.

Dated:  November 30, 2015
        New York, New York

                                        JESSE M. FURMAN
                                        United States District Judge

12