UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Fleck, et al. v. General Motors LLC, 14-CV-8176*
------------------------------------------------------------------------------x

14-MD-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Eighth, Ninth, and Tenth Motions *in Limine*]**

The first bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Robert S. Scheuer and familiarity with which is presumed, is scheduled to begin on January 11, 2016.  (*See* Docket No. 1694).  Currently pending are more than a dozen motions *in limine* filed by both parties.  This opinion addresses three of New GM's motions:

- its Eighth Motion, which seeks to preclude Plaintiff from introducing evidence and argument at trial that New GM "intentionally misled or concealed information from, or tried to influence," the National Highway Transportation Safety Administration ("NHTSA").  (Mem. Law Supp. New GM's Mot. *In Limine* No. 8 (Docket No. 1615) ("New GM's Eighth Mem.") 3);

- its Ninth Motion, which seeks to preclude evidence or argument regarding New GM's privilege assertions and moves for entry of an order governing privilege issues at trial (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 9 (Docket No. 1617) ("New GM's Ninth Mem.") 1-2); and

- its Tenth Motion, which seeks to exclude evidence or argument concerning discovery disputes or New GM's litigation conduct in other cases (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 10 (Docket No. 1619) ("New GM's Tenth Mem.") 1).

For the reasons stated below, New GM's Eighth Motion is DENIED, its Ninth Motion is GRANTED in part and DENIED in part, and its Tenth Motion is GRANTED.  In accordance with the ruling on New GM's Ninth Motion, the Court simultaneously enters MDL Order No. 87 to govern privilege issues at the first bellwether trial.

## DISCUSSION

### A. New GM's Eighth Motion *in Limine*

In its Eighth Motion *in Limine*, New GM seeks to preclude Plaintiff from introducing evidence and argument at trial that it "intentionally misled or concealed information from, or tried to influence," NHTSA. (New GM's Eighth Mem. 3). New GM's principal argument is that such evidence should be excluded in light of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), in which the Supreme Court held that a plaintiff may not base a state-law cause of action on a claim that the defendant defrauded a federal agency because federal law gives the agency, and not states or individual plaintiffs, the authority and the legal tools to police its own processes. *Id.* at 348  As the Second Circuit has explained, however, *Buckman* preemption applies only to "newly-fashioned state cause[s] of action" where "no presumption against federal preemption obtain[s]" and "the cause of action, by assigning liability *solely* on the basis of fraud against the [federal agency], impose[s] significant and distinctive burdens on the [agency] and the entities it regulates." *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 98 (2d Cir. 2006). Here, none of these conditions obtains. Plaintiff's claims are long-recognized causes of action under Oklahoma law that fall well within a state's "traditional authority to provide tort remedies to its citizens," *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984), with respect to which there is a presumption *against* preemption, *see, e.g.*, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). And the gravamen of Plaintiff's claims is that he, not NHTSA, was defrauded by New GM. That is, his claims are not "premised principally (let alone exclusively) on" New GM's alleged misconduct toward NHTSA. *Desiano*, 467 F.3d at 95.

More fundamentally, New GM's argument fails because the *Buckman* Court "manifestly did not lay down a rule of evidence, precluding admission of evidence of alleged

2

misrepresentations to federal agencies in any state-law tort case." *George v. Ford Motor Co.*, No. 03-CV-7643 (GEL), 2007 WL 2398806, at *8 (S.D.N.Y. Aug. 17, 2007) (Lynch, J.). Taken to its logical conclusion, New GM's argument seems to be that, under *Buckman* (or, more precisely, the "principles" underlying *Buckman* (New GM's Eighth Mem. 8)), evidence of a defendant's fraud or misconduct toward a federal agency is off limits in a private lawsuit, even if it is otherwise admissible in support of the plaintiff's traditional common law tort claim. But that argument distorts the holding of, and "principles" behind, *Buckman* beyond recognition. Put simply, Plaintiff does "not seek in any way to create liability for misstatements to a federal agency." *George*, 2007 WL 2398806, at *8. Instead, he "seek[s] solely to make *evidentiary* use of such alleged misstatements, to establish elements of traditional state tort claims, [] to refute evidence relied upon by defendant . . . , [and to support his claim for punitive damages] by showing that defendant was aware of, and suppressed, information showing that its products were unsafe." *Id.* Nothing in *Buckman* suggests, let alone holds, that he may not do so.

