UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

14-MD-2543 (JMF)

OPINION AND ORDER

*This Document Relates To:*
*Fleck, et al. v. General Motors LLC, 14-CV-8176*
------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Sixteenth, Seventeenth, and Eighteenth Motions *in Limine*]**

The first bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Robert S. Scheuer and familiarity with which is presumed, is scheduled to begin on January 11, 2016.  (*See* Docket No. 1694).  The parties have filed twenty-eight motions *in limine*, many of which the Court has already decided.  This Opinion addresses three more of New GM's motions that are now fully submitted:

- its Sixteenth Motion, which seeks to exclude "any evidence of or reference to" ignition switches other than the "Delta" ignition switch, which was the ignition switch installed in Plaintiff's 2003 Saturn Ion and several other GM model year cars (the "Delta Switch") (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 16 (Docket No. 1640) ("New GM's Sixteenth Mem.") 3, 8);

- its Seventeenth Motion, which seeks to preclude Plaintiff from introducing evidence questioning the adequacy of the ignition-switch recall remedies, including the availability of parts, the availability of loaner vehicles, and the sufficiency of recall repairs performed on other vehicles (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 17 (Docket No. 1642) ("New GM's Seventeenth Mem.") 1); and

- its Eighteenth Motion, which seeks exclusion of twenty-three diverse categories of evidence and argument.  (*See* Mem. Law Supp. New GM's Mot. *In Limine* No. 18 (Docket No. 1644) ("New GM's Eighteenth Mem.") 1).

For the reasons stated below, New GM's Sixteenth Motion is DENIED, its Seventeenth Motion is GRANTED in part and DENIED in part, and its Eighteenth Motion is GRANTED in part and DENIED in part.[1]

## DISCUSSION

### A. New GM's Sixteenth Motion *in Limine*

New GM's Sixteenth Motion *in Limine* — which seeks categorically to preclude evidence and argument concerning all ignition switches other than the Delta Switch — is easily rejected. Although New GM argues that preclusion is warranted based on "differences" between the Delta Switch and non-Delta switches (New GM's Sixteenth Mem. 5), New GM itself has admitted elsewhere that at least some non-Delta switches were "the same" as the Delta Switch. For example, in a chronology attached to an April 11, 2014 letter to the National Highway Traffic Safety Administration ("NHTSA"), New GM discussed the events that led it to exclude the "2003-2007 model year Saturn Ion, 2006-2007 model year Chevrolet HHR and Pontiac Solstice, and 2007 model year Saturn sky vehicles" from the initial recall. (Pl.'s Response Opp'n New GM's Mot. *In Limine* No. 16 (Docket No. 1721) ("Pl.'s Sixteenth Opp'n") Ex. A, at 32). New GM stated that those vehicles — some of which employed the Delta Switch and some of which employed the "Kappa Switch" (*see* New GM's Sixteenth Mem. 3) — "were equipped with *the same ignition switch* installed in the 2005-2007 model year Chevrolet Cobalt and 2007 model year Pontiac G5 vehicles . . . ." (*Id.* Ex. A, at 32 (emphasis added)). Similarly, in the

---

[1] Many of the evidentiary issues to be decided in these motions may be affected — or even mooted — by later motions *in limine*, *Daubert* motions, or dispositive motions (all of which have now been filed, and will be fully briefed by December 21, 2015). (*See* Order No. 85, Docket No. 1694). Needless to say, the Court's rulings are subject to modification — or even reconsideration — as appropriate in light of the parties' motions that are not yet decided (or fully briefed).

Statement of Facts to which New GM agreed in its Deferred Prosecution Agreement ("DPA") with the Department of Justice, New GM admits that "[t]he model year cars which may have been equipped with the Defective Switch" include not only Delta system car models, but also non-Delta system car models — namely, the Sky and Solstice models.  *See* Compl., *United States v. $900,000,000 in U.S. Currency*, No. 15-CV-7342 (S.D.N.Y. Sept. 17, 2015), Docket No. 1, Ex A. ("DPA"), Ex. C ¶ 4.  The DPA defines "Defective Switch" as "a low-torque ignition switch installed in many of the vehicles identified [in the DPA], which, under certain circumstances, may move out of the 'Run' position," *id.*, a definition that mirrors the language New GM used in every recall — whether for Delta or non-Delta model cars.  (*See* Pl.'s Sixteenth Opp'n 3; *id.*, Ex. A, at 1 (chart excerpting the relevant language used in each recall)).

