USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/09/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Fleck, et al. v. General Motors LLC, 14-CV-8176*
------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Twelfth, Fourteenth, and Fifteenth Motions *in Limine*
and Plaintiff's Third Motion *in Limine*]**

The first bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Robert S. Scheuer and familiarity with which is presumed, is scheduled to begin on January 11, 2016. (*See* Docket No. 1694). The parties have filed twenty-eight motions *in limine*, many of which the Court has already decided. This Opinion addresses the remaining four undecided motions that are now fully submitted:

- New GM's Twelfth Motion, which seeks to preclude Plaintiff from introducing the investigative report prepared by Jenner & Block LLP Chairperson Anton Valukas (the "Valukas Report" or "Report") (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 12 (Docket No. 1632) ("New GM's Twelfth Mem.") 1);

- New GM's Fourteenth Motion, which seeks to exclude testimony and evidence from four public hearings held by congressional committees regarding the ignition switch recall (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 14 (Docket No. 1636) ("New GM's Fourteenth Mem.") 1, 3-4);

- New GM's Fifteenth Motion, which seeks to exclude several government reports regarding the ignition switch defect and recalls (*see* Mem. Law Supp. New GM's Mot. *In Limine* No. 15 (Docket No. 1638) ("New GM's Fifteenth Mem.") 2-3); and

- Plaintiff's Third Motion, which seeks to preclude evidence regarding Plaintiff's use of prescription pain medication on the day of his accident. (*See* Pl.'s Mem. Law Supp. Mot. *In Limine* No. 3 (Docket No. 1715) ("Pl.'s Third Mem.")).

For the reasons stated below, New GM's Twelfth Motion is DENIED, New GM's Fourteenth Motion is DENIED in part and GRANTED in part, New GM's Fifteenth Motion is DENIED, and Plaintiff's Third Motion is GRANTED.[1]

## DISCUSSION

### A. New GM's Twelfth Motion *in Limine*

In its Twelfth Motion *in Limine*, New GM seeks to exclude the Valukas Report — a report prepared by the Chairperson of Jenner & Block LLP, who was hired by New GM "to investigate the Cobalt/Ion ignition switch recalls." (New GM's Twelfth Mem. 1). As discussed in some detail in prior Opinions of the Court, *see In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 4750774, at *1 (S.D.N.Y. Aug. 11, 2015); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 524-25 (S.D.N.Y. 2015), Valukas and his team conducted hundreds of interviews and reviewed millions of documents. The result of their efforts was a 315-page report, with detailed findings and recommendations, presented to New GM's Board of Directors in July 2014. New GM contends that the Report is inadmissible in its entirety as "hearsay that is not subject to any hearsay exception under the Federal Rules of Evidence." (New GM's Twelfth Mem. 1). Plaintiff counters that the Report is admissible on various grounds, most prominently as an adoptive admission pursuant to Rule 801(d)(2)(B) of the Federal Rules of Evidence. (*See* Pls.' Opp'n New GM's Mot. *in Limine* No. 12 (Docket No. 1717) ("Pl.'s Twelfth Opp'n") 1). The Court agrees with Plaintiff.

---

[1] Many of the evidentiary issues to be decided in these motions may be affected — or even mooted — by later motions *in limine*, *Daubert* motions, or dispositive motions (all of which have now been filed, and will be fully briefed by December 21, 2015). (*See* Order No. 85, Docket No. 1694). Needless to say, the Court's rulings are subject to modification — or even reconsideration — as appropriate in light of the parties' motions that are not yet decided (or fully briefed).

