USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Fleck, et al. v. General Motors LLC, 14-CV-8176*
------------------------------------------------------------------------x

14-MD-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding the Admissibility of Other Similar Incident Evidence]**

The first bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Robert S. Scheuer and familiarity with which is presumed, is scheduled to begin on January 11, 2016. (*See* Docket No. 1694). One of the parties' many pretrial disputes concerns the admissibility of "other similar incident" (or "OSI") evidence. More specifically, Plaintiff seeks an advanced ruling that he may introduce evidence — through, among other things, ten lay witnesses as well as expert testimony — concerning fifteen other crashes allegedly attributable to the ignition switch defect in certain GM cars. (Pl.'s Mem. Law Regarding Other Similar Incidents (Docket No. 1833) ("Pl.'s OSI Mem.") 5-19). New GM argues that the evidence should all be excluded, primarily on the ground that the other incidents were not sufficiently similar to the car crash at issue in this case. (New GM's Mem. Law Regarding Pl.'s Purported Other Similar Incidents Evidence (Docket No. 1910) ("New GM's OSI Mem.") 4-10). For the reasons stated below, the Court holds that Plaintiff has established a *prima facie* case for admission of at least some OSI evidence. Nevertheless, the Court defers ruling on the admissibility of the specific evidence that Plaintiff proposes to introduce pending a more detailed proffer from Plaintiff with respect to that evidence.

## DISCUSSION

The relevant principles are not really in dispute. In a product liability case such as this, evidence of other similar incidents may be admitted to prove "negligence, a design defect, notice of a defect, or causation." *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 10-CV-0837, 2012 WL 1113955, at *2 (S.D. W.Va. Mar. 30, 2012). But before evidence relating to prior accidents "may be admitted for any purpose, the proponent must establish [the prior accidents'] relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue." *Schmelzer v. Hilton Hotels Corp.*, No. 05-CV-10307 (JFK), 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007); *see also Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir. 1995) (noting that every Court of Appeals that has considered the admissibility of prior accidents in products liability cases has applied the substantial similarity standard). "Whether a prior accident occurred under 'substantially similar' conditions necessarily 'depends upon the underlying theory of the case, and is defined by the particular defect at issue.'" *Lidle v. Cirrus Design Corp.*, 505 F. App'x 72, 74 (2d Cir. 2012) (summary order) (quoting *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999).

Significantly, the requisite degree of similarity varies according to the purpose for which OSI evidence is offered. For example, "[e]vidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury." *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992) (internal quotation marks omitted). By contrast, the substantial similarity standard is "relaxed" where OSI evidence is offered to show notice; specifically, where OSI evidence is offered to show notice, "'the similarity in the circumstances of the accidents can be considerably less than that which is demanded when the same evidence is

used for one of the other valid purposes.'" *Schmelzer*, 2007 WL 2826628, at *2 (quoting 1 McCormick on Evid. § 200 (6th ed. 2006)). As the inquiry with respect to substantial similarity "is a fact-specific inquiry," a "district court is owed considerable deference in its determination of substantial similarity." *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1126 (10th Cir.), *as clarified on reh'g*, 400 F.3d 1227 (10th Cir. 2004). If sufficient substantial similarity is established, "[a]ny differences in the accidents . . . go to the weight of the evidence." *Four Corners*, 979 F.2d at 1440.

Applying those standards here, the Court finds — as a general matter — that the fifteen other incidents at issue are sufficiently "substantially similar" to be admitted, certainly to prove notice, but also to prove causation. Significantly, in the product liability context, one of the most salient factors in the analysis is whether the other incidents involved the same alleged defect as the incident at issue. *See, e.g.*, *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986) ("The 'substantially similar' predicate for the proof of similar accidents is defined . . . by the defect (or, as we have also termed it, the product) at issue."); *Bellinger v. Deere & Co.*, 881 F. Supp. 813, 818 (N.D.N.Y. 1995) ("In product liability actions, it is appropriate to define the similarity of the accidents based upon the product or defect at issue."). Here, there is no real dispute that that factor cuts in Plaintiff's favor. The fifteen incidents identified by Plaintiff all involved the same allegedly defective ignition switch as the one at issue here; all involved airbag non-deployment despite substantial frontal-impact collisions, as here; and nearly all involved off-road conditions, as here. (Pl.'s Reply Mem. Law Regarding Other Similar Incidents (Docket No. 1943) ("Pl.'s OSI Reply") 4). Notably, until it took issue with the admissibility of OSI evidence, New GM itself effectively treated the incidents as substantially similar. Nearly all of the fifteen other incidents were included in New GM's various admissions

with respect to crashes caused by the ignition switch defect — including submissions it made to the National Highway Traffic Safety Administration ("NHTSA"), the Statement of Facts ("SOF") to which New GM agreed as part of the Deferred Prosecution Agreement with the Department of Justice, and the Valukas Report.  (*See* Pl.'s OSI Mem. 20 (chart summarizing in which of these three documents the OSIs appeared).  And while New GM did not refer to Plaintiff's accident in any of those admissions, it raised no objection when his case was deemed related to, and consolidated with, the MDL — a proceeding focused on "an alleged defect in certain General Motors vehicles that causes the vehicle's ignition switch to move unintentionally from the 'run' position to the 'accessory' or 'off' position, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy."  (MDL Transfer Order (Docket No. 1) 1-2; *see also* Order No. 8, § II (Docket No. 249) (allowing a party to object upon entry of a consolidation order with respect to a directly filed case if the party believes that the case is not related to the MDL); 14-CV-8176, Docket No. 4 (consolidation order)).

