USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/29/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Fleck, et al. v. General Motors LLC, 14-CV-8176*
------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding Plaintiff's Fourth and Seventh Motions *in Limine* and
New GM's Amended Second Motion *in Limine*]**

The first bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Robert S. Scheuer and familiarity with which is presumed, is scheduled to begin on January 11, 2016. (*See* Docket No. 1694). The parties have filed almost thirty motions *in limine*, only a few of which remain undecided. This opinion addresses three of the remaining motions: Plaintiff's Fourth Motion *in Limine* and New GM's Amended Second Motion *in Limine*, both of which concern the issue of spoliation — namely, Plaintiff's alleged failure to preserve his car after he crashed — and Plaintiff's Seventh Motion in *Limine*, which seeks to preclude evidence and argument concerning his communications with the New GM Ignition Compensation Claims Resolution Facility run by Kenneth Feinberg. (*See* Mem. Law Supp. Pl.'s Mot. *In Limine* No. 4 (Docket No. 1712) ("Pl.'s Fourth Mem."); New GM's Combined (1) Opp'n Pl.'s Mot. *In Limine* No. 4 & Mem. Law Supp. New GM's Am. Mot. *In Limine* No. 2 (Docket No. 1816) ("New GM's Am. Second Mem."); Mem. Law Supp. Pl.'s Mot. *In Limine* No. 7 (Docket No. 1808) ("Pl.'s Seventh Mem.")). Plaintiff's principal argument is that New GM should be precluded from introducing evidence or argument that he "destroyed evidence or that [Plaintiff's] vehicle, if preserved, would have elicited evidence favorable to New GM." (Pl.'s Fourth Mem. 1). By

contrast, New GM argues that the Court should impose spoliation sanctions on Plaintiff, up to an including "outright dismiss[al]" of his case, for allowing the car to be destroyed. (New GM's Am. Second Mem. 2). For the reasons that follow, the Court agrees with Plaintiff. Accordingly, his motions are GRANTED, and New GM's motion is DENIED.

## BACKGROUND

The basic timeline of events leading to the destruction of Plaintiff's car is undisputed. Plaintiff's crash occurred on May 28, 2014. Shortly after the accident, his insurer, State Farm, "determined that the vehicle was a total loss," and on June 12, 2014, paid him $3,563.26, a sum representing "the value of the vehicle." (Pl.'s Fourth Mem. 3-4; *id.*, Ex. 1). Four days later, on June 16, 2014, Plaintiff retained counsel — namely, Robert Hilliard, Co-Lead Counsel in the MDL. (New GM's Am. Second Mem. 4). On June 18, 2015, Plaintiff "sought to obtain a replacement title for the vehicle to formally record that State Farm was taking ownership." (Pl.'s Fourth Mem. 4; *id.*, Ex. 2). On June 23, 2014, he gave State Farm power of attorney to sell or transfer the car and, on June 30, 2014, title was formally transferred from Plaintiff to State Farm. (*Id.* at 4; *id.*, Ex. 3). State Farm subsequently transferred title of the car to a salvage yard on August 5, 2014. (*Id.* at 4). Sixteen days later, on August 21, 2014, Plaintiff — with the assistance of Hilliard — submitted a claim to the New GM Ignition Compensation Claims Resolution Facility (the "Claims Resolution Facility"), a program established by New GM to settle claims alleging that the ignition switch defect in certain GM vehicles caused a death or physical injury in an accident; Plaintiff's claim was eventually denied. (New GM's Am. Second Mem. 4; Pl.'s Seventh Mem. 1-2). On September 22, 2014, the salvage yard destroyed Plaintiff's former car. (Pl.'s Fourth Mem. 4; New GM's Am. Second Mem. 5). On October 10, 2014, Plaintiff filed this action. (Complaint (Docket. No. 1), *Fleck, et al. v. General Motors,*

*LLC*, No. 14-CV-8176 (JMF)).

