UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to Robert Scheuer*

------------------------------------------------------------------------------x

14-MD-2543 (JMF)

Hon. Jesse M. Furman

# GENERAL MOTORS LLC'S REPLY IN SUPPORT OF
# ITS MOTION TO SUPPLEMENT WITNESS LIST, TO RECALL LISA SCHEUER,
# AND TO ADMIT IMPEACHMENT EVIDENCE

**TABLE OF CONTENTS**

          **Page**

I.     PLAINTIFF DOES NOT DENY THE NEW EVIDENCE, ESTABLISHING THAT PLAINTIFF AND HIS WIFE TESTIFIED UNTRUTHFULLY. .................. 2

II.    PLAINTIFF'S ASSERTION THAT GM LLC FAILED TO EXERCISE DILIGENCE IN DISCOVERY IS BASELESS AND BESIDE THE POINT............. 4

III.   PLAINTIFF'S COUNSEL CAN NO LONGER SPONSOR THE SCHEUERS' TESTIMONY GIVEN ITS APPARENT FALSITY.............................. 5

IV.   THE KLEVEN EVIDENCE IS CRITICALLY RELEVANT EVEN IF PLAINTIFF DROPS HIS CLAIM FOR HOUSING DAMAGES................................ 6

# **TABLE OF AUTHORITES**

**Page**

**Cases**

*Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*,
   2009 WL 1617773 (E.D.N.Y. June 9, 2009) ............................................................................... 5

*Arthur v. Atkinson Freight Lines Corp.*,
   164 F.R.D. 19 (S.D.N.Y. 1995) .................................................................................................. 5

*Batiste-Davis v. Lincare, Inc.*,
   526 F.3d 377 (8th Cir. 2008) ..................................................................................................... 9

*Cadena v. Pacesetter*,
   224 F.3d 1203 (10th Cir. 2000) ......................................................................................... 10, 11

*Davis v. Nichols*,
   191 F.3d 451, 1999 WL 777548 (6th Cir. 1999) ..................................................................... 11

*Gen. Motors LLC Ignition Switch Litig.*,
   2015 WL 7769524 (S.D.N.Y. Nov. 30, 2015) .......................................................................... 8

*Kifle v. Parks & History Ass'n*,
   998 WL 1109117 (D.D.C. Oct. 15, 1998) ................................................................................ 5

*Lewis v. City of Albany Police Dept.*,
   547 F. Supp. 2d 191 (N.D.N.Y. 2008) .................................................................................... 10

*Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*,
   153 F. Supp. 2d 504 (S.D.N.Y. 2001) ...................................................................................... 7

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007) ................................................................................................... 10

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
   2002 WL 59434 (S.D.N.Y. Jan. 16, 2002) ............................................................................... 7

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*,
   2004 WL 896952 (E.D.N.Y. Mar. 26, 2004) ............................................................................ 6

*Reddick v. Bloomingdale Police Officers*,
   2003 WL 1733560 (N.D. Ill. 2003) .......................................................................................... 5

*Scholastic, Inc. v. Stouffer,*
   221 F.Supp.2d 425 (S.D.N.Y.2002) ......................................................................................... 7

*United States v. Blackwood*,
  456 F.2d 526 (2d Cir. 1972) .......................................................................................... 9

*United States v. Calle*,
  822 F.2d 1016 (11th Cir. 1987) ................................................................................... 11

*United States v. Harvey*,
  547 F.2d 720 (2d Cir. 1976) ........................................................................................ 11

*United States v. Patterson*,
  23 F.3d 1239 (7th Cir. 1994) ......................................................................................... 9

*Zubulake v. UBS Warburg LLC*,
  229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................... 5

**Statutes**

18 U.S.C. § 514 ..................................................................................................................... 9

18 U.S.C. §1343 .................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................................... 5

Fed. R. Evid. 608(b) Advisory Comm. Note ....................................................................... 9

Mod. Rules Prof. Cond. § 3.3(a)(3) ...................................................................................... 6

N.Y. Rule 3.3(a)(3) ............................................................................................................... 6

