UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to: Cockram v. General Motors LLC, 14-CV-8176*
------------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

This case, part of the multidistrict litigation ("MDL") relating to highly publicized defects in the ignition switches and related features of certain General Motors-brand vehicles, is scheduled to begin trial on September 12, 2016, as a "bellwether." By prior Order of the Court, fact discovery with respect to the case closed on June 22, 2015. (*See* Order No. 25 (Docket No. 422) ¶ 42). Almost exactly ten months later, on April 21, 2016, New GM served a subpoena on non-party Verizon Legal Compliance ("Verizon") seeking Plaintiff's cell phone records. Five days later, Plaintiff moved to quash the subpoena as untimely. (*See* Apr. 26, 2016 Ltr. (Docket No. 2819) ("Pl.'s Ltr.")). By Order entered on May 6, 2016, the Court granted Plaintiff's motion for reasons to be stated in an opinion to follow in due course. (*See* Docket No. 2839). This is that opinion.

It is beyond dispute that a district court "has broad discretion 'to direct and manage the pre-trial discovery process.'" *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05-CV-8936 (RLS), 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007) (quoting *Willis v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004)). Rule 16 of the Federal Rules of Civil Procedure requires district courts to enter a scheduling order in each case so that discovery may be effectively managed. *See* Fed. R. Civ. P. 16(b)(1). That order may be modified, but only upon a showing of

"good cause." Fed. R. Civ. P. 16(b)(4); *see, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009); *McKay*, 2007 WL 3275918, at *1 ("A party seeking relief from the discovery schedule, including the reopening of discovery when discovery has closed, must make an application to the Court demonstrating why good cause exists to modify the schedule."). Significantly, the "primary consideration" in determining whether such good cause exists is "whether the moving party can demonstrate diligence." *Kassner v. 2d Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (noting that whether good cause exists "depends on the diligence of the moving party"). Courts have construed subpoenas served after the discovery deadline has passed as requests to reopen discovery. *See, e.g.*, *McKay*, 2007 WL 3275918, at *2; *Dodson v. CBS Broad., Inc.*, No. 02-CV-9270 (KMW) (AJ), 2005 WL 3177723, at *1 (S.D.N.Y. Nov. 29, 2005).

In this case, New GM failed to show good cause for its delay of almost a year in serving the subpoena on Verizon.[1] In arguing otherwise, New GM contended that the untimely subpoena was proper because it "initially served a substantially similar subpoena seeking the very same records prior to the close of fact discovery." (May 2, 2016 Ltr. (Docket No. 2832) ("New GM's Ltr.") 2-3 (citing *Leaks v. Target Corp.*, No. CV 414-106, 2015 WL 4092450, at *2 (S.D. Ga. July 6, 2015), and *DirecTV, Inc. v. Richards*, No. 03-CV-5606 (GEB), 2005 WL 1514187, at *2 (D.N.J. June 27, 2005))). But, taken to its logical conclusion, New GM's argument, if adopted, would allow a party to "perfect[]" a subpoena *at any time* after discovery

---

[1] New GM asserts that it is not seeking to reopen discovery (*see* New GM's Ltr. 4 n.3), but that is the effect that allowing its subpoena would have. *See McKay*, 2007 WL 3275918, at *1 (construing an opposition to a motion to quash an untimely subpoena as a request to reopen discovery). In any event, the Court's analysis and conclusion are unaffected by whether New GM's opposition is construed as a request to reopen discovery or not.

ends, so long as it served a similar subpoena before the close of discovery. (*Id.* at 3). Neither law nor logic supports that result. Instead, the cases upon which New GM relies suggest only that a party's service of a similar subpoena before the discovery cut-off should be considered as one factor in the "good cause" analysis — along with the party's diligence in addressing whatever problems there were with the original subpoena. *See Leaks*, 2015 WL 4092450, at *1-2 (denying a motion to quash subpoenas served one day before and five days after discovery closed when the subpoenas were served within five days of learning the facts that prompted the subpoenas); *DirecTV, Inc.*, 2005 WL 1514187, at *2 (denying a motion to quash a subpoena served by the plaintiff after the close of discovery where a prior subpoena was served on the wrong party before the close of discovery and, when made aware of the error, the plaintiff "acted diligently," notifying the defendant the following day that it would serve a new subpoena and serving the corrected subpoena only weeks later).

