```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION            14-MD-2543 (JMF)

This Document Relates To:                                OPINION AND ORDER
Fleck, et al. v. General Motors LLC, 14-CV-8176
----------------------------------------------------------------------x
```

JESSE M. FURMAN, United States District Judge:

**[Regarding the Admissibility of Other Similar Incident Evidence]**

The next bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Stephanie Cockram and familiarity with which is presumed, is scheduled to begin on September 12, 2016. (*See* Order No. 100, Docket No. 2836). One of the parties' many pretrial disputes concerns the admissibility of "other similar incident" (or "OSI") evidence. More specifically, Cockram seeks an advanced ruling that she may introduce evidence concerning fifty-five other crashes allegedly attributable to the ignition switch defect in certain General Motors cars. (Pl.'s Mem. Law Supp. Admission Other Similar Incident Evidence (Docket No. 2861) ("Pl.'s Mem.")). Notably, New GM does not dispute that the accidents meet the substantial-similarity test. Instead, the company objects to much of Cockram's OSI evidence based on (1) the Court's prior OSI rulings, (2) Rule 403 concerns, and (3) the procedural adequacy of Cockram s OSI disclosure. (Gen. Motors LLC's Mem. Law Regarding Pl.'s Purported Other Similar Incident Evidence (Docket No. 2894) ("New GM's Mem.")). For the reasons that follow, the Court finds that New GM's objections are largely unfounded and that Cockram may, consistent with the limitations and guidance discussed below, introduce the proposed OSI evidence at trial.

**LEGAL STANDARDS**

The applicable legal standards are undisputed and have been discussed by the Court in connection with two earlier bellwether trials in this MDL. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015) ("*Scheuer Opinion*"); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 796846, at *2 (S.D.N.Y. Feb. 25, 2016) ("*Barthelemy/Spain Opinion*"). Those standards provide that, in a product liability case such as this, OSI evidence may be admitted to prove "negligence, a design defect, notice of a defect, or causation." *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 10-CV-0837, 2012 WL 1113955, at *2 (S.D. W. Va. Mar. 30, 2012); *see also McClure v. Walgreen Co.*, 613 N.W.2d 225, 234 (Iowa 2000) (holding that OSI evidence "was obviously relevant to the punitive-damage issue of willful and wanton conduct"). But before such evidence "may be admitted for any purpose, the proponent must establish [the prior accidents'] relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue." *Schmelzer v. Hilton Hotels Corp.*, No. 05-CV-10307 (JFK), 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007); *see also Barker v. Deere & Co.*, 60 F.3d 158, 162 (3d Cir. 1995) (noting that every Court of Appeals that has considered the admissibility of prior accidents in products liability cases has applied the substantial similarity standard). "Whether a prior accident occurred under 'substantially similar' conditions necessarily 'depends upon the underlying theory of the case, and is defined by the particular defect at issue.'" *Lidle v. Cirrus Design Corp.*, 505 F. App'x 72, 74 (2d Cir. 2012) (summary order) (quoting *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999)).

Significantly, the requisite degree of similarity varies according to the purpose for which OSI evidence is offered. For example, "[e]vidence proffered to illustrate the existence of a

2

dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury." *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992). Similarly, where OSI is offered to prove causation, courts tend to consider multiple factors — namely, whether "(1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents." *Watson v. Ford Motor Co.*, 389 S.C. 434, 453 (2010); *see also* 1 McCormick on Evid. § 200 (7th ed. 2013) (noting that courts are more likely to allow OSI evidence to show causation "when the defendant contends that the alleged conduct could not possibly have caused the plaintiff's injury"). By contrast, the substantial similarity standard is "relaxed" where OSI evidence is offered to show notice; that is, "the similarity in the circumstances of the accidents can be considerably less than that which is demanded when the same evidence is used for one of the other valid purposes." *Schmelzer*, 2007 WL 2826628, at *2. As the substantial similarity inquiry is "fact-specific," a "district court is owed considerable deference in its determination of substantial similarity." *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1126 (10th Cir.), *as clarified on reh'g*, 400 F.3d 1227 (10th Cir. 2004). If substantial similarity is established, "[a]ny differences in the accidents . . . go to the weight of the evidence." *Four Corners*, 979 F.2d at 1440.

## PRIOR OSI RULINGS

As noted, the Court has applied the foregoing principles in the two prior cases that went to trial in the MDL. In the first bellwether trial, plaintiff Robert Scheuer sought to introduce OSI evidence from fifteen accidents on the ground that they were relevant both to prove notice and

3

causation and to the issue of punitive damages. *See Scheuer Opinion*, 2015 WL 9463183, at *1.[1] Applying the legal standards recited above and the Rules of Evidence, the Court found generally "that the fifteen other incidents at issue [we]re sufficiently 'substantially similar' to be admitted, certainly to prove notice, but also to prove causation." *Id.* at *2. In arriving at that conclusion, the Court noted that "one of the most salient factors in the analysis is whether the other incidents involved the same alleged defect as the incident at issue" and that, "until it took issue with the admissibility of OSI evidence, New GM itself effectively treated the incidents as substantially similar" by including them in "various admissions with respect to crashes caused by the ignition switch defect — including submissions it made to the National Highway Traffic Safety Administration ('NHTSA'), the Statement of Facts ('SOF') to which New GM agreed as part of the Deferred Prosecution Agreement with the Department of Justice, and the Valukas Report." *Id.* Specifically, with respect to notice, the Court held that the other accidents could "show that New GM was on notice of the defect — and on notice well before the spring of 2012, when the company admits that it had learned of the problem." *Id.* And with respect to causation, the

---

[1] In her memorandum of law, Cockram notes that Scheuer actually sought to introduce "each of the OSIs described in the Valukas Report and SOF (23 in total)." (Pl.'s OSI Mem. 4 (citing Docket No. 1843, at 24-30)). Upon further review, that is technically correct, although it was far from clear in Scheuer's briefing. (*Compare* Docket No. 1843, at 5 (stating that "Scheuer will introduce evidence related to the following fifteen specific similar incidents" and discussing them at length), *with id.* at 24 (identifying the eight OSIs contained in the SOF and Valukas Report that had yet to be mentioned and stating that "[a]s discussed below, Scheuer will introduce New GM's admissions related to these cases for the purpose of showing New GM's notice of the defect, as well as the defect's existence and magnitude"); *and id.* at 26 (appearing to refer to these eight *other* OSIs when stating that "[t]he proffered OSIs (including those [*other* OSIs] in the DPA and the Valukas Report) all predate the Scheuer accident and clearly meet the relaxed standard required for a showing of notice"). In any event, the Court did not rule on the admissibility of those eight OSIs in its OSI opinion, but later overruled New GM's objections to the introduction of SOF excerpts referring to some of those eight OSIs. (*See* Pl.'s OSI Mem. 5 n.6 (citing Docket No. 2018)).

Court found that "insofar as all fifteen other incidents involved airbag non-deployment in frontal collisions that can be attributed to the ignition switch defect (and all but three involved off-road conditions), they tend to show that the non-deployment of Plaintiff's airbags and Plaintiff's injuries are attributable to the same defect." *Id.* Nevertheless, on Rule 403 grounds, the Court ultimately excluded all lay witness testimony from OSI victims and their family members. (*See* Jan. 6, 2016 Tr. Final Pretrial Conf. (Docket No. 2111) 4-12).

Significantly, unlike Scheuer (and Cockram here), the plaintiffs in the second bellwether trial, Lawrence Barthelemy and Dionne Spain, had conceded prior to their OSI submission that their crash was not an airbag-deployment-level event. *See Barthelemy/Spain Opinion*, 2016 WL 796846, at *5. They claimed only that the ignition switch defect caused a loss of control leading up to the accident, and sought to introduce OSI evidence from seven accidents for the purpose of proving New GM's notice and (perhaps) for causation. *Id.* at *3. As the Court noted, "[e]vidence relating to four of those alleged OSIs . . . was presented in *Scheuer*; in addition, they are discussed in the Valukas Report and the SOF. The remaining three alleged OSIs . . . however, were not offered in *Scheuer*; nor are they discussed in the Valukas Report, the SOF, or the NHTSA Consent Order. Instead, for two of the incidents . . ., Plaintiffs rely on documents that New GM describes as 'customer complaints'; for the third incident . . ., Plaintiffs submit no documentary evidence at all." *Id.* (citations omitted). Rejecting the halfhearted protestations of Barthelemy and Spain that they had not understood anything further to be required, the Court held that "with respect to the three newly proffered OSIs, Plaintiffs f[e]ll far short of meeting even the 'relaxed' standard that applies where such evidence is offered to show notice" and that they came "nowhere near satisfying the higher standard applicable to OSI offered for other purposes, including causation." *Id.* at *4. By contrast, the Court held that the four OSIs that had

been presented in *Scheuer* were admissible to prove notice. *Id.* at *5. They could not be used to show causation, however, as the plaintiffs had not presented even a "theory of how the evidence is relevant to the question of causation in th[eir] case"; given their concession that their airbags should not have deployed, the question of causation was whether inadvertent ignition switch rotation or icy road conditions caused the plaintiffs' crash, and the OSI evidence shed no light on that question. *Id.* at *6. Finally, the Court held that Barthelemy and Spain could introduce evidence of the permissible OSIs through the Valukas Report and the SOF (as well as perhaps some other documents), but not through what New GM had termed "NHTSA complaints" on the ground that they were unsubstantiated. *Id.*[2]

## DISCUSSION

In this case, Cockram proffers a substantially higher number of OSIs — fifty-five in total — than were proposed by Scheuer or Barthelemy/Spain (let alone admitted by the Court). (Pl.'s Mem. 1-2). Significantly, her set of fifty-five accidents — forty-seven of which predate her accident and eight of which occurred after it — derives almost entirely from New GM's own April 2014 submission to NHTSA, in which the company identified the listed accidents "as involving frontal impact crashes in which the recall condition may have caused or contributed to the airbags' non-deployment." (Decl. Robert C. Hilliard Supp. Pl's Mem. (Docket No. 2855) ("Hilliard Decl."), Ex. 4, at 24; *see* Pl.'s Mem. 14 ("New GM effectively treated all 55 incidents

---

[2]  Cockram asserts — without a reply from New GM — that "[a]lthough it attempted to characterize these incidents as unsubstantiated customer complaints, New GM admitted to NHTSA, in its Special Order Responses, that these incidents were among the 56 frontal impact crashes that it had deemed defect related." (Pl.'s Mem. 16 n.26). If that is the case, Barthelemy and Spain did not bring it to the Court's attention in their trial.

as substantially similar in one or more admissions . . . ."")).[3]  Cockram submits that while her proposed number of OSIs is higher, "the amount of OSI evidence" will not "substantially expand" beyond what was admitted in *Scheuer*.  (Pl.'s Mem. 2).  Specifically, she represents that "the *only* evidence" she "will seek to offer at trial" for thirty-two of the OSIs "will be, at most, one to three documents — New GM's NHTSA Admission and [New GM's internal] death and injury spreadsheets — that list the incidents that Old and New GM themselves characterized as defect-related." (*Id.* at 10).[4]  And "[i]t is highly unlikely that Plaintiff will specifically mention any of these 32 OSIs at trial at all — except in the context of arguing to the jury that the evidence shows that New GM has admitted that the ignition switch defect caused or contributed to serious injuries and deaths in at least 55 other incidents and that New GM was on notice of 47 of these incidents prior to Plaintiff's crash." (*Id.*).

With respect to the remaining twenty-three OSIs, the evidence Cockram proposes to offer at trial is less clear.[5]  Cockram comes closest to explaining when she states:

> Plaintiff expects that, like in *Scheuer*, she will introduce much of her OSI evidence through the SOF and the Valukas Report.  And, like *Scheuer*, Plaintiff will also seek to introduce internal GM documents that are particularly telling as to GM's knowledge and concealment of the defect, *e.g.*, death and injury tracking

---

[3]  There are a few minor (and, except to the extent discussed below, insignificant) discrepancies between Cockram's set of fifty-five accidents and the set of accidents reported to NHTSA by New GM.  (*See* Pl.'s Mem. 9 & n.10).

[4]  The thirty-two OSIs are:  Oakley, White, Register, McCormick, Bidge, Gathe, Breen, Gamage, Freeman, McDonald, Nealon, Grondona, Sachse, Morales, Biggerstaff, Hildwen, Schomberg, Dean, Johnston, Stevens, Najera, Randolph, Caban, Stover, Tomlin, Paluszek, Weaver, Jefferson, Brasher, Peterson, Gill, and Ducote.  (Pl.'s Mem. 10 n.11).

[5]  Inexplicably, Cockram describes the remainder set as numbering twenty-four.  (*See* Pl.'s Mem. 11).  The remaining OSIs — totaling twenty-three — are: Averill, Towne, Anderson et al., Gemmill, Rose, Colbert, Carroll, Truttmann, Erica Lambert, Rademaker et al., Frei, Powell, Wild, Croci, Spradlin, Harding et al., Matthews, Tonya Lambert, Chansuthus, Melton, Sullivan, Preuss, and Dubuc-Marquis.  (*Compare* Pl.'s Mem. 10 n.11 *with* Hilliard Decl., Ex. 1).

>spreadsheets and case evaluations, as well as external documents (contained within GM's own files) that are key evidence of (at best) New GM's profound investigative failures, *e.g.*, the Indiana University report. Finally, like *Scheuer*, Plaintiff anticipates calling her expert Caruso to explain a limited number of OSIs to the jury, including a handful that he opined were "substantially similar" to Plaintiff's crash.

(Pl.'s Mem. 11). Cockram also includes the twenty-three OSIs in a chart, which identifies in broad terms: what the OSI is being offered to prove; which trial witness will be used to introduce the evidence, and what documentary evidence will be introduced (which, for many incidents, includes "vehicle photos" and "CDR information"). (*See* Hilliard Decl., Ex. 1).

Significantly, New GM appears to concede that all fifty-five incidents at issue are substantially similar enough to the present case to be admissible. Nevertheless, New GM (1) contends that the Court's prior OSI rulings set, in effect, a cap on how many accidents (and, indeed, specified which accidents) may be admitted as OSI evidence (New GM's Mem. at 1-4, 7-9); (2) raises Rule 403 concerns (*id.* at 4-7); and (3) objects to the adequacy of Plaintiff's OSI disclosure on procedural grounds (*id.* at 9-13). The first argument is the most easily rejected. The Court's prior rulings and orders do not support the view that *Scheuer* set a cap on the OSI evidence that all future bellwether plaintiffs could offer (even absent a showing of good cause). For one thing, the substantial similarity analysis "necessarily depends upon the underlying theory of the case." *Lidle*, 505 F. App'x at 74 (internal quotation marks omitted). Thus, the OSI evidence that may be admitted in any given case will turn on the particular facts of the case, the legal claims being asserted, and the applicable law — all of which are likely to vary somewhat between and among cases (as they do between *Scheuer* and this case). New GM's view is also belied by Order No. 100, which required Cockram to "disclose her proposed OSIs" to New GM and set a briefing schedule to address the admissibility of evidence in dispute. (Order No. 100

(Docket No. 2836) ¶ 2(c)).  In short, while the Court's prior rulings are plainly significant in setting the ground rules and parameters for what OSI evidence may be admitted in this and future trials, Cockram and future bellwether plaintiffs are not limited by the strategic choices made by earlier bellwether plaintiffs to the universe of OSI evidence that was admitted in those cases.

On their face, New GM's Rule 403 objections have some more force, if only because Cockram proposes to introduce so many more OSIs than Scheuer did.  New GM makes two Rule 403 arguments with respect to all OSI evidence.  First, New GM argues that it is "entitled to present evidence about each of these 55 incidents to rebut plaintiff's arguments, which would result in a sideshow and waste significant time."  (New GM's Mem. 6).  Second, New GM claims that "the sheer volume of OSIs that plaintiff proposes would unfairly prejudice New GM due to their inflammatory nature and possible misinterpretation by the jury."  (New GM's Mem. 7).  On balance, however, those objections are unpersuasive with respect to the set of thirty-two "general" OSIs.  New GM has admitted to NHTSA the very proposition that Cockram seeks to argue from that evidence, so the Court is at a loss as to what rebuttal evidence New GM would seek to offer.  (Perhaps tellingly, New GM's brief does not venture even one example; and in the prior two bellwether trials, New GM offered no rebuttal evidence with respect to the OSI evidence that was admitted.)  Turning to the second argument, "the sheer volume of OSIs" alone is not a sufficient basis for exclusion.  *See, e.g.*, *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000) (affirming the trial court's decision to admit evidence of ninety-two breast implant complaints relevant to the defendant's notice of the defect); *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 2:10-CV-00837, 2012 WL 1113955, at *2-3 (S.D.W.Va. Mar. 30, 2012) (holding that forty-five complaints of product defect were admissible to prove notice); *Rhodes v. Michelin Tire Corp.*, 542 F. Supp. 60, 62-63 (E.D. Ky. 1982) (holding that evidence of

the defect condition in two hundred other tire flaps had been properly admitted).  And, again, New GM does not even attempt to explain how the jury could "misinterpret[]" the evidence or why any prejudice resulting from its own admissions to NHTSA would be "unfair[]," Fed. R. Evid. 403.  In fact, there is an equally strong, if not stronger argument, that the prejudice analysis cuts the other way — namely, that limiting OSI evidence to a small number of incidents would prevent the jury from understanding the scale, significance, and duration of Old GM's and New GM's conduct with respect to the ignition switch defect.

Notably, the Court previously rejected New GM's attempts to exclude generalized "OSI evidence" — if that is even the proper term for it — on more or less the same grounds that New GM presses here.  In advance of the second bellwether trial, New GM objected to admitting portions of the Valukas Report, the SOF, and NHTSA's "Path Forward Report" concerning other accidents on the ground that they ran afoul of the Court's OSI ruling in the case.  (Docket No. 2448).  The Court rejected that argument, explaining:

> Although there is some language in the Court's OSI ruling that could be read to support [New GM's] argument, New GM takes it way too far.  The Court's ruling was concerned principally with the particulars of *specific* other incidents, in large part because evidence concerning the grim details of other accidents poses an obvious risk of unfair prejudice.  The Court did not mean to suggest, let alone hold, that Plaintiffs were barred from introducing any evidence concerning the existence or number of other suspected incidents of inadvertent ignition switch rotation and New GM's awareness (or investigation) of those incidents.  Indeed, to preclude Plaintiffs from doing so (or to categorically preclude evidence tending to show the number of deaths and serious injuries attributable to the defect) would present a distorted view of the facts to the jury and thus undermine the search for truth, as New GM's own admissions make clear that it was on notice of well more than four isolated incidents involving suspected ignition switch rotation and its potential consequences.  Thus, while Plaintiffs may not introduce the *particulars* of incidents other than the four previously approved by the Court (and certainly may not introduce evidence . . .), they are not categorically precluded from introducing (1) information about GM employees' own experience that evidences notice regarding the switch defect; and (2) general statements referencing multiple accidents.

(*Id.* at 2-3 (emphases added) (citation and internal quotation marks omitted); *see also* Docket No. 2018 (overruling New GM's objections in the first bellwether trial to the introduction of SOF excerpts concerning other accidents — without regard for whether the excerpts focused only on the fifteen *specific* accidents the Court had addressed in its OSI ruling). In short, there is a major difference between generally discussing the information available to New GM prior to its disclosure of the defect and presenting "the grim details of other accidents." (Docket No. 2448, at 2). Cockram's evidence with respect to the thirty-two "general" OSIs falls squarely in the former category, and thus may be admitted at trial.[6]

---

[6] The thirty-two incidents include those of Hildwen, Caban, and Gill — even though those incidents were excluded from the *Barthelemy/Spain* trial. As Cockram argues, and New GM does not dispute, the Court's ruling in *Barthelemy/Spain* is not applicable here. First, Barthelemy and Spain's failure to provide any evidence that those three incidents were defect related does not foreclose a later bellwether plaintiff from making a successful proffer with respect to those incidents. Second, as noted, the accident in *Barthelemy/Spain* was not alleged to be an airbag deployment-level crash, as the accident here is alleged to have been. And, finally, Barthelemy and Spain had intended to use the three OSIs as so-called "specific" OSIs and not, as Cockram proposes, simply as generalized OSI information.

Although Cockram may introduce the thirty-two "general" OSIs for the reasons discussed, the Court is skeptical that those incidents, or at least the majority of them, may be used to argue causation. As New GM notes, "[P]laintiff identifies 22 incidents she intends to offer as probative of causation that are only found in New GM's NHTSA submission. Plaintiff does not designate any witness to discuss these incidents and identifies no further evidence that would allow the jury to make a reasoned conclusion about the details of each incident and how it is probative of causation in [P]laintiff's case." (New GM's Mem. 11). The incidents, however, may be used to show the magnitude of the defect, and certainly meet the relaxed standard applicable to evidence of notice — but only to the extent that Cockram can show that New GM had notice of an incident before her crash. Naturally, incidents that postdated Cockram's crash (or that New GM learned about only after her crash) cannot be used even to show notice. *See, e.g.*, *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1084 (5th Cir. 1986) ("Under a negligence theory an actor is held accountable only on the basis of the knowledge he could, or should, have had at the time he acted; negligence is measured from the actor's perspective and the then foreseeable future. Under a strict liability theory, however, the *dangerousness* of a product may be proved as of any time prior to trial." (citation omitted)). But those incidents (there appear to be nine, of which only three — Matthews, Preuss, and Dubuc-Marquis — appear to be "specific" OSIs) are admissible with respect to punitive damages. *See, e.g.*, *Coalson v.*

11

By contrast, considered in combination, New GM's second and third objections to the proposed OSI evidence have more force when it comes to the twenty-three OSIs that Cockram proposes to present with more specificity. That is, in her initial submission, Cockram provided only limited information regarding the evidence that she proposes to introduce with respect to those incidents, complicating New GM's ability to object on Rule 403 grounds and the Court's ability to conduct the requisite balancing inquiry. In the Court's view, however, that does not justify categorically precluding Cockram from offering evidence with respect to those twenty-three incidents — or limiting her to the evidence introduced by Scheuer, as New GM proposes. (*See* New GM's Mem. 12-13).[7] For one thing, there is some merit to Cockram's observation that at the time her OSI disclosures and brief were submitted, trial was still four *months* away (Pl.'s Mem. 11), and that she could not be expected to have provided a detailed and exhaustive proffer. For another, the primary purpose of the OSI disclosure process was to allow the parties to brief and the Court to determine the issue of substantial similarity, and New GM does not even contest that issue. And, in any event, Cockram did disclose, in connection with her reply brief, the specific evidence she may seek to use at trial. (*See* Pl.'s Reply Mem. Law Supp. Admission Other Similar Incident Evid. (Docket No. 2916), Ex. B). Given those reasons, and the fact that the Court will be in a better position to evaluate the issue of cumulativeness at trial, the Court

---

*Canchola*, 754 S.E. 2d 525, 530 (Va. 2014) ("[A] defendant's conduct that endangers many is more reprehensible than conduct that only endangers a few.").

[7] Twelve of Cockram's twenty-three "specific" OSIs — Averill, Towne, Anderson et al., Rose, Erica Lambert, Rademaker et al., Powell, Spradlin, Matthews, Tonya Lambert, Chansuthus, and Sullivan — were used in *Scheuer*. As for the other three OSIs approved in *Scheuer*, Cockram seeks to make only general reference to the accident of Gamage, and Cockram's OSI disclosure does not include the accidents of Ward-Green or Gass.

believes the better course is to overrule New GM's objections without prejudice to objection to specific evidence at or before trial (in accordance with the process established to resolve evidentiary objections).[8]

## CONCLUSION

For the reasons discussed above, the Court finds that Cockram's proposed OSI evidence is admissible, subject to more specific objections consistent with this opinion as trial begins or approaches.

SO ORDERED.

Dated: August 18, 2016
       New York, New York

JESSE M. FURMAN
United States District Judge

---

[8] The same is true for New GM's objections to potential expert testimony with respect to OSI evidence. (*See* New GM's Mem. 10). In response to New GM's objections, Cockram proposes further briefing (Pl.'s Reply 5 n.6), and submits a rebuttal report extensively discussing OSI evidence (*id.*, Ex. 1) that New GM has not had an opportunity to address. Moreover, New GM's objection is vaguely made with respect to "many" of the fifty-five OSIs (New GM's Mem. 10), while Cockram states that she "anticipates" calling her expert to explain only "a *limited* number of OSIs" (Pl.'s Mem. 11 (emphasis added)). Thus, on the present record, it is not even clear whether or to what extent New GM objects to what Cockram proposes to do.