Secondarily, New GM's Eighth Motion *in Limine* also seeks to exclude evidence of its "lobbying" of NHTSA on the theory that such conduct is "protected under the First Amendment." (New GM's Eighth Mem. 10). More specifically, New GM contends that such conduct is off limits under the *Noerr-Pennington* doctrine, which derives its name from two antitrust decisions, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), but has evolved to stand for the more general proposition that "lobbying alone cannot form the basis of liability," *Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1321 (E.D.N.Y. 1996). New GM's argument, however, fails for the same reason its *Buckman* argument failed: Under the *Noerr-Pennington* doctrine, a defendant may not be held liable based solely on conduct that is protected

by the First Amendment, but that does not mean that such conduct is altogether inadmissible or necessarily lacking in evidentiary value.  In fact, the *Pennington* Court itself acknowledged that "[*i*]*t would of course still be within the province of the trial judge to admit this evidence*, if he deemed it probative and not unduly prejudicial, under the established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny." *Pennington*, 381 U.S. at 670 n.3 (emphasis added) (internal quotation marks omitted); *see also Hamilton*, 935 F. Supp. at 1321 ("A core principle of the *Noerr-Pennington* doctrine is that lobbying alone cannot for the basis of liability, *although such activity may have some evidentiary value*." (emphasis added)).

At bottom, New GM's *Buckman* and *Noerr-Pennington* arguments (and its related arguments under Rule 403 of the Federal Rules of Evidence) are premised on a concern that a jury could base a finding of liability on an inappropriate ground — either a ground that is preempted by federal law or a ground that is protected by the First Amendment.  In the final analysis, however, the proper remedy for those concerns is care in instructing the jury with respect to what it must find in order to hold New GM liable and, if New GM requests it, perhaps also curative instructions making clear to the jury on what it may *not* base its verdict.  *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008).  The proper remedy is not exclusion of evidence that is otherwise relevant and admissible in connection with Plaintiff's claims.  Accordingly, New GM's Eighth Motion *in Limine* — seeking to categorically preclude any and all evidence and argument at trial that the company intentionally misled or concealed information from, or tried to influence, NHTSA — is DENIED.

**B. New GM's Ninth Motion *in Limine***

In its Ninth Motion *in Limine*, New GM asks the Court to rule that evidence or argument regarding New GM's privilege assertions is inadmissible, and to enter an order governing privilege issues at trial. Plaintiff concedes — as he must, *see, e.g.*, *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) — that he may not invoke New GM's privilege assertions in this MDL to encourage the jury to draw an adverse inference from those assertions, so the motion is GRANTED as unopposed to that extent. (*See* Pls.' Mem. Law Opp'n New GM's Mot. *In Limine* No. 9 (Docket No. 1704) ("Pl.'s Ninth Opp'n") 1-2). And while Plaintiff does argue that he should be entitled to offer evidence concerning New GM's invocation of the privilege in the *Melton* litigation in Georgia state court, that argument is foreclosed by the Court's rulings on the MDL Plaintiffs' crime-fraud motion to compel, *see In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2015 WL 7574460 (S.D.N.Y. Nov. 25, 2015) ("*Crime-Fraud Opinion*"), and New GM's Tenth Motion *in Limine* below. Accordingly, New GM's motion is GRANTED to the extent that it seeks to preclude any evidence or argument concerning its invocations of the attorney-client privilege (or related protections, such as the work product doctrine), in this litigation or elsewhere. Relatedly, Plaintiff may not introduce evidence or make arguments concerning the crime-fraud allegations made in the motion to compel or the Court's findings, except to the extent permitted by the Court's ruling on New GM's Fifth Motion. (*See* Docket No. 1770; *see also* Pl.'s Ninth Opp'n 3).

As for entry of New GM's proposed order governing privilege issues at trial, the motion is GRANTED in part and DENIED in part. Given the history and nature of this case, the Court agrees with New GM that an order governing privilege issues would help promote the orderly

conduct of trial.  Notably, Plaintiff does not oppose the general idea of such an order, and raises no objection to several paragraphs of New GM's proposed order (namely, paragraphs one, two, four, and seven); on the flip side, New GM does not appear to challenge Plaintiff's opposition to paragraph five of the proposed order, which would have imposed a potentially onerous "pre-clearance" requirement with respect to any question "likely to seek privileged information or draw a privilege objection."  (New GM's Ninth Mem., Ex. A ("Proposed Order") ¶ 5; *see* Pl.'s Ninth Opp'n 3; New GM's Reply Supp. Mot. *In Limine* No. 9 (Docket No. 1752) ("New GM's Ninth Reply") 3-5).  Instead, the parties' disagreements focus on four issues, which are resolved as follows:

- *Redactions of privileged markings* (Proposed Order ¶ 3).  The Court agrees with New GM that there is no reason for "privilege," "work product," or other markings indicative of privilege assertions to appear in exhibits.  Plaintiff's sole objection to redacting such markings is burden, citing the fact that New GM "has produced almost three million documents in this MDL, thousands of which are redacted for privilege" and that Plaintiff's "potential trial exhibit list will likely include thousands of documents."  (*See* Pl.'s Ninth Opp'n 3).  But the number of documents produced in the MDL has no relevance, and Plaintiff has not made a sufficiently specific showing that redacting the smaller number of documents that he plans to introduce at trial — only some of which will have the markings at issue and all of which are presumably in electronic format — would be unduly burdensome.  (*See* New GM's Ninth Reply 5).

- *Good faith efforts to avoid privilege invocations* (Proposed Order ¶ 6).  The Court also agrees with New GM that the parties should use good faith efforts to avoid asking questions of a witness that are likely to draw instructions not to answer on the basis of privilege.  (*See* New GM's Ninth Mem. 7-8; New GM's Ninth Reply 3-4).  As New GM notes, there have been a number of rulings regarding privilege issues in this MDL.  *See, e.g.*, *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521 (S.D.N.Y. 2015); Order No. 77 § VII (Docket No. 1349).  Purposefully asking a witness to disclose information that counsel knows to be privileged — and knows will elicit an objection or instruction not to answer — would be patently improper and would impede the efficiency of trial.  (*See* New GM's Ninth Reply 3).  Plaintiff does not suggest otherwise, but argues that a good faith provision is "premature and unnecessary" because New GM may do something that opens the door to introduction of privileged information at trial.  (Pl.'s Ninth Opp'n 5).  That may be true, but it is not an argument against imposing a good faith requirement altogether; it is an argument for modifying the proposed paragraph to require the parties to make good faith efforts to avoid asking questions that will draw instructions not to answer on the basis of privilege *unless they have a good*

*faith belief that the door has been opened to such questioning (pursuant to Rule 502(a) of the Federal Rules of Evidence or otherwise), in which case they shall first advise the court and the opposing party outside the presence of the jury.* (*See* Proposed Order ¶ 6; Order No. 87 ¶ 5). That provision, which is well within the Court's discretion to regulate the presentation of evidence, *see, e.g.*, *Allen v. Senkowski*, 97 F. App'x 346, 347 (2d Cir. 2004) (summary order), will help ensure that privilege issues are resolved in an orderly manner without imposing a burdensome "preclearance" requirement.

- *A presumption that reference to privileged material by a witness is not offensive or affirmative use* (Proposed Order ¶ 8). New GM proposes to create a rebuttable presumption that a witness's reference to the Valukas Report or other privileged documents in response to questioning from Plaintiff's counsel is not "offensive or affirmative use" and, in the event the Court finds the presumption is rebutted, to give New GM an "opportunity to respond to such a finding, including by agreeing to strike such testimony and/or through a curative jury instruction." (Proposed Order ¶ 8). The Court agrees with Plaintiff, however, that there is no reason to impose such a presumption *ex ante*. (*See* Pl.'s Ninth Opp'n 6-8). The process described above (and memorialized in the accompanying Order) will ensure that, before acting on any alleged waiver, Plaintiff alerts the Court and New GM. If or when that happens, New GM will be given an opportunity to be heard, and the Court will weigh the factors set forth in Rule 502(a) of the Federal Rules of Evidence with the benefit of context. In light of that process, there is no need to alter the substantive standards in advance.

- Finally, a footnote in New GM's memorandum notes, "[a]s an example," that "the Court could order that any witness shall not disclose privileged information, and that any witness' answer should be assumed to be based only on personal knowledge unrelated to and not including knowledge of otherwise privileged information." (New GM's Ninth Mem 8 n.4). New GM does not include any such provision in its proposed order but, even if it had, the Court would not have adopted it, substantially for the reasons stated by Plaintiff. (*See* Pl.'s Ninth Opp'n 8). Put simply, it is New GM's — not the Court's — obligation to take steps to protect its privilege (and to decide if or when to waive the privilege), and the Court will take appropriate steps to ensure that testimony at trial is based on witnesses' personal knowledge. *See* Fed. R. Evid. 602.

In short, the Court agrees that an order governing privilege issues at trial is appropriate and, consistent with New GM's proposal and the rulings above, enters MDL Order No. 87 to that effect. Although the Court sincerely hopes that Order No. 87, and the parties' good faith conduct, will help ensure that there are no references (or at least no inappropriate references) to New GM's privileged invocations at trial, the likelihood of some references seems high. In anticipation of that possibility, the parties shall confer and propose appropriate limiting

instructions to the jury (about, for example, the important role of the attorney-client privilege and the fact that the jury may not draw any inferences on the basis of a party's invocation).

## C. New GM's Tenth Motion *in Limine*

In its Tenth Motion *in Limine*, New GM asks that the Court exclude evidence or argument relating to discovery disputes and alleged litigation misconduct in this case and other lawsuits. (*See* New GM's Tenth Mem. 1). Plaintiff does not appear to oppose the motion, except as it relates to one other proceeding (or set of proceedings): the *Melton* litigation in Georgia state court. (*See* New GM's Tenth Mem. 1; Pl.'s Mem. Law Opp'n New GM's Mot. *In Limine* No. 10 (Docket No. 1682) ("Pl.'s Tenth Opp'n") 2-3; New GM's Reply Supp. Mot. *In Limine* No. 10 (Docket No. 1730) ("New GM's Tenth Reply") 1 n.1). That case was a principal focus of this Court's decision on the MDL Plaintiffs' crime-fraud motion to compel, *see Crime-Fraud Opinion*, 2015 WL 7574460, and figured as well in the Court's decision on New GM's Fifth Motion *in Limine*, which addressed evidence concerning New GM's settlements of *Melton* and other cases (*see* Docket No. 1770).

Although the Court previously held that Plaintiff could offer evidence relating to New GM's settlement of *Melton* (*see id.* at 6-8), the Court concludes — in light of the findings and reasoning set forth in its crime-fraud Opinion — that Rule 403 calls for precluding evidence and argument relating to the discovery disputes and alleged litigation misconduct in *Melton*. For one thing, that evidence has limited or no probative value. As the MDL Plaintiffs did in their crime-fraud briefing, Plaintiff makes aggressive assertions about the conduct of New GM (and its counsel, King & Spalding LLP ("K&S")), to the effect that "New GM lied — to both its adversary and a state court judge" and intentionally "prevented the Meltons from obtaining evidence." (Pl.'s Tenth Opp'n 2-3). But, as the Court explained in its prior Opinion, the MDL

Plaintiffs (and Plaintiff here) point to no evidence of intentional misconduct in *Melton*. *See Crime-Fraud Opinion*, 2015 WL 7574460, at *8-9. At most, the Court concluded, the record might "support a conclusion that New GM and K&S played it too close to the vest . . . — by, for example, construing the concept of relevance too narrowly and thus withholding documents and materials that should have been turned over (or turned over earlier) to the Meltons." *Id.* at *9. And whether or not New GM and K&S engaged in "overly aggressive" litigation in a different case sheds little or no light on any facts in dispute in this case. *Id.*

By contrast, the dangers of unfair prejudice, jury confusion, and waste of time are quite real. *See* Fed. R. Evid. 403. First, despite the absence of evidence that New GM engaged in any litigation misconduct with the intent to conceal the ignition switch defect, jurors may seek to punish New GM for what they view as an overly aggressive litigation strategy by a large company against two grieving parents. *See, e.g.*, *United States v. Pepin*, 514 F.3d 193, 206 (2d Cir. 2008) (holding that the district court properly excluded evidence where there was a danger that it would "inflame the passions of the jurors" (internal quotation marks omitted)). Second, if Plaintiff were allowed to introduce evidence of New GM's litigation conduct in *Melton*, New GM would be entitled to offer evidence in rebuttal (including, perhaps, expert evidence, as the issues are not exactly within the ken of the average juror). For instance, New GM might seek to introduce substantial evidence concerning the complicated procedural history in *Melton*, the definition of "relevance" and the rules governing discovery under Georgia law, and the voluminous materials that were disclosed to the Meltons (and when). The result would be a mini-trial within the larger trial, and a sideshow at that, as New GM's conduct in the *Melton* litigation is hardly central to the issues in this case. Finally, even assuming *arguendo* that evidence of New GM's conduct in *Melton* would shed some light on its intent, the evidence

9

would be cumulative, as Plaintiff has ample evidence — including the NHTSA Consent Order and (to the extent it is admissible, which is the subject of a pending motion *in limine*) the Deferred Prosecution Agreement between New GM and the Department of Justice — that New GM was aware of the ignition switch defect and failed to disclose it.

In short, evidence of discovery disputes and New GM's alleged litigation misconduct in this case and other lawsuits, including *Melton*, has limited or no probative value, and any such value is substantially outweighed by the dangers listed in Rule 403.  Accordingly, New GM's Tenth Motion *in Limine* is GRANTED.

## CONCLUSION

For the foregoing reasons, New GM's Eighth Motion *in Limine* is DENIED, its Ninth Motion *in Limine* is GRANTED in part and DENIED in part, and its Tenth Motion *in Limine* is GRANTED in its entirety.  More specifically, Plaintiff is not precluded from introducing evidence and making argument that New GM intentionally misled or concealed information from, or tried to influence, NHTSA; Plaintiff may not comment on or otherwise suggest that adverse inferences should be drawn from New GM's assertion of a privilege; the accompanying Order No. 87 will govern privilege issues at trial; and Plaintiff may not introduce evidence or make argument relating to discovery disputes or New GM's litigation conduct.

The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 1614, 1616, and 1618; and 14-CV-8176, Docket Nos. 156, 158, and 160.

SO ORDERED.

Dated: December 3, 2015
      New York, New York

                                                JESSE M. FURMAN
                                             United States District Judge