In short, New GM itself has treated the Delta Switch and at least some other ignition switches — at a minimum, the Kappa Switch — as "the same."  It follows that some evidence concerning other ignition switches is plainly relevant to Plaintiff's claims as it tends to prove, among other things, New GM's notice of the alleged defect and is relevant to various factors the jury may consider in deciding whether to impose punitive damages.  Further, on the present record, the Court cannot find as a categorical matter that the probative value of the evidence is outweighed, let alone substantially so, by the dangers of unfair prejudice, jury confusion, and waste of time.  *See* Fed. R. Evid. 403.  New GM may be able to make the case for excluding specific evidence relating to other ignition switches — for example, on the ground that there is an insufficient factual basis to conclude that a particular switch is the same or similar to the Delta Switch or on the grounds of cumulativeness or waste of time — but its current motion requests an across-the-board ruling excluding evidence of all ignition switches other than the Delta

3

Switch. In light of New GM's own statements, there is no merit to that request. Accordingly, it is DENIED without prejudice to objection to specific evidence of other ignition switches.

**B. New GM's Seventeenth Motion** *in Limine*

Next, New GM's Seventeenth Motion *in Limine* seeks to preclude Plaintiff from introducing evidence questioning the adequacy of ignition switch recall remedies, including the availability of parts, the availability of loaner vehicles, and the sufficiency of recall repairs performed on other vehicles. (New GM's Seventeenth Mem. 1). New GM does *not* seek to exclude evidence regarding the sufficiency of the recall notification. (*See id.* at 1 n.1; New GM's Reply Supp. Mot. *In Limine* No. 17 (Docket No. 1779) ("New GM's Seventeenth Reply") 1 n.3). For the reasons that follow, the motion is granted with respect to evidence relating to the sufficiency of recall repairs performed on other vehicles, but denied with respect to other evidence relating to recall remedies.

The Court begins with evidence relating to recall repairs performed on other vehicles. The parties agree that Plaintiff received New GM's recall notice in April 2014 and attempted to get his 2003 Saturn Ion repaired at a dealership. (*See* Pls.' Mem. Law Opp'n New GM's Mot. *In Limine* No. 17 (Docket No. 1722) ("Pl.'s Seventeenth Opp'n") 3). But the parties also agree that the recall repairs were never completed because the dealership claimed that the parts needed to complete the repair were on back order. (*See id.*). Given that Plaintiff's car never received the proscribed repairs, New GM is on firm ground in arguing that any evidence relating to the sufficiency of the recall repairs themselves is irrelevant. (*See* New GM's Seventeenth Mem. 4-5; New GM's Seventeenth Reply 1-2). Indeed, Plaintiff does not explain how the adequacy of repairs performed on other vehicles — or lack thereof — could be relevant. It is conceivable that the evidence might be relevant to the question of punitive damages, as Oklahoma law calls for

4

consideration of whether a tortfeasor acted with "reckless disregard for the rights of others." *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 638 (Okla. Ct. App. 2012); *see also* Okla. Stat. tit. 23, § 9.1(A) (1995) (listing the factors a jury may consider in imposing punitive damages); Okla. Uniform Jury Instructions (Civil) § 5.9 (same).  But any probative value with respect to punitive damages is slight and is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  Fed. R. Evid. 403; *see also Phillip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (noting that, while juries may consider harm to people other than the plaintiff in evaluating the "reprehensibility" of a defendant's conduct for purposes of punitive damages, "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers").  In particular, introducing evidence regarding the adequacy of repairs performed would likely involve complicated and contested technical issues that could easily devolve into a sideshow trial within the larger trial.  Plaintiff is therefore precluded from introducing evidence relating to the sufficiency or adequacy of the recall repairs performed on other vehicles.

New GM's arguments for categorically excluding all other evidence relating to the adequacy of the recall remedies — including evidence regarding the availability of loaner vehicles and repair parts — are less persuasive.  New GM argues first that such evidence should be excluded as irrelevant (New GM's Seventeenth Mem. 4-5), but given that Plaintiff received the company's recall notice and attempted to have the recall repairs performed on his car, the adequacy of New GM's efforts to effectuate its recall remedies plainly could — depending on his testimony and other evidence at trial — be relevant to the issue of causation.  (For instance, if Plaintiff were to testify that he did not bring his car to the dealer for repairs because he was told

that it would take a long time to complete the repairs and was not told about the availability of a loaner vehicle, the adequacy — or inadequacy — of New GM's recall remedies would plainly be relevant to causation.)  Further, assuming that Plaintiff's punitive damages claims remain in the case, evidence that New GM failed, despite being on notice of the defect, to take steps to be prepared for the necessary recalls (by, for example, ordering sufficient parts) would be relevant to whether the company showed "reckless disregard for the rights of others."  *Robinson*, 291 P.3d at 638.  New GM also argues that the evidence should be excluded under Rule 403 of the Federal Rules of Evidence (New GM's Seventeenth Mem. 8-9), but — for similar reasons — the Court is not in a position now to perform the relevant balancing analysis, as the inquiry will depend on what evidence Plaintiff offers at trial and for what purpose.  *See, e.g.*, *United States v. Rastelli*, 653 F. Supp. 1034, 1053 (E.D.N.Y. 1986) ("It is generally recognized in this Circuit that a court cannot adequately assess either the probative value or the potential prejudice of the statements at a pre-trial stage of the proceedings." (internal quotation marks omitted)).

Finally, there is no merit to New GM's contention that evidence relating to the recall remedies should be excluded because any inquiry into the adequacy of recall remedies is preempted by NHTSA's exclusive jurisdiction.  (New GM's Seventeenth Mem. 5-8).  In support of that argument, New GM relies on the doctrine of primary jurisdiction, which "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties," *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976) (internal quotation marks omitted), and provides that a court should decline to exercise jurisdiction over a claim "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body," *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (internal

quotation marks omitted).  But, as it did in its Eighth Motion *in Limine* (*see* Mem Law Supp. New GM's Mot. *In Limine* No. 8 (Docket No. 1615) 3-4), New GM confuses a potential basis for *dismissal* with a basis for *excluding evidence*.  New GM is welcome to argue on summary judgment — as it has (*see* Mem. Supp. New GM's Mot. Summ. Judg. (Docket No. 1811) 19-22; *see also* New GM's Seventeenth Reply 4-5) — that some or all of Plaintiff's claims or requests for relief are precluded by the doctrine of primary jurisdiction (or otherwise preempted by federal law).  The doctrine is not, however, a valid basis to exclude evidence that is otherwise admissible with respect to Plaintiff's claims.

      In short, New GM's Seventeenth Motion *in Limine* is granted with respect to evidence of recall repairs performed on other vehicles, but otherwise denied without prejudice to renewed objections to specific evidence at trial.

**C.  New GM's Eighteenth Motion *in Limine***

      New GM's Eighteenth Motion *in Limine* is titled an "Omnibus Motion to Exclude Irrelevant, Pejorative, and Unfairly Prejudicial Remarks," but goes well beyond that to request exclusion of twenty-three diverse categories of evidence.  All in all, the motion is not an especially productive use of the *in limine* process, as it is little more than a laundry list of disparate items, most of which probably did not need to be raised at all (or could have been raised informally with Plaintiff and, if necessary, memorialized on the record at or before trial rather than burdening the Court with motion practice) and some of which should probably have been the subject of their own motions, with more substantive and focused briefing devoted to them.  In the former category, for example, New GM seeks to preclude evidence and argument that it is hard to imagine Plaintiff would ever have even tried to offer — including, for instance, "[i]nflammatory remarks suggesting that any current or former New GM employee, lawyer or

agent is a criminal, murderer, or should be criminally charged or sentenced to jail or prison" (New GM's Eighteenth Mem. 4 (category nine)) and "[a]ny suggestion that any employment decisions were motivated by race" (*id.* (category sixteen)). In a similarly unhelpful vein, New GM tautologically asks the Court to preclude some broad categories of "hearsay" (*e.g.*, *id.* (categories ten and thirteen)). It goes without saying that the Court will not allow either side to admit evidence at trial that is prohibited by the Federal Rules of Evidence; but whether an out-of-court statement is admissible or inadmissible depends on the particulars, including context and the purpose for which it is offered.

In part for these reasons, Plaintiff invites the Court to deny New GM's motion in its entirety. (Pl.'s Mem. Law Opp'n New GM's Mot. *In Limine* No. 18 ("Pl.'s Eighteenth Mem.") 1-3). As tempting as it is, the Court declines the invitation as both sides have briefed the issues and comment is warranted on at least some of the categories. The Court sees no reason, however, to address the twelve categories that Plaintiff does not address (namely, categories two, five, six, seven, eight, nine, sixteen, seventeen, nineteen, twenty-one, twenty-two, and twenty-three), as the Court assumes from Plaintiff's silence that he does not intend to offer evidence or argument that would fall in any of those categories. (If that is not the case, Plaintiff shall advise the Court and New GM sufficiently in advance to allow the Court to address the issue.) Instead, the Court offers the following comments and rulings on the eleven categories to which Plaintiff indicates some opposition.

> • *Category 1: "Improper remarks or comments regarding law firms or lawyers representing New GM, including: (i) the number of law firms or attorneys that have represented New GM in this case or any other matter; (ii) the size of the law firms in which New GM's counsel practice; (iii) the fees charged by New GM's lawyers or law firms; and (iv) prior or current matters on which such law firms or attorneys have or are representing New GM (or had represented Old GM prior to 2009); (v) prior or current clients of New GM's law firms or attorneys, including but not limited to any references to*

*representations of Toyota, Takata, BP, and Volkswagen; and (vi) the residence of any New GM attorney."*

Most, if not all, remarks or comments that fall within Category 1 would be demonstrably improper and will not be permitted. Plaintiff objects on the grounds that the category could be construed "to cover matters involving any similar incidents related to the defective ignition switch" and to "extend[] to litigation conduct by New GM's attorneys" (Pl.'s Eighteenth Opp'n 3), both of which are the subject of other motion *in limine* practice (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 10 (Docket No. 1619); Mem. Law Supp. New GM's Mot. *In Limine* No. 11 (Docket No. 1630)). Similarly, he expresses concern "to the extent that" the category "precludes discussion of the knowledge of New GM attorneys related to the ignition switch defect," which is "relevant to Plaintiff's failure to warn theory, his deceit claim, and to the availability of punitive damages." (Pl.'s Eighteenth Opp'n 3). In the Court's view, however, Category 1 does not extend to any of those areas, but merely seeks to preclude Plaintiff from making comments about topics such as the number of lawyers that have worked on behalf of New GM or the amount of legal fees the company has spent, which would be patently objectionable as irrelevant and prejudicial. To the extent that Category 1 does extend to the areas flagged by Plaintiff, the Court's rulings on the applicable motions *in limine* would govern. And it goes without saying that if a New GM lawyer's knowledge of the defect is relevant to Plaintiff's claims, he will be permitted to introduce it.

• *Category 3: "Any statements or arguments which encourage or attempt to place the jurors in the place of the plaintiff or his family members or friends."*

The parties appear to be in agreement that any such statements or arguments *with respect to damages* would be improper, and the motion is thus granted to that extent — but only to that extent. (*See* New GM's Reply Supp. Mot. *In Limine* No. 18 (Docket No. 1780) ("New GM's Eighteenth Reply") 2; Pl.'s Eighteenth Opp'n 3).

• *Categories 4 and 18: "Any references, statements, or arguments that the jury should send New GM a message."; and "Comments on New GM's ability to pay any judgment, including whether or not it is covered by insurance."*

New GM appears to concede that whether these categories are objectionable turns on whether Plaintiff is permitted to seek punitive damages, which is the subject of its pending summary judgment motion. (New GM's Eighteenth Reply 2-3). As punitive damages are currently in the case, the motion is denied as to these categories. If Plaintiff is precluded from seeking punitive damages, it is hard to see why references or comments falling within either category would be permissible — and the Court assumes that Plaintiff would not seek to offer them. If Plaintiff is precluded from seeking punitive damages, Plaintiff shall advise the Court and New GM if he believes otherwise before offering any such evidence or argument.

• *Categories 10 and 13: "References, remarks regarding, or reliance on hearsay statements in newspapers, internet websites or blogs, magazines, books, or other publications."; and "Any hearsay statements by doctors or other healthcare professionals regarding plaintiff's injuries and the cause of such injuries."*

As discussed above, there is little gained by ruling on these requests in advance of trial. If Plaintiff offers hearsay, and it does not fall within an exception to the prohibition on hearsay, the Court will not admit it. On the other hand, an out-of-court statement that

10

might be hearsay if offered for the truth of the matter asserted might be admissible for another purpose, *see, e.g.*, *Tennessee v. Street*, 471 U.S. 409, 413 (1985) , or may fall within an exception to the prohibition on hearsay, *see* Fed. R. Evid. 803-04.  A motion *in limine* is helpful if it addresses the admissibility of specific evidence in advance of trial, especially if the question of admissibility is complex or hotly contested.  It does little to advance the ball if all the Court is asked to do is rule that inadmissible evidence will not be admitted.  Accordingly, New GM's motion with respect to Categories 10 and 13 is denied without prejudice to renewal at trial.

• *Category 11: "References to the "bellwether" process, including the fact that this case is one of the bellwether trials, as well as any references to who selected or "picked" this case for trial."*

The Court agrees with New GM that the "bellwether" process — including how and who selected Plaintiff's case for trial — is irrelevant.  Beyond that, whether and to what extent Plaintiff may introduce evidence of "other similar incidents" is the subject of separate motion practice and will be ruled upon in due course.  (*See* Mem. Law Supp. New GM's Mot. *In Limine* No. 11).

• *Category 12: "References to a 1973 memo authored by a former Old GM employee, Edward Ivey."*

The Court is skeptical — for various reasons, including but not limited to relevance and the Bankruptcy Court's November 9, 2015 ruling, (*see* Case No. 09-50026 Docket No. 13533) — about the admissibility of a memorandum authored by an Old GM employee thirty years before the car at issue in this case was even manufactured.  That said, New GM's briefing is patently inadequate to justify ruling on the issue in advance

of trial. Its opening brief includes no discussion of the memorandum, let alone legal argument about its admissibility — it merely includes the one sentence quoted above, without additional explanation. Further, to the Court's knowledge, New GM did not even submit a copy of the memorandum to the Court to aid in its review. And although New GM devoted a whopping four sentences to the issue in its reply, that discussion is hardly sufficient either — and Plaintiff has obviously not had an opportunity to respond. Accordingly, the motion is denied with respect to Category 12 without prejudice to renewal at trial.

• *Category 14: "Testimony regarding other alleged defects in the plaintiff's vehicle or any other Old or New GM vehicle that are not alleged to be causally related to the accident or plaintiff's injuries."*

Once again, the parties do not appear to have a dispute. Plaintiff appears to object only "[t]o the extent that" the category "is meant to encompass all evidence" of cars "that contained the deadly ignition switch defect" (Pl.'s Eighteenth Opp'n 8-9), which is the subject of New GM's Sixteenth Motion *in Limine*, addressed above. In its reply, however, New GM clarifies that "the purpose of this category is to exclude evidence or argument regarding other alleged vehicle defects (*e.g.*, claimed roof defects) that have nothing to do with this case." (New GM's Eighteenth Reply 4). The Court agrees that such evidence and argument would be irrelevant — and does not understand Plaintiff to argue otherwise.

• *Category 15: "Evidence or argument regarding Old or New GM advertisements absent an offer of proof outside the presence of the jury that plaintiff actually saw and relied on such advertisements."*

This is another category that should probably have been the subject of its own motion. In any event, New GM's reply makes clear that whether the category is admissible or not turns, at least in part, on arguments made in its summary judgment motion. (*See* New GM's Eighteenth Reply 5). Accordingly, the Court defers ruling on the issue until after it resolves New GM's motion for summary judgment.

• *Category 20: "Arguments or remarks regarding any party's failure to call any particular witness available equally to all parties herein through the subpoena process."*

The Court can and will address this category through appropriate instructions to the jury at trial and, if necessary, in advance of the parties' summations.

\*       \*       \*

In short, New GM's Eighteenth Motion *in Limine* — unnecessary and inappropriate though much of it is — is GRANTED in part and DENIED in part, as discussed above.

## CONCLUSION

For the foregoing reasons, New GM's Sixteenth Motion *in Limine* is DENIED, its Seventeenth Motion *in Limine* is GRANTED in part and DENIED in part, and its Eighteenth Motion *in Limine* is GRANTED in part and DENIED in part. More specifically, Plaintiff is not categorically precluded from introducing evidence concerning non-Delta ignition switches; may not raise evidence relating to the sufficiency of recall repairs performed on other vehicles, but is not precluded from introducing other evidence relating to the adequacy of New GM's recall remedies. Finally, as explained above, Plaintiff is prohibited from raising certain categories of evidence challenged in New GM's Eighteenth Motion *in Limine*.

The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 1639, 1641, and 1643; and 14-CV-8176, Docket Nos. 178, 180, and 182.

SO ORDERED.

Dated: December 7, 2015
      New York, New York

JESSE M. FURMAN
United States District Judge