Under Rule 801(d)(2)(B), a statement offered for its truth is not hearsay when it "is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B); *see United States v. Stafford*, 422 F. App'x 63, 65 (2d Cir. 2011) (summary order); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238 (2d Cir. 1999) (Sotomayor, J.). Significantly, the rationale for admitting such statements is rooted in the "'adversary system, rather than satisfaction of the conditions of the hearsay rule,'" namely, reliability. *Schering*, 189 F.3d at 238 (quoting Fed. R. Evid 801(d)(2)(B) advisory committee's note). Thus, "[t]he Advisory Committee . . . recommends 'generous treatment of this avenue to admissibility,'" *id.* (quoting Fed. R. Evid 801(d)(2)(B) advisory committee's note), and explains that "'[a]doption or acquiescence may be manifested in any appropriate manner,'" *Stafford*, 422 F. App'x at 65 (quoting Fed. R. Evid 801(d)(2)(B) advisory committee's note). Given the theory of admission — that, by adopting the statement, the party has, in essence, made the statement its own — an adoptive admission may be admissible against a party even if it contains a second level of hearsay. As the Second Circuit has explained, "a party admission containing hearsay is admissible where . . . the admission draws inferences from the underlying hearsay and thus 'manifest[s] an adoption or belief in its truth.' A party admission may, however, be inadmissible when it merely repeats hearsay and thus fails to concede its underlying trustworthiness." *Schering*, 189 F.3d at 239 (brackets in original) (citation omitted) (quoting Fed. R. Evid. 801(d)(2)(B) and discussing *Pekelis v. Transcon. & W. Air, Inc.*, 187 F.2d 122 (2d Cir. 1951)).

Where, as here, the statement at issue is a document, the adoptive admission "test is 'whether the surrounding circumstances tie the possessor and the document together in some meaningful way.'" *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (quoting *Pilgrim v. Trustees of Tufts Coll.*, 118 F.3d 864, 870 (1st Cir. 1997)). Applying that

3

test, courts — including the Second Circuit — have held that "[a] document is sufficiently 'tied' to the possessor 'to the extent that the adoptive party accepted and acted upon the evidence'" by, for example, taking an action of some importance, such as firing an employee or removing an employee from supervisory duties. *Id.* (quoting *Pilgrim*, 118 F.3d at 870); *see id.* at 1268-69 (holding that an investigative report qualified as an adoptive admission where the defendant had relied on it to seek an employee's resignation); *Schering*, 189 F.3d at 239 (holding that a survey was an adoptive admission where an employee's analysis of the survey contained conclusions that depended on a belief in the reliability of the interview statements quoted in the report and on the survey's overall methodology); *Pilgrim*, 118 F.3d at 870 (holding that a grievance committee report was an adoptive admission because the university president to whom it was submitted had implemented all three of the report's recommendations, including relieving an employee of supervisory duties); *Pekelis*, 187 F.2d at 128-29 (holding that investigative reports were adoptive admissions because they were "intended to be final" and the company had taken remedial action on the basis of the reports' recommendations); *see also, e.g.*, *Penguin Books U.S.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 259 (S.D.N.Y. 2003) ("[E]ven if the document is not expressly 'vouched for' by the party it must only be shown by implication that business was conducted in a fashion that the statement was adopted." (citing *Pekelis*, 187 F.2d at 128)). Notably, the party offering a document as an adoptive admission need not show that the adopting party manifested a belief in each and every statement in the document. To the extent that the adopting party "need not have believed every statement" to take action in reliance on the document, "that fact goes to the weight of the evidence rather than its admissibility." *Wright-Simmons*, 155 F.3d at 1269.

The Tenth Circuit's decision in *Wright-Simmons* is instructive. There, a city employee brought claims for discrimination and retaliation under Title VII, "alleg[ing] that one of her supervisors, Terry Armentrout, created a racially hostile work environment." 155 F.3d at 1266. Based on the plaintiff's complaints, the personnel department conducted an investigation, including fourteen witness interviews, and produced a two-page report concluding that "the criteria for determining racial harassment ha[d] been met." *Id.* at 1267. "[B]ased on the information contained in the report," the City Manager then told Armentrout that he must resign or be fired. *Id.* On appeal, the Tenth Circuit adopted the First Circuit's approach in *Pilgrim*, and held that the report and attached interview notes were adoptive admissions. The City Manager, the Court explained, "would not have sought Terry Armentrout's resignation had he not believed [the personnel department] report." *Id.* at 1268. Further, when he asked Armentrout to resign or be fired, the City Manager stated that the information he had (from the report) "seem[ed] to be substantiated" and cited several people who had said damaging things about Armentrout, thereby making it "apparent" that he had "relied not only on [the] two-page report, but on the attached notes of witness interviews." *Id.* at 1269. The Court acknowledged that the City Manager "need not have believed every statement in the report to reach the conclusion that Armentrout should resign," but ruled that "that fact goes to the weight of the evidence rather than its admissibility." *Id.* In short, because the City Manager had "accepted the documents and acted upon them," the Tenth Circuit held that they were not hearsay and were therefore admissible. *Id.*

Applying the foregoing standards here, the Court concludes that the Valukas Report is "sufficiently 'tied'" to New GM to qualify as an adoptive admission under Rule 801(d)(2)(B). *Wright-Simmons*, 155 F.3d at 1268 (quoting *Pilgrim*, 118 F.3d at 870). First, New GM provided the Report to Congress, the Department of Justice, and the National Highway Traffic Safety

5

Administration ("NHTSA") as the closest thing to the company's official record of the events leading up to the ignition switch recalls. (*See* New GM's Twelfth Mem., Ex. 2, at 2; Pl.'s Twelfth Opp'n 3-4; *id.*, Ex. 4, at 1). Second, in public statements, New GM has tended to treat the Report as a unitary item and repeatedly affirmed its acceptance of its entire content. Most prominently, during her congressional testimony, New GM's Chief Executive Officer Mary Barra affirmed that she accepted the Valukas Report as factual; stated that "overall the Valukas Report characterizes and captures what happened"; and stated that New GM officials "went through the details of the Valukas Report very carefully." (New GM's Twelfth Mem., Ex. 4, at 1; Pl.'s Twelfth Opp'n, Ex. 3, at 6-7). And in light of the Report's "overall" accuracy, New GM committed to following — and, in fact, has followed — *all* of the Report's many recommendations, including recommendations to fire certain personnel. (New GM's Twelfth Mem., Ex. 4, at 1; Pl.'s Twelfth Opp'n, Ex. 3, at 7). After affirming that the Report "overall . . . characterizes and captures what happened," for example, Barra stated that "that's why we're going to implement all of the recommendations that were made." (New GM's Twelfth Mem., Ex. 4, at 1; Pl.'s Twelfth Opp'n, Ex. 3, at 7). She also noted that the Report made "a series of recommendations in eight main areas" and said that she "committed the company to act on all of the recommendations." (Pl.'s Twelfth Opp'n, Ex. 4, at 3). Taken together, these "surrounding circumstances" plainly "tie" New GM and the Valukas Report "together in some meaningful way." *Pilgrim*, 118 F.3d at 870 (internal quotation marks omitted).

    New GM's arguments to the contrary are unpersuasive. First, New GM argues that the Valukas Report — in its sheer length (315 pages) and breadth (covering a span of many years) — is more substantial than the investigative reports at issue in the cases cited above. (New GM's Twelfth Mem. 1; Reply Supp. New GM's Mot. *In Limine* No. 12 (Docket No. 1766)

("New GM's Twelfth Reply") 3). That is certainly true and, if Plaintiff were resting solely on the fact that New GM had followed the Report's recommendations, the distinction might have made a difference. But between Barra's testimony about the "overall" accuracy of the Report; New GM's adoption of "all" the Report's recommendations, "without disclaimer," *Pilgrim*, 118 F.3d at 870; and the fact that New GM has not contradicted any factual statement in the Report, it is reasonable to treat the Report as having been adopted by New GM in its entirety. Second, New GM emphasizes that, after Barra's testimony before Congress, the company wrote to clarify that no one at the company, including Barra herself, had "attempted to confirm or verify each and every factual statement contained" in the Report. (New GM's Twelfth Mem. 1; New GM's Twelfth Reply 1-2). But Barra testified as she did — without that qualification — and, in any event, the weight of authority compels the conclusion that whether New GM believed every statement in the Report ultimately "goes to the weight of the evidence rather than its admissibility." *Wright-Simmons*, 155 F.3d at 1269; *see also Pilgrim*, 118 F.3d at 870; *Pekelis*, 187 F.2d at 128; *Penguin Books*, 262 F. Supp. 2d at 259. *But see Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 789 F. Supp. 2d 777, 781 (E.D. Mich. 2011) (holding that a company's reliance on survey data when making business decisions did not qualify as an adoptive admission because there was no indication that the company "made use of, relied upon, or otherwise vouched for the truth of the *specific aspect* of the survey data that is pertinent").

Third, New GM asserts that, even before the Report was completed, it had fired some personnel and begun implementing changes that the Report later recommended. (*See* New GM's Twelfth Reply 1-2). That New GM may have anticipated some of the Report's recommendations, however, does nothing to counteract the impression that New GM agreed with, and adopted, the Report's recommendations, thereby manifesting an adoption or belief in

7

the Report's truth. (*See* Pl.'s Twelfth Opp'n, Ex. 4)). As noted, Barra herself publicly "committed the company to act on all of the recommendations." (*Id.* at 3). And Barra also stated that New GM made many personnel decisions "[*a*]*fter* reviewing the Valukas report." (*Id.* at 1 (emphasis added)). Finally, New GM objects on the ground that many of the statements within the Valukas Report are themselves hearsay. (*See* New GM's Twelfth Mem. 11-15; New GM's Twelfth Reply 4-5). But by vouching for the "overall" reliability of the Report, New GM effectively "concede[d] its underlying trustworthiness," and, in essence, made most, if not all, of its contents its own statements. *Schering*, 189 F.3d at 239. Moreover, "as in *Pekelis*, the admission draws inferences from the underlying hearsay and thus 'manifest[s] an adoption or belief in its truth.'" *Id.* at 239 (brackets in original) (quoting Fed. R. Evid. 801(d)(2)(B)); *see also Wright-Simmons*, 155 F.3d at 1268-69 (holding that the defendant had adopted both the investigative report *and* notes of witness interviews upon which the report was based).[2]

In short, given the totality of the circumstances, the Valukas Report does not qualify as hearsay in light of Rule 801(d)(2)(B). That does not end the analysis, however, as New GM is on firmer ground in arguing that admitting the whole Report, or even large sections of it, would

---

[2] New GM suggests in passing that, to the extent the Valukas Report contains opinions, its admission would also violate Rules 701 and 702 of the Federal Rules of Evidence. (*See* New GM's Twelfth Mem. 14; New GM's Twelfth Reply 5). But New GM fails to identify any specific statement in the Report that would run afoul of those Rules; nor does it cite any legal authority in support of its argument. Notably, in *Pekelis*, the Second Circuit held (before adoption of the Federal Rules of Evidence) that the "'Opinion Rule does not limit the use of a party's admissions.' . . . The fact that [the reports] were based on hearsay and expressed opinions would go to their credibility rather than to their admissibility." 187 F.2d at 129 (quoting 4 John H. Wigmore, *Evidence* § 1053(3) (3d ed. 1940)). *But see Middleby Corp. v. Hussman Corp.*, No. 90-CV-2744 (SBC), 1993 WL 151290, at *3 (N.D. Ill. May 7, 1993) (noting that "Rule 701 may . . . operate to exclude" party admissions (citing 2 *McCormick on Evidence* § 256 (John W. Strong ed., 4th ed. 1992))).

run afoul of Rule 403 of the Federal Rules of Evidence.  Judge Hellerstein's observations about the 9/11 Commission Report in *In re September 11 Litigation*, 621 F. Supp. 2d 131 (S.D.N.Y. 2009), apply with almost equal force here: "Although specific statements may be relevant, useful, and admissible, admitting longer sections of the report would cause the trial to digress into innumerable arguments relating to myriad issues, causing undue prejudice, extensive delay, and confusion."  *Id.* at 157 (citing Fed. R. Evid. 403).  To be sure, as a public report of a Government commission, the 9/11 Commission Report was different from the Valukas Report.  (Among other things, it presented double hearsay problems that, for the reasons explained above, are not an issue here.  *See id.*)  But, as in that case, admitting the Valukas Report

> in bulk, rather than by evaluation of specific statements, would choke the proceedings. . . .  Inevitably, admitting any lengthy section of the report, [effectively] a book brimming with findings and recommendations, and subjecting the many findings to impeaching arguments and evidence, would overwhelm the trial and affect its fairness.  Fed. R. Evid. 403.  The sheer volume of interviews and documents [and] the confidentiality that pervades the interviews . . . surely will create scores of mini-trials as each finding of [the] Report is asserted and challenged.  Challenging even a single finding could implicate a panoply of documents and interviews.  Without reasonable limitations regarding the statements presented from [the] Report, a fair and efficient trial could not take place.  See Fed. R. Evid. 403.

*Id.* at 158.  That is, however valuable the Valukas Report may be to Plaintiff, and however much New GM has embraced it, the Court cannot, and will not, let Plaintiff rely on the Report "to displace the time-tested search for truth by examination and cross-examination."  *Id.* at 157.

Thus, New GM's Twelfth Motion *in Limine* is DENIED to the extent that it seeks to preclude Plaintiff from admitting the Valukas Report at all, but it is GRANTED to the extent that it seeks to preclude Plaintiff from admitting the Report in its entirety.  Instead, the Court will allow Plaintiff to admit a reasonable number (up to, perhaps, twenty or twenty five) of excerpts of reasonable length (up to, perhaps, a few pages each) from the Report.  New GM is entitled to

know sooner rather than later which excerpts Plaintiff proposes to admit, as it may have Rule 403 objections to them or have an argument, under Rule 106 of the Federal Rules of Evidence, that other parts of the Report should "in fairness" be admitted.  Fed. R. Evid. 106.  To that end, Plaintiff shall, no later than **December 14, 2015**, disclose to New GM any and all excerpts from the Report that he proposes to introduce; no later than **December 18, 2015**, New GM shall advise Plaintiff if it has any objections, under Rule 403, Rule 106, or otherwise, with respect to the proposed excerpts; and the parties shall then meet and confer in an effort to resolve any objections.  Any disputes shall be raised with the Court in simultaneous letter briefs, **not to exceed ten pages**, no later than **December 23, 2015**.

B.  **New GM's Fourteenth Motion** *in Limine*

New GM's Fourteenth Motion *in Limine* seeks to exclude testimony and statements from four public hearings held by congressional committees regarding the ignition switch defect and recalls.  (New GM's Fourteenth Mem. 1, 3-4).  More specifically, New GM seeks to preclude Plaintiff from using (except for purposes of impeachment) two categories of such evidence.  (New GM's Reply Supp. Mot. *In Limine* No. 14 (Docket No. 1776) ("New GM's Fourteenth Reply") 5).  First, New GM objects, on hearsay and Rule 403 grounds, to the admission of testimony and statements from non-employees, including Valukas; Kenneth Feinberg, a lawyer who administered a well-publicized private settlement protocol that New GM established; Rodney O'Neal, the Chief Executive Officer of Delphi Automotive, one of New GM's suppliers; David Friedman, Acting Administrator of NHTSA; and Members of Congress.  (New GM's Fourteenth Mem. 2).  Second, New GM objects, on Rule 403 grounds, to the admission of testimony by its current and former employees, including Barra and Michael Millikin, who was General Counsel of New GM at the time of the relevant testimony.  (*Id.*).

The first category of evidence is inadmissible (if offered for the truth of the matter asserted). Plaintiff does not dispute that statements contained in "testimony before a congressional committee" and offered for the truth of the matter asserted therein are "manifestly hearsay." *Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 815 (D.D.C. 1987). And while there are obviously many exceptions to the prohibition on hearsay, Plaintiff identifies none that could apply to the statements and testimony of Valukas, Feinberg, O'Neal, Friedman, and Members of Congress, who did not testify or speak as agents of New GM.[3] Plaintiff vaguely contends otherwise by offering the "easy example" that "certain statements made by [O'Neal] may be statements against interest." (Mem. Law Opp'n New GM's Mot. *In Limine* No. 14 (Docket No. 1719) ("Pl.'s Fourteenth Opp'n") 3). But that exception applies only if the declarant is unavailable, a prerequisite Plaintiff does not even attempt to address with respect to O'Neal. *See* Fed. R. Evid. 804(b)(3). Plaintiff also suggests that the testimony of Valukas and Feinberg is admissible under Rule 803(8), the public records exception. (Pl.'s Fourteenth Mem.

---

[3] Notably, Plaintiff does not argue that the testimony of Valukas and Feinberg are admissible either on the ground that they were acting as agents of New GM or on the ground that their testimony was adopted by the company. With respect to the former, the Court is inclined to agree with New GM that Valukas was not acting as an agent even for purposes of his investigation and Report. (*See, e.g.*, New GM's Twelfth Mem. 10-11 ("Far from exercising the 'continuous supervisory control' necessary for agency, New GM did not exercise any control over how Mr. Valukas conducted his investigation, how he wrote his Report, or what conclusions he reached." (quoting *Lippay v. Christos*, 996 F.2d 1490, 1499 (3d Cir. 1993))). *See also Thomas v. Metro. Dist. Comm'n*, No. 3:02-CV-457 (MRK), 2004 WL 2549728, at *2 (D. Conn. Nov. 5, 2004) (holding that a law firm was not the client's agent where, among other things, the client "considered the firm to be an entirely independent and impartial investigator, . . . provided no input into the contents of the Report, and . . . had not adopted or acquiesced in the statements contained in the Report"). In any event, the case for treating him as an agent for purposes of his congressional testimony is even weaker. With respect to the latter, Plaintiff points to no evidence that New GM "adopted or believed" the testimony (as opposed to the Report, discussed above) "to be true." Fed. R. Evid. 802(d)(2)(B).

11

5).  But the case on which Plaintiff relies involved the testimony of the Director of the Securities and Exchange Commission's Division of Enforcement regarding factual findings based upon an investigation made pursuant to "Congressionally-granted" authority.  *S.E.C. v. Pentagon Capital Mgmt. PLC*, 722 F. Supp. 2d 440, 442 (S.D.N.Y. 2010).  Valukas's investigation and Feinberg's efforts were not "legally authorized" in the same manner and thus do not fit within the public records exception.  Fed. R. Evid. 803(8)(A)(iii).  Plaintiff having failed to identify any conceivable hearsay exception that could apply, GM's motion is granted with respect to the statements and testimony of Valukas, Feinberg, O'Neal, Friedman, and Members of Congress.

By contrast, New GM offers no basis to preclude in advance of trial the testimony of Barra and Millikin, which is plainly not hearsay under Rule 801(d)(2).  (*See* New GM's Fourteenth Mem. 7 (conceding that their testimony "may arguably be admissible under Rule 801(d)(2))).  New GM argues for several reasons that their testimony should be excluded under Rule 403 (New GM's Fourteenth Mem. 7-8; New GM's Fourteenth Reply 4-5), but its arguments are without merit.  First, New GM contends that, because the questions posed by the Members of Congress should be excluded as hearsay, the testimony of Barra and Millikin would be "stripped of their context," resulting in prejudice and confusion.  (New GM's Fourteenth Mem. 7).  But the questions posed to Barra and Millikin would be offered for context only, not for their truth, and thus (except perhaps where they cross the line from questions to statements, a line Members of Congress are certainly known to cross on occasion) they do not qualify as hearsay.  *See, e.g.*, *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (per curiam) ("A question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion."); *accord United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990).  Second, New GM contends that "there is an important distinction between congressional testimony versus

testimony in a judicial proceeding" and that there is a risk that the jury could place inordinate weight on the testimony "believing it is the equivalent of testimony in a judicial proceeding when it is not." (New GM's Fourteenth Mem. 8). But the same argument could be made with respect to *any* out-of-court statement by a party. Statements of a party are not admissible, however, based on their similarities to in-court testimony or trustworthiness; they "are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system." Fed. R. Evid. 801, advisory committee's note to 1972 amend. Moreover, any potential for confusion can be addressed through appropriate limiting instructions.

The only potentially compelling Rule 403 argument that New GM makes against admission of the congressional testimony of Barra and Millikin is the argument that such evidence would be cumulative — in light of the fact that Barra and Millikin have been deposed and may testify at trial (not to mention the admission of excerpts from the Valukas Report, discussed above). (New GM's Fourteenth Mem. 8). But that argument is not yet ripe. *See, e.g.*, *Cruz v. Kumho Tire Co.*, No. 8:10-CV-219, 2015 WL 2193796, at *9 (N.D.N.Y. May 11, 2015) ("The Court cannot determine whether Mr. Derian's testimony . . . is cumulative . . . without the benefit of observing the evidence presented at trial.").

In short, New GM's Fourteenth Motion *in Limine* is granted with respect to the testimony and statements of Valukas, Feinberg, O'Neal, Friedman, and Members of Congress (to the extent they are offered for their truth), and denied with respect to the testimony and statements of Barra and Millikin. That denial is without prejudice to New GM's raising Rule 403 objections to specific portions of the testimony (including statements or otherwise inappropriate questions by Members of Congress). It is also without prejudice to New GM's cumulativeness objection, which New GM may renew at trial when the Court has a better sense of Plaintiff's case.

## C. New GM's Fifteenth Motion *in Limine*

New GM's Fifteenth Motion *in Limine* seeks to preclude several government reports, of which Plaintiff plans to offer only one: NHTSA's *Path Forward* Report. (New GM's Fifteenth Mem. 2-3; Pl.'s Mem. Law Opp'n New GM's Mot. *In Limine* No. 15 (Docket No. 1720) ("Pl.'s Fifteenth Opp'n") 1; *see id.*, Ex. A ("*Path Forward* Report")). New GM effectively concedes that the NHTSA Report, which contains a detailed set of "Findings," is a "public record" within the meaning of Rule 803(8) of the Federal Rules of Evidence, and for good reason. *See, e.g.*, *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 366 (W.D.N.Y. 1999) ("[T]he NHTSA Report is admissible as a public record pursuant to Fed. R. Evid. 803(8). It is well settled that administrative reports and investigations are admissible pursuant to Rule 803(8)."). Instead, New GM argues that the NHTSA Report is irrelevant and, if relevant, inadmissible in its entirety on double hearsay and Rule 403 grounds. (New GM's Reply Supp. Mot. *In Limine* No. 15 (Docket No. 1777) ("New GM's Fifteenth Reply") 2-4).

The Court disagrees. First, New GM's relevance objection is without merit, as the *Path Forward* Report plainly has relevant content. Most prominently, it includes a section titled "GM Ignition Switch Recall: Who Knew What and When" that lays out key events in the recall narrative, such as what GM knew and when and what GM disclosed to NHTSA and when. (*Path Forward* Report 6-16). It also includes a section titled "Findings," one of which is that "GM withheld critical information about engineering changes that would have allowed NHTSA to more quickly identify the defect." (*Id.* at 16-19). Second, although New GM is correct in asserting that hearsay within a public record must itself meet an independent hearsay exception, *see, e.g.*, *Lewis v. Velez*, 149 F.R.D. 474, 487 (S.D.N.Y. 1993), the only hearsay that New GM alleges in the *Path Forward* Report are its quotations from and references to the Valukas Report.

14

As discussed above, that Report does not qualify as hearsay pursuant to Rule 801(d)(2)(B). It follows that New GM's primary Rule 403 argument for excluding the *Path Forward* Report in its entirety — that "sifting through mounds of inner or multiple hearsay would cause undue delay and confusion" — has no force. (New GM's Fifteenth Reply 4).

Thus, to the extent that New GM seeks an order in advance of trial precluding the *Path Forward* Report altogether, its motion is DENIED. (And to the extent that New GM seeks to preclude other Government reports, its motion is DENIED as moot in light of Plaintiff's representations that he does not intend to offer any other reports.) That said, the Court reserves judgment on whether admission of the NHTSA Report would be cumulative, *see* Fed. R. Evid. 403, as many of its findings are derivative of the Valukas Report and will presumably be covered also by witness testimony and other evidence at trial. In addition, as it did with the Valukas Report, the Court concludes that the *Path Forward* Report should not be admitted in its entirety. Portions of the Report — such as findings relating to NHTSA's own failings — are altogether irrelevant to the issues in this trial. And New GM may have valid Rule 403 objections with respect to specific portions of the NHTSA Report. Accordingly, the parties shall meet and confer with respect to proposed redactions to the *Path Forward* Report. Any disagreements can be raised with the Court in the simultaneous letter briefs to be filed by **December 23, 2015**.

### D. Plaintiff's Third Motion *in Limine*

Plaintiff's Third Motion *in Limine* seeks to preclude evidence and argument relating to his ingestion of a pain medication pill the morning of his car accident — a pill that he took to address back pain arising from a preexisting injury. (*See* Pl.'s Third Mem. 2; Pl.'s Reply Mem. Law Further Supp. Mot. *In Limine* No. 3 (Docket No. 1826) ("Pl.'s Third Reply") 1-2; New GM's Opp'n Pl.'s Mot. *In Limine* No. 3 (Docket No. 1769) ("New GM's Third Opp'n") 1).

Significantly, Plaintiff does *not* seek to preclude evidence or argument concerning his ingestion of pain medication before the day of his accident, as he concedes that such evidence is relevant to the issue of medical causation — that is, whether the accident caused his injuries or whether those injuries already existed; instead, he seeks to exclude only evidence and argument "of pain medication use *on the day of the accident*."  (Pl.'s Third Reply 1).

Although Plaintiff appears to argue otherwise (Pl.'s Third Mem. 4-5; Pl.'s Third Reply 4), his use of pain medication on the day of the accident is no less relevant to the issue of medical causation than his use of pain medication on prior occasions.  Nevertheless, the Court agrees that such evidence is precluded by Rule 403.  First, in light of the fact that New GM can introduce evidence of Plaintiff's use of pain medication on other occasions (not to mention, testimony and records relating to Plaintiff's prior injuries, *see In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 7455569, at *2-3 (S.D.N.Y. Nov. 23, 2015)), evidence that he took a pill on the morning of the accident has limited probative value with respect to medical causation.  New GM contends that the evidence is also relevant to the issues of general causation and contributory negligence — on the theory that the medication may have impaired Plaintiff's driving abilities (New GM's Third Opp'n 2-4) — but, a generic warning on the medication's warning label aside, the company has absolutely no evidence to support the contention that the single pill Plaintiff ingested in the morning could have impaired his driving more than five hours later. (*See* Pl.'s Third Mem. 4).  On the flip side, the dangers of unfair prejudice, misleading and confusing the jury, and wasting time are all too real.  The evidence could easily lead the jury to speculate — with no evidentiary basis — about whether the medication impaired Plaintiff's driving abilities.  And, were New GM to introduce the evidence, Plaintiff would be compelled to introduce "testimony and evidence of his past injury history, and

his prescription history and other testimony regarding his entirely legal and proper use of pain medication" (Pl.'s Third Mem. 5), all of which would be a sideshow. Accordingly, Plaintiff's Third Motion *in Limine* is GRANTED.

## CONCLUSION

For the foregoing reasons, New GM's Twelfth Motion is DENIED, New GM's Fourteenth Motion is DENIED in part and GRANTED in part, New GM's Fifteenth Motion is DENIED, and Plaintiff's Third Motion is GRANTED. More specifically, Plaintiff is not precluded from introducing the Valukas Report, but the parties must meet and confer according to the schedule set forth above and (if there are any disputes) submit proposed excerpts, along with any Rule 403 or Rule 106 objections, in simultaneous letter briefs to be filed **December 23, 2015**; Plaintiff may not introduce for their truth the testimony or statements of Valukas, Feinberg, O'Neal, Friedman, or Members of Congress; Plaintiff may introduce the testimony of Barra and Milliken, subject to certain Rule 403 objections; Plaintiff is not precluded from introducing the *Path Forward* Report, but must meet and confer with New GM to address whether and to what extent the Report should be redacted; and New GM may not introduce evidence of Plaintiff's use of pain medication on the morning of the crash.

The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 1631, 1635, 1637, and 1714; and 14-CV-8176, Docket Nos. 170, 174, 176, and 196.

SO ORDERED.

Dated: December 9, 2015
       New York, New York

_____
JESSE M. FURMAN
United States District Judge