The fact that New GM concedes the existence of the ignition switch defect does not call for a different conclusion.  (New GM's OSI Mem. 1-2).  Although the existence of a defect generally may not be in dispute, whether that defect was present in Plaintiff's car and, if so, whether it was the cause of the airbag non-deployment (and Plaintiff's injuries) are very much in dispute.  (*See* Mem. Supp. New GM's Mot. Summ. J. (Docket No. 1811) 8-10).  That is, New GM argues that, because Plaintiff had removed everything from his key ring other than the ignition key, the ignition switch could not have rotated and the non-deployment of the airbags had to have been caused by something other than the ignition switch defect.  (*Id.* at 8 n.28). Plaintiff is entitled to argue — and a reasonable jury could conclude — that the fifteen other

4

incidents suggest otherwise. Specifically, insofar as all fifteen other incidents involved airbag non-deployment in frontal collisions that can be attributed to the ignition switch defect (and all but three involved off-road conditions), they tend to show that the non-deployment of Plaintiff's airbags and Plaintiff's injuries are attributable to the same defect. Assuming that Plaintiff can show that New GM had knowledge of the incidents before Plaintiff's accident (an assumption that, as noted below, may not be valid as to at least one of the incidents) they may also show that New GM was on notice of the defect — and on notice well before the spring of 2012, when the company admits that it had learned of the problem. (New GM's OSI Mem. 2). That is relevant not only to proving New GM's liability, *see Schmelzer*, 2007 WL 2826628, at *2 ("Notice is relevant to Plaintiff's negligence claim because whether [the defendant] acted with reasonable prudence depends upon what it knew or should have known at the time it acted or failed to act."), but — as New GM effectively concedes (New GM's OSI Mem. 14) — also to the appropriateness of punitive damages, *see, e.g.*, *Thiry v. Armstrong World Indus.*, 661 P.2d 515, 518-19 (Okla. 1983) (explaining that punitive damages may be awarded when a defendant acted with "reckless disregard for the public safety").[1]

New GM's general arguments against the admissibility of the OSI evidence are unpersuasive. First and foremost, New GM argues that the other accidents are not substantially similar to Plaintiff's accident because there is no admissible evidence that any of them involved a single key, as here. Because a single key could not (or was very unlikely to) inadvertently

---

[1] Of course, whether Plaintiff may seek punitive damages is an issue currently under advisement in connection with New GM's pending motion for summary judgment and Amended Seventh Motion *in Limine*. (*See* Mem. Supp. New GM's Mot. Summ. J. (Docket No. 1811); New GM's Am. Mot. *In Limine* No. 7 (Docket No. 1800)). Needless to say, the Court's ruling here is subject to modification — or even reconsideration — as appropriate in light of the Court's decisions on those motions.

rotate, New GM argues, "[e]vidence of dissimilar incidents involving multiple keys would leave the jury with a grossly misleading impression as to whether the ignition switch could actually have rotated in this case." (New GM's OSI Mem. 9). But the likelihood of a single key inadvertently rotating is perhaps the key dispute for the jury to resolve at trial. New GM may argue, and the jury may ultimate agree, that Plaintiff's use of a single key differentiates his accident from the other incidents, but — mindful that there is a dispute of fact on whether a single key could inadvertently rotate — it would be inappropriate for the Court to prejudge the issue and exclude evidence on that basis. *See, e.g.*, *Jodoin v. Toyota Motor Corp.*, 284 F.3d 272, 280 (1st Cir. 2002) ("When the relevant elements are sufficiently similar, we further emphasize that other differences are for defendants to highlight and the jury to weigh in its deliberations."). Second, although New GM does not dispute that a court may look to expert opinion in evaluating substantial similarity, *see, e.g.*, *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 339, *decision clarified on denial of reh'g*, 620 F.2d 464 (5th Cir. 1980), or that OSI evidence may be introduced through expert testimony, *see, e.g.*, 1 McCormick on Evid. § 200 n.14 (7th ed. 2013) (noting that, in drug therapy cases, even "evidence of other incidents that is implicit in more careful statistical studies . . . should be admissible as forming the basis for the expert's opinion"), it objects to Plaintiff's experts' opinions about the OSIs here on the ground that they were not disclosed until rebuttal and fall outside the scope of proper rebuttal. New GM's complaints have some validity — Plaintiff could have and, upon reflection, probably should have addressed the OSI evidence in his initial expert reports — but the Court would reach the same conclusion even without Plaintiff's experts. In any event, there is no basis to disregard (or exclude) Plaintiff's experts' opinions about the OSI evidence. For one thing, they are within the scope of proper rebuttal as New GM's experts opined in their reports that Plaintiff's airbag non-deployment was

not caused by the ignition switch defect.  (*See* Pl.'s OSI Reply 11).  For another, there is no evidence of bad faith on the part of Plaintiff or prejudice to New GM.  *See, e.g.*, *Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-CV-5587 (PKL) (RLE), 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002) (noting that, when deciding whether to exclude expert testimony, courts consider, among other things, the good faith of the offering party and any prejudice to the other party).  After all, New GM has long been aware of the other incidents and of Plaintiff's intention to offer OSI evidence at trial.

In short, the Court concludes that Plaintiff has established a *prima facie* case for admission of the OSI evidence at issue, both to prove notice and to prove causation.  Nevertheless, the Court agrees with New GM that there may be other grounds on which the evidence, of some portion thereof, should be excluded and therefore defers ruling on the specific evidence Plaintiff proposes to introduce.  First, the Court is — once again, *see In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9165341, at *2 (S.D.N.Y. Dec. 16, 2015); *In re Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 8578945, at *6 (S.D.N.Y. Dec. 9, 2015); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 7769524, at *3 (S.D.N.Y. Nov. 30, 2015) — concerned about cumulativeness, *see* Fed. R. Evid. 403, not only given the number of other incidents that Plaintiff proposes to prove, but also given other evidence that Plaintiff intends to offer at trial that touches on notice and causation, including portions of the Valukas Report, the congressional testimony of New GM's Chief Executive Officer and former General Counsel, and the NHTSA Consent Order.  Second, the Court has serious doubts about some of the evidence upon which Plaintiff appears to be relying.  For instance, most of the witnesses that Plaintiff proposes to call were not present at the time of the accidents at issue and, thus, presumably lack personal knowledge of the relevant

circumstances.  (To provide one notable example: The Court cannot fathom how Jay Gass — the father of Lara Gass, who was killed in a crash on March 18, 2014 — could possibly testify that his daughter was driving with a single key at the time of her crash.  (*Compare* Pl.'s OSI Mem. 19 ("Mr. Gass confirms that his daughter . . . had . . . removed her key ring and all other keys."), *with* New GM's OSI Mem. 6 n.8 (noting that Mr. Gass "admitted at his deposition that he does not know what was on Lara's key chain at the time of the accident")).  Additionally, the Court is hard pressed to understand the relevance of how Plaintiff's proposed witnesses "found out" about the accidents in which their loved ones were killed (*see* Pl.'s OSI Mem. 21-23) or on what basis a seven-year-old child who survived an accident could testify about "when GM knew or should have known about the defect" (Pl.'s OSI Mem. 22 (discussing the testimony of T.B.)).  Finally, particularly where a witness has limited or no personal knowledge of the relevant circumstances, there is an obvious danger that the probative value of the evidence would be substantially outweighed by the unfair prejudice to New GM of allowing potentially inflammatory and emotionally charged testimony.

       The Court would be able to address some of these concerns at trial by ruling on specific objections from New GM.  But, mindful that some of the testimony at issue would be quite emotional and that some forms of prejudice may not be remedied even through limiting instructions, the Court believes that it is better to address them, if possible, in advance of trial.  To that end, no later than **January 5, 2015** at **10 a.m.**, Plaintiff shall file a detailed proffer of any and all OSI evidence that he proposes to offer at trial.  Specifically, with respect to each incident that he proposes to prove up at trial, Plaintiff must (1) identify with particularity (that is, greater particularity than he provided in his briefing here (*see* Pl.'s OSI Mem. 21-23)) the evidence that he proposes to introduce; (2) provide a *detailed* proffer of any and all lay witness testimony,

including (but not limited to) the basis of the witness's alleged knowledge and the timing and substance of any communications between the witness and either Old or New GM; and (3) describe, *with specificity*, the evidence that shows when and how and New GM learned of the incident. (The last category is particularly salient with respect to the Gass accident, as there is some indication that New GM did not learn about that accident until *after* Plaintiff's accident — in which case it would have no relevance to proving notice of the defect. (New GM's OSI Mem. 25)). By the **same date and time**, the parties shall confer and propose appropriate limiting instructions with respect to the OSI evidence. (*See* New GM's OSI Mem. 27).

## CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff has established a *prima facie* case for the admission of the OSI evidence he proposes to offer at trial. Nevertheless, the Court defers ruling on the admissibility of the specific evidence at issue pending a more detailed proffer from Plaintiff with respect to the evidence.

SO ORDERED.

Dated: December 28, 2015
New York, New York

_____
JESSE M. FURMAN
United States District Judge