## DISCUSSION

As the parties' motions with respect to spoliation are effectively mirror images of one another, there is no need to analyze them separately. "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y.2010) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir.2001)). Where, as here, a party seeks "severe" sanctions for the alleged spoliation of evidence — such as the preclusion of critical evidence, an adverse inference instruction, or dismissal of the case — it must establish that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed "with a culpable state of mind"; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could infer that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *see also, e.g.*, *Riley v. Marriott Int'l, Inc.*, No. 12-CV-6242P, 2014 WL 4794657, at *5 (W.D.N.Y. Sept. 25, 2014) ("Although a finding that the moving party has been prejudiced is not a prerequisite to the imposition of sanctions, before awarding more severe sanctions — such as dismissal, preclusion, or the imposition of an adverse inference — the court must consider . . . whether the innocent party has suffered prejudice as a result of the loss of relevant evidence." (internal quotation marks, brackets, and citations omitted)); *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 178 (E.D.N.Y.2009) ("'[W]here more severe sanctions are at issue, . . . the moving party must show that the lost information would have been favorable to it.'") (quoting *Chan v. Triple 8 Palace, Inc.*, No. 03-CV-6048 (GEL) (JCF), 2005 WL 1925579, *7 (S.D.N.Y. Aug. 11, 2005)).

"'The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.'" *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

Here, New GM easily satisfies the first two prongs of the test. With respect to the first prong, Plaintiff argues that he did not have possession, custody, or control of the vehicle when it was actually destroyed on September 22, 2014, and thus had no duty to preserve it. (Pl.'s Fourth Mem. 6-9; Pl.'s Combined Mem. Law Further Supp. Pl.'s Mot. *In Limine* No. 4 & Opp'n New GM's Am. Mot. *In Limine* No. 2 (Docket No. 1859) ("Pl.'s Fourth Reply") 2-4). But the obligation to preserve relevant evidence attaches "when a party should [know] that the evidence may be relevant to future litigation." *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 313 (S.D.N.Y. 2013) (internal quotation marks omitted). Here, Plaintiff indisputably knew or should have known that his car was "relevant to future litigation" by June 16, 2014, when he retained counsel. Thus, even assuming *arguendo* that Plaintiff may not be held responsible for the car's preservation or destruction after transferring title to State Farm on June 30, 2014, the duty to preserve arose *prior* to that transfer — while Plaintiff had control of the car. And when "triggered, the preservation obligation requires a litigant to do more than refrain from intentionally destroying relevant evidence; the litigant must also 'take affirmative steps to prevent inadvertent spoliation.'" *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 407-08 (S.D.N.Y. 2015), (quoting *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010), *on reconsideration in part*, No. 13-CV-8171 (JMF), 2015 WL 3739276 (S.D.N.Y. June 15, 2015). Thus, the first prong is met.

The second prong — that Plaintiff failed to preserve his car with a "culpable state of mind" — is also satisfied. In this Circuit, "a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009). Plaintiff's failure to take any steps to preserve his car certainly meets that standard. Plaintiff and his counsel failed to take any steps to ensure that the car would be preserved even though they plainly knew that Plaintiff might pursue a claim against New GM relating to the then-well-publicized ignition switch defect (either in the Claims Resolution Facility or this Court — or both) and knew or should have known that the car itself might be critical evidence in connection with any such claim. Moreover, they failed to take any steps to preserve the car despite this Court's order of June 25, 2014 — only nine days after Plaintiff retained Hilliard (who would later be appointed Co-Lead Counsel in this MDL) — reminding counsel "of their duty to preserve evidence that may be relevant to this action" and directing counsel "to exercise all reasonable efforts to identify and notify parties and nonparties . . . of this directive" (Order No. 1 (Docket No. 19), at 12). *See Chan*, 2005 WL 1925579, at *6 ("The preservation obligation runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991))). Significantly, however, the Court finds no basis to conclude that Plaintiff or his counsel acted (or failed to act) willfully or in bad faith; indeed, New GM itself does not really argue to the contrary (*see* New GM's Am. Second Mem. 10), although it does state obliquely that Plaintiff's lapse "reflects conduct that goes beyond negligence" (New GM's Reply Br. Supp. Its

Am. Mot. *In Limine* No. 2 ("New GM's Am. Second Reply") 5).[1]  Accordingly, the Court finds that Plaintiff acted at least negligently, satisfying the second prong.

The third prong — whether the destroyed evidence was "relevant" — is where New GM's motion falls short.  Significantly, the term "relevant" in this context "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Residential Funding*, 306 F.3d at 108-09.  Instead, to establish relevance, the party seeking sanctions "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed . . . evidence would have been" favorable to its case. *Id.* at 109 (internal quotation marks omitted).  The state of mind with which the evidence was destroyed affects what showing is required of the movant.  Where the destruction of evidence is found to be willful, courts presume the relevance of the destroyed evidence.  *See, e.g.*, *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 504-05 (S.D.N.Y. 2013).  Where the party against whom sanctions are sought engaged only in gross negligence, a court may, but is not required to, presume relevance.  *See, e.g.*, *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) ("[A] finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction.").  And where the destruction was the result of mere negligence, a presumption of

---

[1]  Given the magnitude of the defect at issue in this case and the number of individual claims filed against New GM — in the MDL, in other courts, and in the Claims Resolution Facility — it is not surprising to the Court that some of the cars involved were destroyed before they were inspected by the parties.  In that regard, it is particularly noteworthy that Hilliard, Plaintiff's counsel, represents hundreds of claimants — and did so at the time that Plaintiff's car was destroyed.  (*See* Aug. 11, 2015, Conf. Tr. 165-66 (*available at* gmignitionmdl.com)).  That is not to excuse counsel's failure — he should have known (and done) better, particularly in light of MDL Order No. 1 — but it does place that failure in context, and reinforces the conclusion that it was a product of oversight rather than anything worse.  It is also another mitigating factor distinguishing this case from the cases on which New GM principally relies, which are discussed in more detail below.

relevance never applies. *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 358 (S.D.N.Y. 2012); *see also Zubulake*, 220 F.R.D. at 221 ("This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." (internal quotation marks omitted)). Here, because Plaintiff's conduct was at most grossly negligent, and possibly only negligent, a presumption of relevance is inappropriate. *See, e.g.*, *Zubulake*, 220 F.R.D. at 221. Thus, for sanctions to be warranted, "there must be extrinsic evidence to demonstrate that the destroyed evidence . . . would have been unfavorable to the destroying party." *Great N. Ins. Co. v. Power Cooling, Inc.*, No. 06-CV-874 (ERK) (KAM), 2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) (internal quotation marks omitted).

New GM fails to meet that standard. New GM contends that inspection of Plaintiff's car would have yielded three categories of potentially favorable evidence: (1) the car's crush pattern, (2) the car's interior, and (3) the ignition switch's actual torque specification. (New GM's Am. Second Mem. 5-6, 12; New GM's Am. Second Reply 4). As Plaintiff correctly notes, however, New GM "merely makes conclusory statements that the evidence from crush measurements and interior impacts would have been 'favorable.'" (Pl.'s Fourth Reply Opp'n 5).[2] That is insufficient to warrant the imposition of sanctions. *See, e.g.*, *Sovulj v. United States*, No. 98-CV-

---

[2] For example, New GM cites the opinion of its airbag expert that it "was appropriate for the airbag not to deploy" in Plaintiff's accident because it was "not a deployment-level crash." (New GM Am. Second Mem. 6). But the fact that its expert was able to form that opinion without performing a crush analysis — based on, among other evidence, photographs of the car and the crash site — cuts against New GM's request for sanctions. (*See, e.g.*, *id.*, Ex. 8). In any event, New GM fails to point to any evidence — from its expert or otherwise — to support an inference that the car's crush pattern would have confirmed its expert's conclusions.

5550FBRML, 2005 WL 2290495, at *5 (E.D.N.Y. Sept. 20, 2005) (denying a motion for sanctions where the moving party had failed to "provide the court with a declaration, affidavit or direct statement" supporting her assertion that the destroyed evidence would have been favorable to her). And while inspection of Plaintiff's car would presumably have resolved definitively whether its ignition switch was defective, a reasonable jury could not infer from the other available evidence that the results of such an inspection would have been favorable to New GM. After all, New GM *concedes* that there was a defect in the type of ignition switch used in Plaintiff's car (*see, e.g.*, New GM's Mem. Law Regarding Pl.'s Purported Other Similar Incidents Evidence (Docket No. 1910) 1-2), and the record indicates that up to eighty percent of those ignition switches were defective. (New GM Am. Second Mem. 6 & n.25; New GM's Am. Second Reply 4).[3] If anything, therefore, a reasonable jury could infer only that the car, if it had been available for inspection, would have been favorable to *Plaintiff's* case. *See, e.g.*, *Stern v. Shammas*, No. 12-CV-5210 (NGG) (RER), 2015 WL 6440647, at *12-13 (E.D.N.Y. Oct. 21, 2015) (denying a spoliation motion where the available evidence suggested that the missing evidence would have supported the non-moving party's case); *Toussie v. Cty. of Suffolk*, No. CV 01-6716 (JS) (ARL), 2007 WL 4565160, at *9 (E.D.N.Y. Dec. 21, 2007) (same). Under these

---

[3]   Further, there is no reason to believe that an inspection of Plaintiff's car would have yielded any evidence supporting one of New GM's primary defenses in this case: that, even if the ignition switch in Plaintiff's car *was* defective, it could not have rotated to the "off" or "accessory" position because he had removed everything other than his key from his key ring. (*See* Mem. Supp. New GM's Mot. Summ. J. (Docket No. 1811) 8 n.28). After all, that defense presumes the existence of the defect. And New GM does not argue that inspection of the car would have confirmed whether the ignition switch rotated. (In fact, it has admitted that the type of car involved in this case did not record data such as power mode status after it had lost power. (Compl., *United States v. $900,000,000 in U.S. Currency*, No. 15-CV-7342 (S.D.N.Y. Sept. 17, 2015), Docket No. 1, Ex A., Ex. C ¶ 46; *see* Pl.'s Fourth Mem. 1).)

circumstances, spoliation sanctions "would not have the effect of restoring" New GM to its "position absent the destruction of the [car], but rather would prejudice [Plaintiff] by allowing [New GM] to profit from the destruction of the [car] when no evidence has been presented to support such an inference of its contents." *Sovulj*, 2005 WL 2290495, at *5.

Notably, even if New GM could satisfy the test for spoliation sanctions, the Court would decline to impose the primary sanctions sought by New GM — an adverse inference instruction, exclusion of Plaintiff's expert testimony, or outright dismissal. (New GM Am. Second Mem. 13-15). It is well established that district courts have "the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing — a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *see also Fujitsu*, 247 F.3d at 436 (stressing the "case-by-case approach" to determining sanctions). Given the circumstances here, the sanctions sought by New GM — all of which, New GM concedes, would effectively doom Plaintiff's case (New GM Am. Second Mem. 15 n.42) — would be grossly disproportionate to Plaintiff's conduct. That is true because (1) there is no evidence that Plaintiff (or his counsel) acted in bad faith; (2) New GM had admitted that there was a defect in the type of ignition switch used in Plaintiff's car and that the defect could result, as here, in airbag non-deployment; (3) the car was equally unavailable to Plaintiff and New GM; (4) there is other evidence, including photographs, of the car's condition; and (5) as discussed above, if anything, the available evidence indicates that the car, had it been available for inspection, would have helped Plaintiff's case rather than New GM's. Given those circumstances, any sanction that would give a material advantage to New GM at trial — or, more to the point, would effectively result in judgment for New GM — would both undermine the search for truth and go well beyond what would be needed to serve "the

9

trifold aims" of a spoliation sanction. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779-80 (2d Cir. 1999) (explaining that spoliation sanctions should be sufficient, but not greater than necessary, to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." (internal quotation marks omitted)).[4]

These circumstances — particularly the fact that New GM has conceded the existence of an ignition switch defect that resulted in airbag non-deployment in the type of car Plaintiff drove — distinguish this case from those on which New GM relies most heavily. (New GM's Am. Second Mem. 1-2, 14-15 (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001); *Beers v. Gen. Motors Corp.*, No. 97-CV-482 (NPM/DNH), 1999 WL 325378 (S.D.N.Y. May 17, 1999); and *Brancaccio v. Mitsubishi Motors Co., Inc.*, No. 90-CV-7852 (RWS), 1992 WL 189937 (S.D.N.Y. Aug. 31, 1992)). In all of those cases, the central issue was whether there was a defect, and the destroyed evidence was the most critical, if not "only," evidence with respect to the issue. *Silvestri*, 271 F.3d at 594; *see also Flury*, 427 F.3d at 943 & n.10; *Beers*, 1999 WL 325378, at *6; *Brancaccio*, 1992 WL 189937, at *1-2. In several of the cases, the plaintiff's experts had inspected the

---

[4] At most, the Court would be prepared to sanction Plaintiff by requiring him to reimburse New GM for the fees and costs it incurred in litigating the issue of spoliation. *See, e.g.*, *Skyline Steel*, 101 F. Supp. 3d at 412. In fact, some courts have awarded costs even where, as here, the moving party failed to show that the evidence at issue would have been favorable to its case. *See, e.g.*, *Richard Green*, 262 F.R.D. at 291-92; *Toussie*, 2007 WL 4565160, at *9-10; *Sovulj*, 2005 WL 2290495, at *6. In the Court's view, however, that sanction would make little sense given the nature of this MDL — in particular, given the resources that the parties have devoted to the litigation and the bellwether status of Plaintiff's case. Indeed, perhaps for that reason, New GM does not even ask for the Court to award it fees and costs.

relevant evidence before it was destroyed or materially altered (and, compounding matters, there were reasons to doubt their recollections and evaluations of the evidence). *See, e.g.*, *Silvestri*, 271 F.3d at 586-88, 594; *Beers*, 1999 WL 325378, at *2; *Brancaccio*, 1992 WL 189937, at *2. In several of the cases, the plaintiff (or counsel) allowed the evidence to be destroyed even after being put on express notice of the defendant's need or desire to inspect it. *See, e.g.*, *Flury*, 427 F.3d at 944-45; *Silvestri*, 271 F.3d at 586; *Beers*, 1999 WL 325378, at *1-2. And in one of the cases, the sanctioned party not only destroyed the most critical evidence, but also repeatedly acted in "defiance of court orders." *Beers*, 1999 WL 325378, at *4. In short, given the specific circumstances in each of those cases, sanctions helped to ensure that the spoliator did not benefit from his or her wrongdoing and to restore the prejudiced party to the same position it would have been in absent the wrongful destruction of evidence. Here, by contrast, there is no basis to conclude that Plaintiff benefited from the destruction of his car — quite the opposite — and imposing sanctions would thus risk giving New GM an unjustified windfall.[5]

In short, New GM is not entitled to spoliation sanctions here, both because it has failed to show that a reasonable jury could infer that Plaintiff's car would have yielded evidence favorable to its case and because the sanctions it seeks are grossly disproportionate to any wrongdoing. It follows that any evidence or argument suggesting that Plaintiff destroyed his car (or allowed his car to be destroyed) and any evidence or argument that the car, if preserved, would have yielded

---

[5] The cases upon which New GM relies are distinguishable for another reason: None cites or appears to apply the three-prong test for spoliation sanctions that applies in this Circuit. *See Flury*, 427 F.3d at 942, 945 (applying a "balancing test" that "weigh[s] the culpability of the spoliator against prejudice to the opposing party"); *Silvestri*, 271 F.3d at 593 (applying a two-part test considering the egregiousness of the spoliator's conduct and the prejudice to defendant); *Beers*, 1999 WL 325378, at *3-4 (making no mention of the three-part test); *Brancaccio*, 1992 WL 189937, at *1-2 (same).

favorable evidence to New GM must be, and are, precluded.  For one thing, New GM cites no cases suggesting, let alone holding, that a party may introduce evidence of spoliation and then argue spoliation to the jury where, as here, it fails as a matter of law to meet the requirements for serious spoliation sanctions.  *But cf. Singh v. Penske Truck Leasing Co., L.P.*, No. 13-CV-1860 (VSB) (GWG), 2015 WL 802994, at *7 (S.D.N.Y. Feb. 26, 2015) ("All this being said, we emphasize that this ruling applies only to plaintiffs' request for spoliation sanctions.  It does not address the relevance or admissibility at trial of the fact that [the defendant] lost the January 3 PM Checklist.").  (In fact, New GM implicitly concedes the opposite by arguing that it should be permitted to "examine plaintiff in the presence of the jury regarding his failure to preserve the vehicle" *as a form of spoliation sanction*.  (New GM Am. Second Mem. 13).)  For another, in light of the discussion above — most notably, the reasons to believe that the destroyed evidence would have been favorable to Plaintiff, not New GM — the probative value of any such evidence or argument would be substantially outweighed by the dangers of, among other things, unfair prejudice to Plaintiff and juror confusion.  *See* Fed. R. Evid. 403.[6]

Finally, because New GM may not introduce evidence or argument suggesting that Plaintiff destroyed his car or that the car, if preserved, would have yielded evidence favorable to it, Plaintiff is on firm ground in seeking to preclude all evidence or argument "related to his

---

[6]     That said, the Court believes that the jury should be told that the car was destroyed — albeit in a neutral manner (ideally by stipulation) that does not suggest that either party was responsible.  As New GM notes, absent such information, "[j]urors may speculate as to why the vehicle is not available"; in particular, jurors may speculate that one or the other party "is responsible for the absence of the vehicle, or that the vehicle is available but that" one or the other party "and its experts do not mention it because the vehicle and its condition do not support" that party's position.  (New GM's Opp'n Pl.'s Mot. *In Limine* No. 7 (Docket No. 1870) 6-7).  The parties shall meet and confer to discuss an appropriate stipulation (or an appropriate alternative means of informing the jury about the car's destruction) and raise any disagreement at the final pretrial conference.

claim and/or communications with" the Claims Resolution Facility. (Pl.'s Seventh Mem. 1). After all, the sole purpose for which New GM seeks to offer that evidence is "to show that plaintiff spoliated evidence well after knowing that a potential claim against New GM existed." (New GM's Opp'n Pl.'s Mot. *In Limine* No. 7 (Docket No. 1870) 2). Given that it may not argue spoliation, the evidence is both irrelevant and, substantially for the reasons provided by Plaintiff, significantly more prejudicial than probative. (*See* Pl.'s Seventh Mem. 5-6).

## CONCLUSION

For the foregoing reasons, Plaintiff's Fourth and Seventh Motions *in Limine* are GRANTED, and New GM's Second Amended Motion *in Limine* is DENIED. More specifically, New GM's request for spoliation sanctions based on the destruction of Plaintiff's car is denied, and New GM is precluded from introducing evidence or argument suggesting that Plaintiff destroyed his car (or allowed it to be destroyed) or that the car, if preserved, would have yielded favorable evidence to New GM. Nor may New GM introduce evidence or argument concerning Plaintiff's claim and/or communications with the Claims Resolution Facility.

The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 1711, 1807, and 1812; and 14-CV-8176, Docket Nos. 193 and 225.

SO ORDERED.

Dated: December 29, 2015
      New York, New York

                                               JESSE M. FURMAN
                                    United States District Judge