Plaintiff concedes that "GM LLC has raised serious allegations concerning the truthfulness of Plaintiff's testimony" and does not dispute a single fact put forward in GM LLC's opening brief. (Pl. Br. at 1, Doc. No. 2141.) Unable to dispute the serious nature of the apparent wrongdoing, plaintiff argues first that GM LLC is raising these issues too late because it should have been able to detect earlier the apparently untruthful testimony about the Scheuers' so-called "dream house." Second, plaintiff argues that the Court should ignore any false testimony because he has decided to drop his housing-related damages claim. Third, plaintiff argues that evidence of wrongdoing should be excluded as collateral evidence and under Fed. R. Evid. 403 and 608.

*First,* plaintiff's opposition brief is notable for what it does ***not*** challenge. Specifically, nowhere does plaintiff address, much less question, the validity or importance of the newly found evidence that GM LLC has outlined in its motion papers—to the contrary, plaintiff "***assume[s] the truth of GM's allegations***." (*Id.* at 1.) That evidence, of course, raises serious questions as to whether or not both Scheuers have made false claims and false statements under oath both to the Court and to the jury. And, plaintiff does not need discovery to determine the facts here—because the true facts are equally in the possession of plaintiff and Mrs. Scheuer. That counsel for plaintiff does not even attempt to dispute any of the new evidence GM LLC has marshalled speaks volumes given their unique access to these two key witnesses.

*Second,* GM LLC did not fail to engage in the discovery necessary to uncover the false claims and statements at issue. To the contrary, the record demonstrates that plaintiff misled GM LLC in discovery by not producing responsive documents plainly in his possession and certainly known to him when he opposed GM LLC's Motion *in Limine* No. 4. But regardless of whether

1

GM LLC should have discovered the true facts earlier, this does not give plaintiff and his wife license to commit what appears to be a fraud on the Court, much less to testify falsely.

*Last,* plaintiff's decision to drop his "dream house" claim does not solve the problem created by the apparently false testimony that he and his wife gave. The same evidence is central to the totality of plaintiff's claim that he was injured in, and emotionally damaged by, the accident. And make no mistake: it now appears that plaintiff and his wife pursued a fabricated claim; they got caught; but now they want a do-over; and to pretend that they never gave apparently false testimony that warrants dismissal of plaintiff's claim altogether. The law does not work that way. Having pursued what appears to be a false claim with untruthful testimony, plaintiff does not simply get to walk away without any consequences and with the jury never being the wiser. In sum, the Court should grant GM LLC's motion to supplement its witness list, to recall Lisa Scheuer, and to admit the exhibits previously used for impeachment.

I.  **PLAINTIFF DOES NOT DENY THE NEW EVIDENCE, ESTABLISHING THAT PLAINTIFF AND HIS WIFE APPARENTLY TESTIFIED UNTRUTHFULLY.**

Plaintiff's response is remarkable for what it does ***not*** contain: any rebuttal whatsoever of the allegations made by Mr. Kleven and supported by documents that have been forensically verified by KPMG. Thus, plaintiff has now had a chance to respond, failed to do so, and plaintiff and his wife have been caught in the following ***undisputed*** sworn untruths:

- **False Testimony**: The Scheuers testified that plaintiff was bedridden after the accident—"[I was] either in bed or in my chair" because "[b]asically, there was nothing I could do." (GM. Br. at Ex. H, 1/14/16 Tr. at 476:21–477:4.); "Robert was unable to do [] basically anything . . . he wasn't able to even get out of bed." (*Id.* at Ex. I, 1/12/16 Tr. at 154: 2–5).

  **Truth**: *Three weeks* after the accident, on June 19, plaintiff signed a contract for the dream home, after multiple visits to it and requesting over $10,000 in upgrades. (GM Br. Ex. B ¶ 6, Ex. 7.) And *two months* after the accident, on July 26, 2014, plaintiff wrote that he "[j]ust got back from vacation last night." (*Id.* at Ex. B ¶ 10, Ex. 7 (emphasis added).)

- **False Testimony**: Plaintiff testified that the "dream house" deal fell through because "at that time I was no longer working, so at that time I was ineligible for funds . . . ." (*Id.* at Ex. H,

2

1/14/16 Tr. at 558:1-5.)  Lisa Scheuer testified that the Scheuers "couldn't close on the house [ ] because the check had been lost" and was "eventually cancelled." (*Id*. at Ex. I, 1/12/16 Tr. 179:2-4.)   Lisa Scheuer also testified that, before the accident, "[w]e were fine financially, no concerns." (*Id.* at 162:3-7)  Following the accident, "our budgeting is just very tight." (*Id*. at 162:10-11.)

**Truth**: The purchase of the dream house fell through because plaintiff sent his realtor an apparently forged or altered check stub and loan authorization letter.  For example, the "4s" in the check stub image below appear to be different fonts and sizes.  (GM Brief Ex. B, Ex. 6):



The TSP loan authorization letter also appears to not be authentic.  (*Id.* Ex. 4.)  The letter references a "Title XV home loan program" that, so far as GM LLC has been able to determine, does not exist.  The loan authorization amount also grossly exceeds the TSP's $50,000 combined cap on personal and residential loans.[1]

Lisa Scheuer was aware of these facts.  On September 9, Mr. Kleven informed her that "this is an altered check **and** an envelope for registered mail that was never in the mail system."  In the same exchange, Lisa Scheuer said, "I have the check stub." (*Id*. at Ex. 11.)

- **False Filing**: In their opposition to Motion *in Limine* No. 4, plaintiff's counsel (presumably based on information supplied by plaintiff) wrote, "[plaintiff] learned from TSP that he was not eligible to withdraw the $49,500 from his retirement account because he was not working . . . .   [T]he builder cancelled the deal and evicted them from their dream home because they did not pay the $49,500 deposit. . . ." (Pl. Opp'n to GM Mot. *in Limine* 4  at 2 (Docket No. 1625).)

- **Truth**: Neither the Scheuer's testimony, nor the true facts, bear any connection to the story

---

[1]  *See* Thrift Savings Plan, *Loans* at 3 (Feb. 2013), https://www.tsp.gov/PDF/formspubs/tspbk04.pdf; Thrift Savings Plan, *Estimate Loan Payments*, https://www.tsp.gov/PlanningTools/Calculators/loanPayments.html ("If you qualify for a TSP loan, the maximum amount you may be eligible to borrow is $50,000.").

3

told in plaintiff's brief.[2]

## II. PLAINTIFF'S ASSERTION THAT GM LLC FAILED TO EXERCISE DILIGENCE IN DISCOVERY IS BASELESS AND BESIDE THE POINT.

Plaintiff argues GM LLC should somehow have discovered the Kleven evidence based on the testimony elicited during Lisa Scheuer's deposition. (Pl. Br. at 8.) Not so. At her May 6, 2015 deposition (which followed plaintiff's deposition), Mrs. Scheuer gave very general testimony about the purchase of the home and the TSP funds to be used to pay for it: "Because the—the check that—we think there's some kind of memory issue that a check didn't arrive— arrived and Robert has no idea what he did with the check. The check was never located." (GM. Br. at Ex. E, Dep. Tr. at 25:11-16, 19-22.)

Plaintiff's assertion that GM LLC should have divined the true facts from this meager recitation is specious. Lisa Scheuer provided no details about the address, the location, the builder, the realtor, or the cost of the purchase. It was not until she testified at trial that she offered the name of the builder ("Concept Builders") or the city ("Sand Springs") and subdivision ("Timberling Hollow") where the home was located. (*Id.* at Ex. I, 1/12/16 Tr. at 176.) Indeed, Mrs. Scheuer's deposition (and even trial) testimony were so barebones that it was not until plaintiff testified that it became clear that this was the Scheuer's *second* failed real estate transaction in 2014. (1/14/16 Tr. at 545:16-546:3.). Most importantly, at no point did Mrs. Scheuer disclose that (i) "I have the check stub" or (ii) that Mr. Kleven had told her that plaintiff had given him "an altered check," both things she well knew from her September 9, 2014 e-mail exchange with Mr. Kleven. (GM Br. Ex. B ¶ 23, Ex. 11 (emphasis in original).)

Under such circumstances, GM LLC cannot be charged with any lack of diligence. This is particularly true where all the information was in plaintiff's possession, was responsive to GM

---

[2] These examples are illustrative only. Many other examples are identified in GM LLC's opening brief.

4

LLC's document requests, and should have been produced. Plaintiff complains that "[t]he delay in obtaining the information is GM's fault." (Pl. Br. at 10.) This is not the law. *See Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) ("A party may not free itself of the burden to fully comply with the rules of discovery by attempting to place a heretofore unrecognized duty of repeated requests for information on its adversary"); *see also Reddick v. Bloomingdale Police Officers*, 2003 WL 1733560, at *12 (N.D. Ill. 2003) (same); *Kifle v. Parks & History Ass'n*, 1998 WL 1109117, at *2 (D.D.C. Oct. 15, 1998) (same).

But even if the Court were to accept plaintiff's frivolous excuse that he did not realize that the documents were relevant until after Motion *in Limine* No. 4 was decided, plaintiff had a clear obligation to supplement his April 2015 discovery responses with this plainly responsive material. *See* Fed. R. Civ. P. 26(e)(1)(A). This duty applies to information "'not originally provided although it was available at the time of the initial disclosure or response.'" *Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, 2009 WL 1617773, at *5 (E.D.N.Y. June 9, 2009); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y. 2004).[3]

Finally, discovery default or not, plaintiff has no license to testify untruthfully in support of a fraudulent claim—and persuade the Court to reject GM's motion *in limine* as a result. Plaintiff chose to raise the issue of housing in opening, and also in the direct testimony of both Scheuers. GM LLC is entitled to respond by confronting them before the jury with the truth.

### III. PLAINTIFF'S COUNSEL CAN NO LONGER SPONSOR THE SCHEUERS' TESTIMONY GIVEN ITS APPARENT FALSITY.

Even if GM LLC can somehow be said to be at fault for failing to discover plaintiff's apparent fraud sooner, which it is not, this would make no difference. The Rules of Professional

---

[3] Even taking plaintiff's argument at face value, independent investigation by GM LLC would not have borne fruit in any event. The TSP loan authorization letter and check stub appear to have been *forged*—had GM LLC sought to subpoena them sooner, the true facts could not have been discovered until Mr. Kleven came forward.

5

Conduct prohibit plaintiff's counsel from "offer[ing] evidence that the lawyer knows to be false." Mod. Rules Prof. Cond. § 3.3(a)(3); N.Y. Rule 3.3(a)(3).  The lawyer's responsibility "extends to any false testimony elicited by the lawyer . . . [or] another witness favorable to the lawyer's client." Comment d., Restatement (Third) of the Law Governing Lawyers § 120 (2000).

GM LLC does not blame plaintiff's counsel for any of what has transpired.  To the contrary, we believe that they too were misled by the Scheuers.  But now plaintiff's counsel have the new evidence.  As a result, plaintiff's counsel cannot rely upon, sponsor, or comment on any of the Scheuer's testimony during trial or in closing given the pervasive nature of the apparent falsehoods. *See Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, at *11, n.10 (E.D.N.Y. Mar. 26, 2004) (sanctioning defendant's counsel for violating his obligation under Rule 3.3 by failing to conduct a basic inquiry into validity of a submitted affidavit); *Scholastic, Inc. v. Stouffer,* 221 F.Supp.2d 425, 440–45 (S.D.N.Y.2002) (sanctioning under court's inherent power submission of falsified evidence and untruthful testimony by dismissing counterclaim and awarding costs and attorney's fees to plaintiff); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 59434, at *6 (S.D.N.Y. Jan. 16, 2002) ("a lawyer shall not 'offer evidence that the lawyer knows to be false.'") (internal citation omitted); *Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*, 153 F. Supp. 2d 504, 511 (S.D.N.Y. 2001).  Given the new evidence, it is unclear how plaintiff's counsel can proceed with this case in light of the fact that—not once—do they or plaintiff question the new evidence GM LLC has learned of and submitted to the Court.

**IV.    THE KLEVEN EVIDENCE IS CRITICALLY RELEVANT EVEN IF PLAINTIFF DROPS HIS CLAIM FOR HOUSING DAMAGES.**

Plaintiff offers at least three contradictory arguments regarding housing-related damages:

1. "[H]ousing-related damages are not being pursued in this trial." (Pl. Br. at 1.)

2. "Plaintiff put GM on notice that he would seek 'housing-related damages that Robert suffered as a result of the accident.'" (*Id.* at 5.)

6

    3.    "Mr. Scheuer withdraws any such claim . . . . [H]e disavows any intent to seek such damages (and emotional distress damages related thereto) and will agree to an appropriate jury instruction. . . ." (*Id.* at 1, 8.)

The truth, of course, is that plaintiff filed a brief with this Court asserting damages from the loss of the "dream house." (Docket No. 1625 at 3.) And the Court *relied* on plaintiff's filing in denying GM LLC's Motion *in Limine* No. 4: "[i]t is up to the jury to decide whether Plaintiff suffered [housing] damages and whether they were proximately caused by the accident (or, more to the point, any tortious conduct by New GM." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 7769524, at *2 (S.D.N.Y. Nov. 30, 2015).

Regardless, plaintiff's suggestion that the Court should disregard apparent fraud and false testimony because he is prepared to drop his claim for housing-related damages is meritless. Plaintiff repeatedly has referenced the claim that GM LLC should somehow be liable to plaintiff for the loss of his home—in opening, during Lisa Scheuer's testimony, and in plaintiff's own testimony. (Pl. Opening Statement, 1/12/16 Tr. at 61:14-20; GM. Br. at Ex. I, 1/12/16 Tr. at 161:22-162:12; *id.* at Ex. H, 1/14/16 Tr. at 469:1-470:22.). Seven days into the trial—and immediately prior to when plaintiff has promised to close—the prejudice to GM LLC cannot be undone, even with an instruction to the jury. This is one bell that cannot be unrung.

Equally important, the Kleven evidence goes to the core of plaintiff's personal injury claim, and is not limited just to the housing-related damages. Both Scheuers testified that plaintiff was severely limited and spent most of his days in bed or in his chair after the accident. The Kleven evidence—demonstrating that plaintiff purchased and moved into a home after multiple visits and soliciting $10,000 in upgrades—needs to be heard by the jury when it evaluates the extreme picture of physical immobility plaintiff has portrayed.

Plaintiff and his wife also claim emotional distress and described significant changes to his mood resulting from the accident. (*Id.* at Ex. H, 1/4/16 Tr. at 482:25 - 483:2 ("Now I've got a

7

very short temper. I'll raise my voice at the children."); (Ex. I, 1/12/16 Tr. at 148:24-25 ("He also is a little bit less tolerant with the girls because he is in pain.").  But the loss of their "dream house" through what appears to have been fraudulent conduct, and the risk of criminal prosecution evidenced by the police report filed by Concept Builders, provide a reasonable—indeed likely—explanation for Mr. Scheuer's bad mood.  It certainly is something that the jury should consider on the claim for emotional distress.

Furthermore, because it directly contradicts and/or is inconsistent with their trial testimony on various issues, the Kleven evidence goes to the core of the Scheuers' credibility.  To date, the *only* evidence that plaintiff has suffered any damages from this accident is his subjective allegation that he suffers greater pain and angst now than before—even though he admits his medications are the same.  (*Id.* at Ex. H, 1/14/16 Tr. at 554:17-555:1.)  Simply put, the jury should know that plaintiff and his wife may have been less than honest with them when evaluating his claims.

Thus, far from being collateral evidence, or a "sideshow," the Kleven evidence goes to the heart of plaintiff's personal injury claims—*i.e.*, the claim for pain and suffering, emotional distress, and his actual physical condition post-accident.  *See United States v. Blackwood*, 456 F.2d 526, 529 (2d Cir. 1972) ("A witness may be impeached by extrinsic proof . . . as to those matters which are relevant to the issues in the case and could be independently proven."); *United States v. Patterson*, 23 F.3d 1239, 1246 (7th Cir. 1994) (admitting extrinsic evidence); *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2008) (same).

For the same reason, the Kleven evidence is not barred by Fed. R. Evid. 403.  Evidence establishing what appears to be perjury by plaintiff and his wife will undoubtedly prejudice plaintiff's case—bringing falsehoods to light always does.  But the point is that such evidence,

8

including plaintiff's admissions, goes to the heart of the Court's and the jury's truth-finding function and is not *unduly* prejudicial. *See Lewis v. City of Albany Police Dept.*, 547 F. Supp. 2d 191, 202 (N.D.N.Y. 2008) (proper to admit evidence of perjury); *see also Cadena v. Pacesetter*, 224 F.3d 1203, 1214 (10th Cir. 2000) (admitting perjurious denial of affair). Indeed, leaving the testimony unchecked would be unfairly prejudicial to GM LLC and would leave any verdict vulnerable. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).[4]

Incredibly, plaintiff asks the Court to ignore plaintiff's apparent misconduct because "[t]he Court has available to it other means of ensuring a full and fair process, including a post-trial inquiry . . . ." (Pl. Br. at 13.) It simply cannot be that bringing plaintiff's misconduct to light *after* the jury has reached a verdict is preferable to doing so now. Plaintiff also wants to serve "subpoenas . . .[]; receive and review responsive documents; and take . . . [] depositions." (Pl. Br. at 16.) But the information at issue here is uniquely in the possession of two people—Robert and Lisa Scheuer. To the extent they have any information contrary to the Kleven evidence, they should have put it in plaintiff's brief. Lisa Scheuer also will be free to explain her side of the story if the Court orders her to be recalled. And should plaintiff wish to take the stand again, GM LLC would welcome the opportunity to revisit his testimony.[5]

Last, the Kleven evidence is not barred by Rule 608(b). *See* Fed. R. Evid. 608(b) Advisory Comm. Note; *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976); *see also*

---

[4] Plaintiff attempts to establish some parallel between the exclusion of the DPA, and the Andersen and Ward-Green criminal convictions, with the testimony at issue here. There is no connection. GM LLC does not seek to establish or inform the jury that plaintiff apparently committed numerous federal felony offenses, including (at a minimum) wire fraud, in violation of 18 U.S.C. §1343, and creating a fictitious government obligation, in violation of 18 U.S.C. § 514. The point of the evidence is to establish that plaintiff and his wife have put forward false claims, and provided false testimony, to *this* Court and in front of *this* jury.

[5] Wholly apart from this issue, a number of plaintiff's medical records were produced to GM LLC for the first time *yesterday*. GM LLC is reviewing these records. To the extent they contain material information regarding plaintiff's medical condition, it may be necessary to recall plaintiff to examine him about their contents, an issue that GM LLC will address by separate motion if necessary.

*Davis v. Nichols*, 191 F.3d 451, 1999 WL 777548, at *2 (6th Cir. 1999) ("Extrinsic evidence is admissible, notwithstanding Rule 608(b), where the evidence would contradict a witness's testimony as to a material matter, and where the evidence is otherwise admissible."); *Cadena v. Pacesetter Corp.*, 224 F.3d at 1214 (affirming admission of evidence of perjurious testimony denying having affair where such evidence was not elicited "solely 'for the purposes of attacking . .. credibility" under Rule 608(b)"); *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir. 1987) ("Extrinsic evidence of a witness' prior misconduct . . . should be admitted [] where it is introduced to disprove a specific fact material to the defendant's case."); *United States v. Opager*, 589 F.2d 799, 802 (5th Cir. 1979) (same).

## CONCLUSION

As we said in our opening brief, trials are designed to determine the truth. Plaintiff's opposition, in contrast, seeks to shield the truth from both the Court and the jury. There is no precedent for such a perversion of justice. The Court should grant GM LLC's motion to supplement its witness list, to recall Lisa Scheuer, and to admit the impeachment exhibits.

Dated: January 20, 2016

Respectfully submitted,

*/s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Phone: 312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2016, I electronically filed the foregoing Brief using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

/s/ *Andrew B. Bloomer, P.C.*
Andrew B. Bloomer, P.C.