      Here, notwithstanding the earlier subpoena to Verizon, New GM did not act with sufficient diligence to justify reopening discovery. New GM served its original subpoena on April 24, 2015, and asked Verizon to search for Plaintiff's cellphone records using her name, Social Security number, and date of birth. (*See* New GM's Ltr. 2). On May 5, 2015 — over one year ago — Verizon certified that it had run the requested searches and found no records. (*Id.*). As Plaintiff had previously identified Verizon as her cellphone service provider in her Plaintiff Fact Sheets (*see id.* at 1), Verizon's certification should immediately have raised a red flag for New GM. Certainly, as of June 10, 2015 — when Plaintiff confirmed at her deposition that Verizon was her service provider (*see id.* at 2) — New GM had reason to know that following up with Verizon might yield records. Yet, by all appearances, New GM did absolutely nothing to pursue the matter until, on April 19, 2016 — almost one year later — its records retrieval vendor

suggested that it ask Verizon to run the search again, using only Plaintiff's cell phone number. (*Id.*). That falls far short of the diligence needed to satisfy the Rule 16 "good cause" standard, especially in a case of this size and complexity. Put simply, New GM could have taken any number of additional steps — including the fairly minimal and obvious steps of following up with Verizon or asking Verizon to search by phone number — to obtain Plaintiff's cellphone records prior to the close of discovery. *See McKay*, 2007 WL 32575918, at *2 ("Because Defendants have not shown why they could not have come to th[e] conclusion [that they were missing certain documents] and sought the subpoena prior to the close of discovery, it cannot be said that Defendants were sufficiently 'diligent' in conducting discovery so as to justify reopening discovery five months after the close of discovery."). Alternatively, New GM could have sought relief from the Court. Its failure to take any of those steps suggests that the evidence at issue is not as critical to New GM's case as it now suggests. (*See* New GM's Ltr. 3). And regardless, its failure to do so means that New GM cannot show good cause to pursue late discovery.

It is true, as New GM notes (*see id.*), that Plaintiff would not likely suffer much, if any, prejudice from allowing New GM to serve a new subpoena for her cellphone records. But, while a court "may consider" prejudice (or lack thereof) in deciding whether the "good cause" standard has been met, the Second Circuit has emphasized that "the *primary* consideration is whether the moving party can demonstrate diligence." *Kassner*, 496 F.3d at 244 (emphasis added). That makes sense, as the "good cause" standard is intended not only to ensure fairness to both sides, but also to ensure that district courts can effectively manage their dockets and prevent undue delays in the disposition of cases. *See, e.g.*, *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, No. 09-CV-6831 (RJH) (MHD), 2010 WL 1778794, at *1 (S.D.N.Y. Apr. 29, 2010) ("The requirement

of good cause reflects the crucial role that [scheduling] orders play in allowing a district court to effectively control and manage its docket."). Put simply, deadlines matter — and they matter especially strongly in litigation of this size and complexity. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) (noting that district courts' "responsibility to manage their dockets so as to achieve the orderly and expeditious disposition of cases . . . is particularly acute where the litigation is complex and continuing" (citation omitted) (internal quotation marks omitted)). To allow New GM to serve its new subpoena almost a year after discovery closed and despite its complete lack of due diligence would suggest to the parties in this litigation that the Court's deadlines are merely hortatory or aspirational and not real deadlines. New GM itself presumably would not want that result. (*Cf., e.g.*, Docket Nos. 898, 1248, 1709 (New GM's motions to dismiss with prejudice plaintiffs who had not filed required documentation by the deadlines set forth in this Court's Orders)). And, in any event, the Court is not willing to risk that possibility. For those reasons, Plaintiff's motion to quash was granted.[2]

    SO ORDERED.

Dated: May 11, 2016
       New York, New York

                                       JESSE M. FURMAN
                                       United States District Judge

---

[2]     Notwithstanding the foregoing, the Court reminds Plaintiff that, to the extent she has any responsive cellphone records in her possession, custody, or control, she has a continuing obligation to disclose them to New GM. *See, e.g.*, *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 80 (W.D.N.Y. 2011) (citing cases); *see also* Fed. R. Civ. P. 26(e)(2) ("A party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .").